j. Sanctions

k. First amendment

l. Screening orders extended

m. Relief sought

n. Certificate of compliance

# Table of Authorities

- 1 Stat. 84
- 1 Stat. 85
- 14 Stat. 520
- 18 U.S.C. 401
- 18 U.S.C. 402
- 18 U.S.C. 1964
- 26 Stat. 854
- 26 Stat. 856
- 28 U.S.C. 453
- 28 U.S.C. 1291
- 28 U.S.C. 1331
- 28 U.S.C. 1367
- 28 U.S.C. 1915
- 3 Stat. 22
- 3 Stat. 33
- 3 Stat. 298
- Armstrong v. Manzo, 380 U.S. 545 (1965)
- Arnett v. Kennedy, 416 U.S. 134 (1974)
- Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964)
- Bausch v. Stryker Corp., 630 F.3d 546 (7th Cir. 2010)
- Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)

- Bell v. Hood, 327 U.S. 678 (1946)
- Bennett v. Spear, 520 U.S. 154 (1997)
- Billman v. Indiana Department of Corrections, 56 F.3d 785 (7th Cir. 1995)
- Brownlee v. Conine 957 F.2d 353 (7th Cir. 1992)
- Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525 (1958)
- Cafeteria Workers v. McElroy, 367 U.S. 886 (1961)
- Cammer v. United States, 350 U.S. 399 (1956)
- Chiles v. Salazar, 607 U.S. ___ (2026)
- Counterman v. Colorado, 600 U.S. 66 (2023)
- Crawford-El v. Britton, 523 U.S. 574 (1998)
- Curtis v. Loether, 415 U.S. 189 (1974)
- Dairy Queen, Inc. v. Wood, 369 U.S. 469 (1962)
- Degen v. United States, 517 U. S. 820 (1996)
- Denton v. Hernandez, 504 U.S. 25 (1992)
- DeTomaso v. McGinnis, 970 F.2d 211 (7th Cir. 1992)
- Dietz v. Bouldin, 579 U.S. 40 (2016)
- Edwards' Lessee v. Darby, 25 U.S. 206 (1827)
- Edwards v. Snyder, 478 F.3d 827 (7th Cir. 2007)
- Erickson v. Pardus, 551 U.S. 89 (2007)

- Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)
- Ex parte McCardle, 74 U.S. 506 (1868)
- Ex Parte Woollen, 104 U.S. 300 (1881)
- Fed. R. Civ. P. 11
- Fed. R. Civ. P. 20
- Fed. R. Civ. P. 21
- Fed. R. Civ. P. 26
- Fed. R. Civ. P. 83
- Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340 (1998)
- Felton v. City of Chicago, 827 F.3d 632 (7th Cir. 2016)
- Freytag v. Commissioner, 501 U.S. 868 (1991)
- Fuery v. City of Chicago, 900 F.3d 450 (7th Cir. 2018)
- Gladney v. Pendleton Corr. Facility, 302 F.3d 773 (7th Cir. 2002)
- Goldberg v. Kelly, 397 U.S. 254 (1970)
- Gustafson v. Alloyd Co., 513 U.S. 561 (1995)
- Gutierrez de Martinez v. Lamagno, 515 U.S. 417 (1995)
- Hagans v. Lavine, 415 U.S. 528 (1974)
- Hartman v. Moore, 547 U.S. 250 (2006)
- Holland v. City of Gary, 503 F. App’x 476 (7th Cir. 2013)
- In re Rimsat, Ltd., 212 F.3d 1039 (7th Cir. 2000)

- Johnson v. Cherry, 422 F.3d 540 (7th Cir. 2005)
- Johnson v. Rodriguez, 943 F.2d 104 (1st Cir. 1991)
- Jones v. Bock, 549 U.S. 199 (2007)
- Lorenz v. Dreske, 62 Wis. 2d 273, 214 N.W.2d 753 (1974)
- Luedtke v. Keyes, No. 22-cv-589-jdp, 2023 WL 2894535, at *1 (W.D. Wis. Apr. 11, 2023)
- Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)
- Maness v. Meyers, 419 U.S. 449 (1975)
- Market Company v. Hoffman, 101 U.S. 112 (1879)
- Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304 (1816)
- Mathews v. Eldridge, 424 U.S. 319 (1976)
- Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999)
- Morrissey v. Brewer, 408 U.S. 471 (1972)
- National Rifle Association of America v. Vullo, 602 U.S. 175 (2024)
- Neitzke v. Williams, 490 U.S. 319 (1989)
- Okoro v. Bohman, 164 F.3d 1059 (7th Cir. 1999)
- Parsons v. Bedford, Breedlove & Robeson, 28 U.S. 433 (1830)

- Perry Educ. Ass'n v. Perry Educators' Ass'n, 460 U.S. 37 (1983)
- Perttu v. Richards, 605 U.S. 460 (2025)
- Pullman-Standard v. Swint, 456 U.S. 273 (1982)
- Railroad Company v. Hecht, 95 U.S. 168 (1877)
- Reiter v. Sonotone Corp., 442 U.S. 330 (1979)
- Richbourg Motor Co. v. United States, 281 U.S. 528 (1930)
- Rodriguez v. Federal Deposit Insurance Corp., 589 U.S. 132 (2020)
- Scott v. Neely, 140 U.S. 106 (1891)
- Simler v. Conner, 372 U.S. 221 (1963)
- Smith-bey v. Hospital Administrator, 841 F.2d 751 (7th Cir. 1988)
- Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998)
- Sullivan v. Iron Silver Mining Co., 109 U.S. 550 (1883)
- Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981)
- The Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717 (7th Cir. 2006)
- Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005)

- Tull v. United States, 481 U.S. 412 (1987)
- United States v. Britton, 731 F.3d 745 (7th Cir. 2013)
- United States v. Coe, 155 U.S. 76 (1894)
- United States v. Fisher, 6 U.S. 358 (1805)
- United States v. Kirkpatrick, 22 U.S. (9 Wheat.) 720 (1824)
- United States v. Nordic Village, Inc., 503 U.S. 30 (1992)
- United States v. Oberhellmann, 946 F.2d 50 (7th Cir. 1991)
- United States v. Vanzandt, 24 U.S. (11 Wheat.) 184 (1826)
- United States v. Wiltberger, 18 U.S. 76 (1820)
- U.S. CONST. amend. V
- U.S. CONST. amend. VII
- Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)
- Vega v. Chicago Board of Education, 109 F.4th 948 (7th Cir. 2024)
- West Wisconsin Railway Company v. Foley, 94 U.S. 100 (1876)
- Wheeldin v. Wheeler, 373 U. S. 647 (1963)
- Wis. Stat. 946.87



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

# Jurisdiction

**District court:** Federal question jurisdiction over **18 U.S.C. 1964** federal RICO claims under **28 U.S.C. 1331**, and over **Wis. Stat. 946.87** Wisconsin RICO under **28 U.S.C. 1367**.

**Facts relevant to district court article III jurisdiction:** Article III allegations are incorporated by reference everywhere and highly material. For civil RICO, injuries must be caused by conduct prohibited by the subsections. My position is that causation by predicate acts supports liability under every subsection because committing predicate acts is part of the crime in progress, and injury from part of the crime in progress is from the violation of law. That's for another day, so without conceding anything, it suffices for now that for subsection (a) injuries must be caused by use or investment, for subsection (b) caused by the acquisition or maintenance of interest or control through racketeering, for subsection (c) caused by predicate acts, and for subsection (d) caused by the means associated with the subsection that's the object of conspiracy or by predicate acts in furtherance.

Notice pleading has two parts, notice of the legal basis for claims, and notice of the facts on which they rely. My pleading



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

begins by stating the legal basis of my claims (Dkt. 11-1 p. 3), then pleads the commission of predicate acts. The act pleading causally ties my injuries to different subsections, while showing continuity and relationship of the RICO pattern.

Chanel stole my car (Dkt. 11-1 p. 8), transferred it to All Seasons (Dkt. 11-1 p. 8), who through Anthony Gardner (Dkt. 11-1 p. 8), transferred it to Seven Stars (Dkt. 11-1 p. 8). Seven Stars was owned by Miller Compressing (Dkt. 11-1 pp. 6-7, 9), which was owned by Alter Trading Corporation (Dkt. 11-1 p. 5), which was owned by Goldstein Group (Dkt. 11-1 pp. 6-7, 10-11), which is owned by the Goldstein family (Dkt. 11-1 pp. 6-7, 10-11). Seven Stars, Miller Compressing, and Alter, crushed my car or caused the same (Dkt. 11-1 p. 8) and transferred RICO aluminum to Altech (Dkt. 11-1 pp. 12-14), which is a joint venture between Alter Trading and Toyota Tsusho (Dkt. 11-1 p. 13) and was headed by David Klein an executive in common between Alter Trading, Toyota Tsusho America, and Altech (Dkt. 11-1 pp. 12-14). That RICO aluminum then entered the Toyota supply chain through Altech and Toyota Tsushos (Dkt. 11-1 p. 13), for distribution by Toyota and Toyota subsidiaries (Dkt. 11-1 pp. 13-15).



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

The 2012-2013 pleading (Dkt. 11-1 pp. 4-6) shows the acquisition and maintenance of Miller Compressing and Seven Stars, into and within the Alter Trading / Goldstein family and group domain of control through the commission of predicate acts, including procurement of unlicensed money transmitting (Dkt. 11-1 p. 4) , false swearing in connection with that acquisition (Dkt. 11-1 p. 5-6), and money laundering as part of a series of transactions that involved proceeds of crime such as unlicensed money transmitting and dealing in stolen cars (Dkt. 11-1 p. 5).

Acquisition and maintenance of interests in / control of enterprises through racketeering is also shown by 2019-2024 acts (Dkt. 11-1 pp. 6-10), and shown to be a proximate cause of my injuries by the 2021-2024 acts (Dkt. 11-1 pp. 8-10) indicating that persons involved in the 2012 acquisition and 2019 reorganization destroyed my car through racketeering (Dkt. 11-1 p. 8), while causing (Dkt. 11-1 pp. 8-9), aiding (Dkt. 11-1 pp. 8-9), and managing (Dkt. 11-1 pp. 8-9) the destroying enterprises through racketeering. Such acts causally tie my injuries to acquisition and maintenance for subsection (b) and to specific acts for subsection (c) and wherever else applicable.

My pleading shows acquisition and control of enterprises through racketeering, including my sole proprietorship (Dkt. 11-1 pp. 3-4, 8-10), Miller Compressing (Dkt. 11-1 pp. 4-10), Seven Stars (Dkt. 11-1 pp. 4-10), et al. It shows participation in the conduct of those enterprises through racketeering by Seven Stars (Dkt. 11-1 pp. 4-10), Miller Compressing (Dkt. 11-1 pp. 4-10), Alter Trading Corporation (Dkt. 11-1 pp. 4-10), Goldstein Group (Dkt. 11-1 pp. 4-7), Jon Spigel (Dkt. 11-1 pp. 5-6), Quarles (Dkt. 11-1 pp. 5-6, 9-10), et al.

The 2021-2024 predicate acts are the only acts that immediately involved me, and causally tie my business injuries (Dkt. 11-1 pp. 3-4) to the commission of predicate acts (Dkt. 11-1 pp. 8-9). Scarcity of space required tricks of law, infra (cite), but each predicate act defendant (Dkt. 11-1 p. 3) has at least one higher specificity allegation, in order with their enumeration in DKT 11-1, infra (cite).

**Appeals court**: This court has jurisdiction under **28 U.S.C. 1291**.

**Final judgement**: This appeal is from a final judgement that disposed of all parties' claims. All of my claims against the defendants were dismissed as frivolous with prejudice.

# Issues presented

The issues presented for review include; Whether the word "shall" in 28 U.S.C. §1915 is directory or mandatory. • Whether the words "any time" permit a district court to choose the time at which screening occurs. • Whether frivolity is reviewed de novo specifically for seventh amendment purposes • Whether my action was frivolous • Whether my action stated claims

# Concise statement of the case

Armstrong brought a federal action under **28 U.S.C. 1915.** The case was dismissed at screening as frivolous and for failure to state a claim. The complaint was amended once before the first screening order. The case had three screening orders, and was dismissed in the third. After the first screening order (DKT 7) There was a standalone rule 60 motion (DKT 8) and one omnibus motion including a second rule 60 (DKT 9), and after the second screening order (DKT 10) another omnibus motion (DKT 11).

The aforementioned omnibus motions included motions for leave to file proposed amended complaints that didn't perfectly align with the screening orders. The motion for leave to file a second amendment was filed with a proposed second amendment attached as an exhibit (DKT 9-1) pursuant to **Civil L.R. 15 (b)**, the same is

true for the proposed third amendment (DKT 11-1). The second screening order treated my attached proposed amendment as a completed amendment (Dkt. 10 pp. 2, 9) and falsely accused me of filing a non-compliant amendment (Dkt 10 pp. 2-4, 6-7). My DKT 9 omnibus motion, still relevant for future amendment, was denied as moot on the basis of that mistake (DKT 10 pp. 9-10). The third screening order treated the prior filing as a proposed amendment (Dkt. 12 p. 2), but stated that it hadn't been accepted (Dkt. 12 p. 2), despite that it was treated as a completed amendment.

Which complaint is operative for appeal is unclear. Pages 3 and 9-10 of DKT 12 show denial of my DKT 11 omnibus motion that had my request for leave to amend, pages 2 and 9 of DKT 10 show my second proposed amendment treated as completed but pages 9 and 10 of DKT 10 show denial of my DKT 9 motion that had the request for leave to amend, and DKT 12 treats that prior filing as a rejected proposed amendment (Dkt. 12 p. 2). This is an issue, and unfair, especially if the complaint is the entire record when reviewing dismissal for frivolity, ***Felton v. City of Chicago, 827 F.3d 632 (7th Cir. 2016).*** "But when screening for frivolousness, 'the complaint is the entire record of the case.'" Flip-floppy treatment of my proposed second amendment

and flat denials of my DKT 9 and DKT 11 omnibus motions that had the requests to amend obscures which complaint is operative.

The screening orders limited my pleading and progressively stripped my complaint (Dkt. 7 pp. 3, 9-10, DKT 10 pp. 2, 6-7, 10-11) prior to the indiscriminate dismissal (Dkt. 12 pp. 4-6, 10). The first screening order limited me to fifteen pages and ten defendants, and not a specific ten but an arbitrary cap (Dkt. 7 pp. 3, 9-10). I proposed an amendment where my personal count excluded title pages (Dkt. 9 pp. 4, 8), but refrained from removing defendants needing at least an appealable order. The court then insisted that title pages count (DKT 10 pp. 7, 10) so I removed another four pages (DKT 11-1). This greatly impaired my ability to state my claim relative to fee paying litigants from the first order onwards.

## Summary of arguments

This appeal argues that factual and legal findings on which the judgement rests are infirm because of legal errors and so judgement should be reversed. I argue that those errors include errors affecting construction of my complaint and the laws, imposing heightened pleading standards, limiting the contents of my complaint, constitutional errors, etc.

This appeal argues that in ***28 U.S.C. 1915*** the word "Shall" is directory, such that courts maintain discretion whether to screen the complaint. This is supported by SCOTUS authority contemporaneous with the prison litigation reform act, showing that the use of shall was at least ambiguous, recognizing legislative use of a discretionary directory shall, and illustrating then controlling rules of construction. It's argued that a mandatory "shall" would make the term "be required" redundant at places, and so a directory shall was required by contemporaneous law. I argue that the statute simply authorizes courts to act on their own motion showing prior SCOTUS construction indicating the same. I argue that "any time" permits screening at any time, and that anything to the contrary is ultra vires for conflicting with statutes and SCOTUS opinions limiting judge-made rules of decision and inherent power.

This appeal argues that the imposition of sanctions was unlawful. I argue that the sanctions were not permissible by any recognized sanctioning standard, delineating sources of sanctioning power including ***Fed. R. Civ. P. (FRCP) 11, 26, 83, U.S.C. Title 18 401, 402***, and inherent power through assorted lenses. I argue that the unlawful imposition of those penalties prejudiced me in the preservation and litigation of issues and evidence in the district court with that prejudice extending to



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

this appeal. I argue that the sanctions were in substance summary criminal contempt punishment without due process.

This appeal argues that the district court erroneously applied heightened pleading standards broadly to my civil RICO pleading. I argue that the court improperly demanded rule 9 pleading generally and not just to the limited set of fraud and damages allegations where it may properly apply. I argue that the court improperly imposed statutory heightened pleading standards specifically applicable to securities litigation, through the Private Securities Litigation Reform Act (PSLRA).

This appeal argues that the court failed to follow the law when construing my complaint. I argue that the court did not construe my complaint liberally, did not construe it so as to do justice, did not take general allegations as including specific facts necessary to support them, did not weigh the initial assessment of factual allegations in my favor, and did not draw all reasonable inferences in my favor. I argue that the first four errors apply to every theory of dismissal. I argue that these were errors of law that prejudiced factual determinations on which judgement was based.



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

This appeal argues that the court's screening orders were greatly defective, and show that the court did not follow the law when screening complaints. I argue that they show the imposition of heightened pleading standards, failure to follow the law when construing my complaints, clearly erroneous factual determinations, etc.

This appeal argues that the court's many errors injured my seventh and fifth amendment rights. I argue that legal errors violated due process by unlawfully influencing my case leading up to dismissal and at the time of dismissal. I argue that the characterization of my complaint was malicious, and intended to insulate a plainly unlawful dismissal from correction on appeal. I argue that the court and §1915 as applied deprived me of my seventh amendment rights to a jury, and that whether the seventh amendment was violated is reviewed de novo. I argue that the sanctions were illegal and so the filing bar unlawfully prejudiced post judgement practice in the district court and the conduct of this appeal. I argue that **28 U.S.C 1915** should be construed to avoid constitutional questions rather than such questions being resolved circularly in reliance on findings that might injure rights. I argue that the sanctions, in both result and manner imposed violated due process and the first amendment.

This appeal argues that my claims weren't frivolous. I argue that the standard of review on dismissals for frivolity should be less deferential following the prison litigation reform act because of language removed from §1915 that was at the same time incorporated in §1997a. I argue that the order the court entered is a strong one involving an “at best” determination, and that this court should be careful to review the order that was actually entered. I argue that each ground that the court relied on when finding frivolity fails to support that determination when scrutinized, even under a deferential standard of review.

This appeal argues that my complaint did state claims. I argue that it's a legal error to find both frivolity and failure to state a claim, because frivolity is jurisdictional and so should be decided first with the court going no further if it finds frivolity. I argue that my complaint tied my injuries to the statutory subsections by my pleading of predicate acts. I argue that

# Factual determinations infirm

The ratio decidendi involved a futility of amendment determination. Futility is a factual determination and if it's infirm because of legal error then each dismissal should be reversed for fact finding without legal error pursuant to

***Pullman-Standard v. Swint, 456 U.S. 273 (1982)*** "Likewise, where findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue". Whether or not a complaint states a claim is a question of law, ***Bell v. Hood, 327 U.S. 678 (1946)*** "Whether the complaint states a cause of action on which relief could be granted is a question of law". If my complaint stated a non-frivolous claim anywhere then the finding that amendment was futile is infirm because of that legal error. Accordingly, the dismissals should be uniformly reversed as they rested on that determination. This result also attains from other legal errors that tainted the judgement.

# Departures from usual practice

The district court's handling of my case departed from the usual practice in other cases starting from the court's first screening order. The first screening order directed me to limit any amended complaint to no more than fifteen pages and ten defendants. This imposed a draconian limitation on my ability to effectively state my claims, greatly disadvantaging me compared to fee paying litigants, and was a stark departure from usual practices in the conduct of cases.

SCOTUS wrote clearly in ***Jones v. Bock, 549 U.S. 199 (2007)***;

> "We think that the PLRA's screening requirement does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself. Before the PLRA, the in forma pauperis provision of §1915, applicable to most prisoner litigation, permitted sua sponte dismissal only if an action was frivolous or malicious. ***28 U. S. C. §1915(d)*** (1994 ed.); see also ***Neitzke, 490 U. S.***, at ***320*** (concluding that a complaint that fails to state a claim was not frivolous under §1915(d) and thus could not be dismissed sua sponte). In the PLRA, Congress added failure to state a claim and seeking monetary relief from a defendant immune from such relief as grounds for sua sponte dismissal of in forma pauperis cases, ***§1915(e)(2)(B)*** (2000 ed.)"

The recent case of ***Perttu v. Richards, 605 U.S. 460, 468 (2025)*** confirms that this adherence to the usual practice extends generally to the different aspects of a case, such as whether affirmative defenses that depend on factual determinations should be given to a jury rather than screened out.

The limiting orders combined with the communicated threat to my e-filing privileges (cite) and the brutality that I suffered by one of the defendants in the court building (cite), prevented me from even daring to include evidence attached as exhibits to proposed amendments. The threat to my e-filing privileges attached to the limiting order was also its own departure from usual practice. The limiting order itself was unusual and I also

faced unusual jeopardy. I had no reason to believe that my opportunity to plead my case would be so drastically limited by the first pleading order.

The district court erred by treating the claims in my complaint as a monolith, and throwing out the good with the bad, ***Bausch v. Stryker Corp., 630 F.3d 546, 559-60 (7th Cir. 2010)***;

"When a complaint asserts claims that are legally valid and those that are not, the correct judicial response is not to dismiss the complaint, let alone with prejudice. It's not even necessary to require a plaintiff to file a 'cleaner' amended complaint. The case may proceed under the original complaint, with the understanding, provided by the court if necessary, as to the proper scope of claims that can survive the legal challenge."

This abuse of discretion is especially nefarious, because Judge Stadtmueller himself has been personally admonished that in screening complaints district court judges "may not throw out the haystack, needle and all.", ***Brownlee v. Conine, 957 F.2d 353 (7th Cir. 1992)***. Unfortunately in my case I was confronted as a litigant with a judge insistent on disregarding the federal rules of civil procedure as well as the orders of this court and the Supreme Court Of The United States. The district court departed from the usual practice described in ***Bausch***, and doing so conflicted with ***Jones*** and ***Perttu***.

# Errors of construction: 28 U.S.C. 1915

***Railroad Company v. Hecht, 95 U.S. 168 (1877)*** "As against the government, the word 'shall,' when used in statutes, is to be construed as 'may' unless a contrary intention is manifest." • ***West Wisconsin Railway Company v. Foley, 94 U.S. 100 (1876)*** "'Shall' ought undoubtedly to be construed as meaning 'must,' for the purpose of sustaining or enforcing an existing right; but it need not be for creating a new one. Neither under the statute nor the rule has a party the legal right to demand a judgment for damages in excess of interest. The amount of the damages, as well as the propriety of giving any at all, is left to the judicial discretion of the court." • ***Richbourg Motor Co. v. United States, 281 U.S. 528 (1930)*** "Undoubtedly, 'shall' is sometimes the equivalent of 'may' when used in a statute prospectively affecting government action." • ***Crawford-El v. Britton, 523 U.S. 574 (1998)*** "The Prison Litigation Reform Act…authorizes the court on its own motion to dismiss 'frivolous,' 'malicious,' or meritless actions."

Prior to the prison litigation reform act (PLRA) the forma pauperis statute unambiguously merely permitted a court to dismiss a complaint. The PLRA changed the "may" dismiss "if satisfied" language to "shall dismiss" if the court "determines"

language. ***Hecht***, ***Foley***, and ***Richbourg Motor Co***. each show that the switch to “shall” in the context of the existing law was ambiguous. Since the statute was ambiguous under then existing law it required construction, and a question of if the switch sufficed to effect a substantive change of law is reached.

***Crawford-el*** was contemporaneous with the PLRA and shows SCOTUS two years after interpreting the statute as authorizing courts to act on their own motions, which is distinct from acting under compulsion. Statutory construction is entitled to special precedential weight, but SCOTUS trumps circuits, and they construed the current statute as authorizing courts own motions, and have never embraced an alternative viewpoint. The “own motion” language is antithetical to statutory compulsion.

“In the construction of a doubtful and ambiguous law, the cotemporaneous construction of those who were called upon to act under the law and were appointed to carry its provisions into effect is entitled to very great respect.” (***Edwards' Lessee v. Darby, 25 U.S. 206 (1827)***), “The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction.” (***United States v. Wiltberger, 18 U.S. 76 (1820)***), “Where rights are infringed, where fundamental principles are overthrown,

where the general system of the laws is departed from, the legislative intention must be expressed with irresistible clearness to induce a court of justice to suppose a design to effect such objects." (***United States v. Fisher, 6 U.S. 358 (1805)***)

With the foregoing authorities, the contemporaneous construction precedents that required giving effect to words in statutes are the most compelling evidence favoring a permissive "shall".

***Market Company v. Hoffman, 101 U.S. 112 (1879)*** "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." • ***Reiter v. Sonotone Corp., 442 U.S. 330 (1979)*** "In construing a statute, we are obliged to give effect, if possible, to every word Congress used." • ***Freytag v. Commissioner, 501 U.S. 868 (1991)*** "Our cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.'" • ***United States v. Nordic Village, Inc., 503 U.S. 30 (1992)*** "a statute must, if possible, be construed in such fashion that every word has some operative effect." • ***Gustafson v. Alloyd Co., 513 U.S. 561 (1995)*** "First, this Court will avoid a reading which renders some words altogether redundant."

Section **§1915** uses the term "be required" five times. One time it says "may be required". The other uses consist of the phrase "The prisoner shall be required" which is used four times at **(b) (1)** and **(2)** and at **(f) (2) (A)** and **(B)**, once each. If "shall" was obligatory the words "be required" would be redundant. Since "shall" was at least ambiguous under then existing law, other contemporaneous construction precedents compel a conclusion that shall was used in its directory but not compulsory sense. The following cases also show the long history of directory "shall";

***Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 361-62 (1816)*** construing statute language including "shall take good and sufficient security" in **1 Stat. 84-85**, "We consider that provision as merely directory to the judge; and that an omission does not avoid the writ of error." • ***United States v. Kirkpatrick, 22 U.S. (9 Wheat.) 720, 735-36 (1824)*** statute language including "it shall be the duty of the Comptroller" in **3 Stat. 22, 33**, "They are merely directory to such officers, and constitute no part of the contract with the surety." • ***United States v. Vanzandt, 24 U.S. (11 Wheat.) 184, 187-90 (1826)*** statute language including "he shall be recalled, and another appointed in his place" in **3 Stat. 298**, "The provisions requiring the delinquent paymaster to be recalled, and a new

appointment to be made in his place, are merely directory and intended for the security of the government." • ***Ex Parte Woollen, 104 U.S. 300, 301-02 (1881)*** statute language including "appeal shall be entered" in **14 Stat. 520**, "Undoubtedly the provisions of the regulation were directory, rather than mandatory." • ***United States v. Coe, 155 U.S. 76, 84 (1894)*** statute language including "the Supreme Court shall retry the cause" in **26 Stat. 854, 856**, "The statute is not mandatory, but empowers the court to direct further proofs and to amend the record if, in its judgment, the case demands its interposition."

The directory use of the word shall was widely recognized and utilized in statutes and was required by the law of the time. Controlling SCOTUS authority absolutely foreclosed construing "be required" in the statute as being redundant with "shall".

No less significant but perhaps less controversial, is the district court's treatment of the words *any time" in the statute. **§1915** directs the court to act at "any time", but the court erroneously held that he was required to screen at the start of my case as a prerequisite for granting my motion. Not giving effect to the words "any time" prejudiced the quality of review, the scope of opportunity allowed to cure deficiencies, and contributed to the futility determination.

Treating **§1915** as requiring screening at the start of the case in order to grant my motion was legal error, despite any contrary authority which may exist. As stated above SCOTUS in ***Crawford-El*** already construed the statute as authorizing courts to act on their own motion, and that holding is antithetical to statutory compulsion. Even if this court disagrees on the point of a directory-shall, in contrast to that issue, the words "any time" aren't ambiguous or challenged by competing language. Those words control the permissible timing of any such motions. Accordingly, judge-made law to the contrary is an ultra vires exercise of power because of conflict with statutes, unless justified by special circumstances like constitutional need.

"There is no federal general common law" (***Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938))***, "Instead, only limited areas exist in which federal judges may appropriately craft the rule of decision."(***Rodriguez v. Federal Deposit Insurance Corp., 589 U.S. 132 (2020))***, Such instances are "few and restricted" ***(Wheeldin v. Wheeler, 373 U. S. 647, 651 (1963)),*** falling into essentially two categories: those where a federal rule of decision is "necessary to protect uniquely federal interests" ***(Banco Nacional de Cuba v. Sabbatino, 376 U. S. 398, 426 (1964))***, and those where Congress has given the courts the power



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

to develop substantive law, ***(Wheeldin v. Wheeler, supra, at 373 U. S. 652.)*** "Of course, the federal interest guarded in all these cases is one the ultimate statement of which is derived from a federal statute." (***Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398 (1964))***, "the exercise of an inherent power cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute." (***Dietz v. Bouldin, 579 U.S. 40, 45 (2016)),*** see generally ***(Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981))*** (Middle of sequence is **Texas** edited so as to avoid long quote)

A specific time rule is inconsistent with SCOTUS authority governing judicial rulemaking, and the aforementioned laws of construction also apply to the word "any time". ***Reiter*** and other cases require that they be given effect.

Another key distinction in the language of **§1915** is that between the language "<u>the case</u>" and "<u>the action</u>" in (e)(2), which should be read in light of the use of the term "or any portion of the complaint" in §1915A (b) and the omission of similar language from §1915. For non-prisoner litigants the statute does not permit dismissal of any part of a litigants case, except where the action as a whole is frivolous, it's not enough that just certain claims may be frivolous or legally deficienct. The term

"the case" has been interpreted as calling for only dismissal of the complaint rather than the entire action, and the distinction between dismissal of actions and dismissals of complaints was established prior to the PLRA (cite) and so the word action should be accorded it's peculiar meaning in the law.

Seventh Circuit precedent has called **$1915(e)(2)(B)(i)** materially identical with its predecessor **§1915(d)**, ***Gladney v. Pendleton Correctional Facility, 302 F.3d 773 (7th Cir. 2002)*** "Here we pause to note that some of the cases we cited earlier were decided not under 28 U.S.C. § 1915(d) but under its materially identical successor, section 1915(e) (2) (B) (i)."

Among the most important constructions given to §1915(d) is that from ***Billman v. Indiana Department of Corrections, 56 F.3d 785 (7th Cir. 1995)***;

> "The district court denied leave, and dismissed the suit with prejudice, on the ground that the suit was frivolous. 28 U.S.C. § 1915(d). This ruling was, at the very least, a technical error. As the Supreme Court pointed out in ***Denton v. Hernandez, 504 U.S. 25, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992)***, all that section 1915(d) authorizes the district court to do if it determines that the suit is frivolous is to deny leave to proceed in forma pauperis. The plaintiff can then try to scrape together the funds required for filing a paid suit, and if he succeeds, and refiles the suit, the question of dismissal on the pleadings will be evaluated under Rule 12 of the Federal Rules of Civil Procedure.



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

> The judge's error was substantial and not merely technical if the suit was not frivolous; and although the Supreme Court has ruled that the standard of appellate review of a determination of frivolousness under 28 U.S.C. § 1915(d) is the deferential 'abuse of discretion' standard, ***Denton v. Hernandez***, supra***, 504 U.S.*** at ***34, 112 S. Ct.*** at ***1734***, this cannot be understood entirely literally. En route to determining that a claim is frivolous, the district court must determine whether it is legally insufficient, an issue purely of law on which appellate review is plenary. See, e.g., ***Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991)***; cf. ***Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S. Ct. 1781, 1789, 72 L. Ed. 2d 66 (1982)***. Where discretion in a meaningful sense enters is where--and this is also involved in this case--the district court, having decided that the complaint is legally insufficient, also decides that the suit is so hopeless that the plaintiff should be prevented from trying to save it by amending the complaint. ***Denton v. Hernandez***, supra, ***504 U.S.*** at ***31-35, 112 S. Ct.*** at ***1733-34***; ***DeTomaso v. McGinnis, 970 F.2d 211, 213-14 (7th Cir. 1992)***; ***Smith-Bey v. Hospital Administrator, 841 F.2d 751, 758 (7th Cir. 1988)***."

**Billman** sets out a two step process for frivolous finding, and shows that error affecting the assessment of legal sufficiency also prejudices a holding of frivolity. The same result argued for on the basis of **Pullman-standard** is also supported independently by ***Billman***. Post-PLRA the two step process was affirmed in ***Edwards v. Snyder, 478 F.3d 827 (7th Circuit, 2007)***.

## Errors of construction generally

My complaint wasn't construed as the law requires and that was legal error, "a document filed pro se is 'to be liberally construed'" (***Erickson v. Pardus, 551 U.S. 89, 94 (2007)***),



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

"Pleadings must be construed so as to do justice" (***Fed. R. Civ. P. 8(e)***), "general allegations embrace those specific facts that are necessary to support the claim" (***Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)***), "this initial assessment of the in forma pauperis plaintiff's factual allegations must be weighted in favor of the plaintiff" (***Denton v. Hernandez, 504 U.S. 25, 32–33 (1992)***), and courts must "draw reasonable inferences in the [plaintiff's] favor" and "consider the allegations as a whole" (***National Rifle Association of America v. Vullo, 602 U.S. 175, 194–95 (2024)***).

The screening orders show that these laws weren't followed, instead of liberal reading, specific fact taking, and favorable inference, I was hostilely interpreted and illegally subjected to heightened pleading standards. The judgement rests on unlawful construction and should be reversed, "the District Court was required to interpret the pro se complaint liberally, and when…read that way, it…could not properly be dismissed…For these reasons…we reverse the judgment". ***Lujan*** applies to any motion to dismiss, see ***Bennett v. Spear, 520 U.S. 154***, ***168 (1997)*** ", including for lack of jurisdiction, **1915(e)(2)(B)(i)** is jurisdictional infra (cite), and a §1915 dismissal is on the court's motion to dismiss, supra (cite),

# Screening orders

The examples below show bias, clearly erroneous fact finding, and legal errors, including errors of construction, erroneous heightened pleading, et al. They support reversal of the dismissals and sanctions;

In the third screening order DKT 12 P. 4, The court stated;

- "For instance, in reviewing his third amended complaint, Plaintiff alleges that the facilities belonging to "Alter Transloading & Logistics" were used for "drug smuggling" and that "Alter Trading Corporation, Alter Transloading & Logistics, Miller Compressing Company, and Seven Stars Auto Parts LLC were principals." ECF No. 11-1 at 8–9. However, Plaintiff never provides any facts explaining what these companies did to support this assertion."

- In the same sentence where I specify that the alleged smuggling involved drugs, I also say that Seven Stars Auto falsified an increase in my stolen cars weight ticket to corroborate falsified shipping manifests, (DKT 11-1 p. 8). I also in the same paragraph allege <u>use</u> of Alter logistics facilities and their <u>consent to that use</u> each of which are supporting facts (DKT 11-1 pp. 8-9). Elsewhere I describe commission of predicate acts while processing my stolen vehicle which was the subject of the weight ticket by Alter Trading and Miller with transfer to their shredding

operation by Seven Stars (Dkt. 11-1 p. 8), and others acting as accessories. Criminal conduct when processing it and after and control of Seven Stars supports inferring involvement in the drug dealing.

In the third screening order DKT 12 PP. 4-5, the court stated;

- "In another instance, he suggests that the 'Goldstein companies' engaged in a 'pattern of felony fraud arson,' and while he identifies certain individuals with the last name Goldstein, he never identifies the Goldstein companies to which he refers. Id. at 12."

- I was accusing those businesses of insurance fraud by arson, the arson pleading is two paragraphs long, and in the second paragraph I name the businesses, giving dates, and locations of the fires (Dkt. 11-1 p. 12). Green Bridge is specified in the first paragraph describing Green Bridge setting itself on fire by its expression of what hat was worn. The allegations are of insurance fraud, the businesses that were set on fire are the ones that were being accused.

In the third screening order DKT 12 p. 7 the court stated;

- "Plaintiff acknowledges how inappropriate his behavior is, writing that '[i]f you want to hold me in contempt, hold me in contempt, and let me appeal the contempt sanction.'"

- This takes my statement out of context and distorts it's meaning. The next sentence of my motion for reconsideration cited ***Maness v. Meyers, 419 U.S. 449 (1975)*** which discussed the accepted practice when facing unlawful discovery orders of refusing to comply and appealing any resulting contempt sanctions, and includes a quote stating the general rule of law (Dkt. 11 p. 5). The sentence after expressly relates that quote to the discovery orders context and that rule of law to my case. Not an admission.

In the second screening order DKT 10 P. 8, The court stated;

- "For instance, midway through the AC, Armstrong alleged that the 'commission of the above[-]described act was also the object of a conspiracy between the involved parties, chargeable separately and distinguishable as its own predicate act for Wisconsin RICO.' ECF No. 9-1 at 9. However, by this point in the pleading, Armstrong had alleged multiple possible wrongful acts,such as the production of 'conspiracy to commit penalty for false documents' and 'false swearing,' which may constitute the 'the above-described act' to which he referred. See id. at 8–9. In addition, there is no way to know to whom Armstrong referred when he cited to the 'involved parties.' See id."

- The relevant section of my complaint consists of four predicate acts, in order those are, penalty for false



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

documents, conspiracy to commit penalty for false documents, false swearing, and conspiracy to commit false swearing. The court claimed confusion as to what act the conspiracy pleading referred to but the conspiracy pleading said which act it referred to in bolded and underlined text at the start of the paragraph. What am I supposed to do with that? If that's somehow a source of confusion, what on earth am I supposed to do? The second, third, and fourth acts expressly incorporate allegations from act one as their substantive basis, with only limited extra pleading.

## Seventh amendment

***Simler v. Conner, 372 U.S. 221 (1963)*** provides that;

> "the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity, as well as other, actions. The federal policy favoring jury trials is of historic and continuing strength. ***Parsons v. Bedford Breedlove & Robeson, 3 Pet. 433, 28 U. S. 446-449***; ***Scott v. Neely, 140 U. S. 106; Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U. S. 525, 356 U. S. 537-539; Beacon Theatres, Inc. v. Westover, 359 U. S. 500; Dairy Queen, Inc. v. Wood, 369 U. S. 469.*** Only through a holding that the jury trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved."

The seventh amendment demands uniformity in its application, and the right to a jury trial is to be determined as a matter of federal law. The constitutionality of judicial fact finding

wasn't raised in either ***Denton*** or ***Neitzke***. They and others waived it. SCOTUS has never addressed the seventh amendment in the context of §1915, and has never overruled the plain language holding of ***Simler***. This holding extends to determining if the seventh amendment was implicated or violated.

This court in the past has responded to seventh amendment challenges stating that no seventh amendment right attaches to frivolous claims, (cite case). In the context of screening the logic is circular and conflicts with SCOTUS precedent, because it depends on the resolution of facts already removed from a jury for the conclusion that claims were frivolous in a given case to resolve the issue. The correct approach avoids the constitutional issue to begin with by construing the statute in a way that avoids it, ***Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999)***;

> "Under our precedents, "[b]efore inquiring into the applicability of the Seventh Amendment, we must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" ***Feltner v. Columbia Pictures Television, Inc., 523 U. S. 340, 345 (1998)*** (quoting ***Tull v. United States, 481 U. S. 412, 417, n. 3 (1987)***); accord, ***Curtis v. Loether, 415 U. S. 189, 192, n. 6 (1974)***."

The meaning of the word frivolous should be determined with reference to the meaning in 1892 when it first appeared in the

original screening statute. Prior to 1892 that word appeared in the cases nearly entirely, if not exclusively, in the context of demurrer, appeals, discussing jurisdiction, especially the federal question doctrine, and cases of inherent power fee waiving respecting fees set by court rules. Claims that show federal question jurisdiction should survive screening, beyond that it should be read as applying to defensive pleadings.

## Due process

Statutory rights to recovery are a species of property protected by the fifth amendment to the United States constitution (cite). I was deprived of my rights to recovery without due process of law. It's settled that no property interest exists in frivolous claims, however, my claims weren't frivolous, and deferential review limited to a complaint is constitutionally insufficient to determine if they're frivolous. In my case the failure to state a claim and frivolity determinations were entered in bad faith to insulate a plainly unlawful dismissal from correction on appeal.

My appeal shows that at least some of my claims were not frivolous, so I either have been injured in constitutional rights, or was put in serious jeopardy of such injury. It's not

a question of if courts get it wrong, it's a matter of how much slips through the cracks. As with the seventh amendment, the statute should be construed to avoid fifth amendment due process issues rather than resolving those issues circularly.

More than anything, the reason that the dismissal injured my due process rights is because of the unfair orders leading up to dismissal that shaped the record at the point of dismissal. Even if the dismissal might otherwise be affirmed when looking only to the complaint and the order of dismissal, as a matter of due process that can't be divorced from the unlawful limiting orders, and the bizarre issues taken in the screening orders.

Due process is not fixed or inflexible. It calls for such procedural protections as the situation demands. In my case due process required more. The case of ***Mathews v. Eldridge, 424 U.S. 319 (1976)*** citing various cases applied the due process holding of ***Armstrong v. Manzo, 380 U. S. 545, (1965)*** to a civil plaintiff in a statutory rights context while also writing that;

> "These decisions underscore the truism that "[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." ***Cafeteria Workers v. McElroy, 367 U. S. 886, 367 U. S. 895 (1961)***. "[D]ue process is flexible, and calls for such procedural protections as the particular situation demands." ***Morrissey v. Brewer, 408 U. S. 471, 408***

> ***U. S. 481 (1972)***. Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. ***Arnett v. Kennedy, supra at 416 U. S. 167-168*** (POWELL, J., concurring in part); ***Goldberg v. Kell***y, supra at ***397 U. S. 263-266***; ***Cafeteria Workers v. McElroy***, supra at ***367 U. S. 895***."

Where the outcome of particular situations is determinative of interests in liberty or property, the court is not without grounds for considering the demands of due process in those situations. My case doesn't require a new rule, it only requires that I be afforded the equality of consideration that I was already entitled to by controlling SCOTUS authority and statutes, and that the plain language of governing rules, statutes, and precedents be faithfully applied.

As explained elsewhere both above and below, supra (cite), infra (cite) the courts limiting orders handicapped me in stating claims compared to others. The court demanded more detail than the law requires (cite), and gave me less space than others (cite), while construing my complaint and other filings aggressively against me (cite), without the benefits that the law requires (cite). I was denied equality of consideration with non-indigent litigants from the first screening order (cite). I was prevented from including my exhibits with the evidence (cite). The court was telling me that he would dismiss my case

on grounds that the statute does not permit, and the current dismissals for failure to state and claim and frivolity are really just a shield for the unlawful dismissal, shown by the fact that the court makes no attempt to distinguish between any good claims and bad claims.

# My claims aren't frivolous

My appeal should be decided on the basis of the order that was actually entered and the order that was entered said "Plaintiff's allegations are at best wholly 'delusional''. That's clear error. The bar for frivolity is high, requiring a lack of "any arguable basis in law or fact". The court referred to only a few things when calling my allegations frivolous;

> "To start, Plaintiff discuses a racketeering enterprise involving the Goldstein family that dates back almost fifteen years. ECF No. 11-1 at 5, 10, and 11 (discussing alleged co-conspirators Michael and Robert Goldstein's role in the '2012 [m]oney laundering'). He suggests that the Goldstein companies are 'criminal treasuries' for the 'Jewish Mafia.' Id. at 11. He further suggests that he does not 'know who was killed' or 'where the bodies are buried' but that they are "made men" and that '[t]hey're more likely than not 'made' to even be in their positions, like Pablo Escobar's babysitters.' Considered together, these allegations mirror those in Holland, where the Seventh Circuit upheld the dismissal of a complaint that alleged that defendants had plotted, for over twenty years, a



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

'wide-ranging conspiracy' against the plaintiff. 503 F. App'x at 477."

That's the entire documented rationale for finding frivolity.

**On continuity**: A thirteen year pattern isn't frivolous. The pattern reaches nine years and ten acts just from one company not getting a proper license to transmit money, or because the transfers involved the proceeds of even one crime. My one stolen car and the prior state lawsuit over it adds another four years. By then thirteen year continuity isn't frivolous no matter what.

**On criminal treasuries**: Stolen cars and the proceeds from them, including my own, and the proceeds from those cars and other crimes, count for considering Goldstein businesses to be criminal treasuries. See the jurisdiction section and the complaint. It's not frivolous.

**On referring to Defendants as a mafia**: I called Goldstein family defendants a mafia, but the allegation itself is mundane. The allegation is that Goldstein family defendants agreed to the use or investment of income by their family businesses and family members, who had derived some of that income from racketeering that they were principles in. The alleged pattern supports my case without anything crazy, the acts are mostly lying on

paperwork and crushing stolen cars by scrap metal recyclers. That's too mundane to be frivolous. If their family businesses as criminal treasuries isn't frivolous, neither is considering them a mafia for profiting from ill gotten gains.

The same mundanity ultimately applies to all of the conspiracy defendants, a few Goldstein family members, a few Goldstein company executives, and a few other businesses that they work with. It also applies to conspiracy for the other subsections. How is it frivolous that a few people who own a business, and who work at or with the business, agree with how the business operates? It's not frivolous. Far from being in the nature of delusion, it's actually easy for almost anyone to believe. How many stolen cars do they have to crush for people to believe that owners and management agree with what they're doing?

**About who was killed and where the bodies are buried**: Those averments relate to myself and my own cognition so practically can't be delusional. I can't be delusional about what I myself am or am not aware of or my own beliefs. That's an oxymoron. Plus, it's figurative language, like saying they have skeletons in their closet but I don't know who the bones belong to.

**About made men**: One of these statements was an averment of personal mind. The second of the two was a statement of odds. “Made” just means they've been incriminated. My RICO complaint is not delusional for saying the defendants are probably guilty of racketeering. This improperly resolved disputed facts.

**Pablo Escobar's nannies:** This highlights flaws in complaints being the whole record. I have a quote;

> “Juan Pablo spoke on the radio program ‘A Vivir’ about his childhood memories and the emotional legacy of terror and violence left by his father. ‘I didn't have a childhood, I didn't play with children my own age. My only friends were the violent hitmen my father had placed around me to protect me, like babysitters,’”

Taken literally with context it states there are witnesses who are willing to talk. My complaint referred to something that I saw. That a simple reference would be spun as frivolous is grounds to change the law to take account of facts beyond complaints. In any case it's an analogy, and so at worst is just a bad analogy.

**On mirroring Holland**: My allegations are of an entirely different nature than those in Holland. I don't allege a widespread persecutorial conspiracy. See “**On referring to Defendants as a mafia**” and “**On continuity**”. The conspiracy I



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

alleged is mundane, and largely consistent with what the accused would be expected to do in the first place. A few people filled out paperwork for their employer and fudged it a little, some scrap metal recyclers received, processed, and shipped a few stolen cars, they didn't get a business license that they should have, they threatened a counterclaim, and the conspiracy defendants were fine with it.

The allegations in Holland involved legally frivolous claims, he was accused by his mom of attacking her and claiming that police lacked probable cause while calling them conspirators. He was also alleging that police and prosecutors had an agreement contrary to their functional roles. My case is different because the defendants agreement is consistent with their functional roles as employees, owners, and partners of for-profit businesses. Again, it's not frivolous that a few people who own a business, and who work at or with the business, agree with how the business operates.

Of the acts I alleged, only four years worth of the acts involved me. Those acts were preceded by a pre-existing racketeering pattern, but it's not twenty years of targeted persecution. Equating my claims to Holland's twenty year persecutorial conspiracy against him specifically is dishonest.

# My complaint does state claims

I shouldn't have to appeal dismissal for frivolity and for failure to state a claim at once. This is because dismissals for frivolity are jurisdictional ***Okoro v. Bohman, 164 F.3d 1059, 1064 (7th Cir. 1999)*** "The dismissal of a suit on the ground that the suit is frivolous is a form of jurisdictional dismissal…If the suit was dismissed as frivolous, the only ruling would be that he had no federal case.", jurisdiction should be decided first ***Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94–95 (1998)*** "The requirement that jurisdiction be established as a threshold matter…is inflexible and without exception." and if it's lacking the court should go no further ***Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869)*** "Without jurisdiction the court cannot proceed at all in any cause…Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.". So it was a legal error to dismiss my case as frivolous and also for failure to state a claim, ***Bell v. Hood, 327 U.S. 678, 682 (1946)*** "Whether the complaint states a cause of action on which relief could be granted is a question of law which must be decided after, and not before, the court assumes jurisdiction.", ***Hagans v. Lavine, 415 U.S. 528, 536–37 (1974)*** "Federal courts are



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

without power to entertain claims otherwise within their jurisdiction if they are ‘so attenuated and unsubstantial as to be absolutely devoid of merit’…’wholly insubstantial’…‘obviously frivolous’…or ‘no longer open to discussion.”. It prejudices my appeal to contest both, since space is insufficient in every case and made thinner by unlawful sanctions and other errors.

The limiting orders disadvantaged me in stating claims compared to others, so I used legal tricks. I use ***Lorenz v. Dreske, 62 Wis. 2d 273, 214 N.W.2d 753 (1974)*** “‘Matters of mixed law and fact, the ultimate of which is, in a broad sense, a fact, may be pleaded according to their legal effect…every reasonable intendment must be indulged in in favor of the pleading.’” and ***Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)*** “[any 12(b) motion] presumes that general allegations embrace those specific facts that are necessary to support the claim.” That's applicable to some conspiracy and principle pleading. ***Lorenz*** doesn't bind federal court but it's fine for a rule 15 and was an option. ***Sullivan v. Iron Silver Mining Co., 109 U.S. 550 (1883)*** is binding “by the elementary rules of pleading, facts may be pleaded according to their legal effect without setting forth the particulars that lead to it” . With any claim stated it should have been grounds for a motion to amend instead of on

appeal, because my action was multi-party so judgement shouldn't have been final, **FRCP 54**;

> "When an action presents more than one claim for relief…or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

See "**Facts relevant to district court article III jurisdiction**", infra (cite). My complaint causally ties my injuries to the various statutory subsections by my pleading of various predicate acts (Dkt. 11-1 pp. 4-11). It shows the existence of a racketeering pattern satisfying the elements of both continuity and relationship (Dkt. 11-1 pp. 4-15).

The following non-exhaustive list of allegations with quotations from and citations to the DKT 11-1 proposed third amended complaint show predicate-act pleading for the predicate act defendants, which support at a minimum the claims of conspiracy by inference from their participation in the racketeering pattern as explained in DKT 11 pp. 13-15. In the same order as the enumeration of defendants in DKT 11-1;

1. **Goldstein Group INC** — Dkt. 11-1 p. 5. "Goldstein Group Inc.…caused a Wisconsin DFI trademark filing for

'Wrench-N-Go' in Seven Stars' name"; "the other listed defendants procured, induced, aided, or willfully caused the filing."

2. **Alter Trading Corporation** – Dkt. 11-1 p. 8. "Seven Stars and Alter submitted or caused a Wisconsin bill of sale to be filed with WisDOT/NMVTIS"; "Alter, Miller, and Seven Stars then crushed the vehicle, altered or obliterated the VIN…and possessed the altered-VIN vehicle and parts with intent to dispose of them."

3. **Miller Compressing Company** – Dkt. 11-1 p. 8. "Seven Stars processed, retained, concealed, and transferred the vehicle into Alter Trading's/Miller Compressing's shredding operation"; "Alter, Miller, and Seven Stars then crushed the vehicle, altered or obliterated the VIN."

4. **Seven Stars Auto Parts LLC** – Dkt. 11-1 p. 8. "Seven Stars processed, retained, concealed, and transferred the vehicle"; "Seven Stars and Alter submitted or caused a Wisconsin bill of sale to be filed"; "Seven Stars and Alter also used interstate wires."

5. **Alter Logistics & Transloading Company** — Dkt. 11-1 pp. 8-9. "Facilities operated by Alter Transloading & Logistics were used with their consent for the smuggling."

6. **Alter Metal Recycling** — Dkt. 11-1 p. 6. "Alter Trading Corporation doing business as Alter Metal Recycling was sold at least 143 vehicles"; "After discovering James' practice of misreporting VIN's, Alter Trading Corp. continued to receive stolen cars."

7. **Quarles & Brady LLP** — Dkt. 11-1 p. 5. "Quarles & Brady . . . caused a Wisconsin DFI trademark filing"; "Quarles or Spigel delivered it to DFI."

8. **All Seasons Trucking 2 LLC** — Dkt. 11-1 p. 8. "All Seasons Trucking 2 LLC and Anthony Gardner took, retained, transported, concealed, and transferred the vehicle to Seven Stars Auto Parts LLC without Plaintiff's consent."

9. **MCC Holdings Inc.** — Dkt. 11-1 p. 4. "MCC Holdings INC assumed and transmitted those payments annually"; "MCC Holdings INC received money for transmission and either lacked a required money-transmitter license or transmitted proceeds of crimes."

10. **Toyota Motor Corporation** – Dkt. 11-1 p. 13. "Toyota Motor Corporation ('TMC') CEO Akio Toyoda pushed from the top down the 5-minute fuel up"; "TMC directed U.S. operations through recurring global hydrogen reviews and committee directives."

11. **Toyota Motor North America** – Dkt. 11-1 p. 13. "TMC directed U.S. operations through recurring global hydrogen reviews and committee directives that instructed Toyota Motors North America ('TMNA')…to maintain positive infrastructure messaging."

12. **Toyota Motor Sales USA** – Dkt. 11-1 p. 13. "Toyota Motor Sales ('TMS') transmitted via interstate wires the Toyota.com/mirai website containing false claims."

13. **Toyota Motor Credit Corporation** – Dkt. 11-1 p. 13. "TMC directed U.S. operations…that instructed…Toyota Motor Credit Corporation ('TMCC') to maintain positive infrastructure messaging"; "TMCC transmitted via mail and wire thousands of billing statements."

14. **Toyota Financial Services Corporation** — Dkt. 11-1 p. 14. "The Toyota defendants each engaged in an extensive mail and wire fraud pattern related to the distribution of Mirai and other vehicles."

15. **Toyota Tsusho Corporation** — Dkt. 11-1 p. 13. "Altech is a joint venture between Alter Trading and Toyota Tsushos"; "Such ZORBA includes RICO derived aluminum from the processing of stolen cars."

16. **Toyota Tsusho America Inc.** — Dkt. 11-1 p. 13. "David Klein is an Alter executive and was simultaneously Altech Recycling CEO, and a Toyota Tsushos executive"; "Altech is a joint venture between Alter Trading and Toyota Tsushos."

17. **Altech Recycling LLC** — Dkt. 11-1 p. 13. "Altech is a joint venture between Alter Trading and Toyota Tsushos, which processes aluminum scrap into zorba that enters the Toyota supply chain."

18. **Chanel** — Dkt. 11-1 p. 8. "Chanel took Plaintiff's vehicle without consent and with intent to permanently deprive him of it, then transferred it into the All Seasons/Anthony Gardner towing chain."

19. **Anthony Ray Gardner JR** — Dkt. 11-1 p. 8. “All Seasons Trucking 2 LLC and Anthony Gardner took, retained, transported, concealed, and transferred the vehicle to Seven Stars Auto Parts LLC.”

20. **Bryan Downer** — Dkt. 11-1 p. 9. “Bryan Downer said it was not his ‘first rodeo,’ that Plaintiff could not do anything to them”; “Plaintiff was threatened with a counterclaim if he sued.”

21. **Joseph Poehlmann** — Dkt. 11-1 p. 9. “Quarles & Brady, and Joseph Poehlmann procured Robert G. Ellis to submit a sworn affidavit.”

22. **Robert Goldstein** — Dkt. 11-1 p. 4. “Robert Goldstein…procured, induced, willfully caused, or aided MCC Holdings INC in operating as an unlicensed money transmitter.”

23. **Michael Goldstein** — Dkt. 11-1 p. 4. “Michael Goldstein…procured, induced, willfully caused, or aided MCC Holdings INC in operating as an unlicensed money transmitter.”

24. **Marc Goldstein** — Dkt. 11-1 p. 7. "Marc Goldstein…was set up as the president of GGI Motors and AIMS"; "Marc Goldstein…participated as principals."

25. **Jeffery Goldstein** — Dkt. 11-1 p. 12. "In 2016 Jeff Goldstein and accomplices set fire to a building next to a warehouse for Alter Trading Corporation, with intent to collect insurance."

26. **Robert G. Ellis** — Dkt. 11-1 p. 9. "Ellis knowingly falsely swore that Seven Stars had a registered DBA of 'Wrench 'N Go'"; "Ellis also falsely swore that Miller Compressing had nothing to do with the events."

27. **John Busby** — Dkt. 11-1 p. 4. "John Busby…procured, induced, willfully caused, or aided MCC Holdings INC in operating as an unlicensed money transmitter."

28. **Jon Spigel** — Dkt. 11-1 p. 5. "Spigel signed the false sworn statement"; "Spigel delivered it to DFI."

# Sanctions

The district court cites ***Luedtke v. Keyes, No. 22-cv-589-jdp, 2023 WL 2894535, at *1 (W.D. Wis. Apr. 11, 2023)*** for imposing sanctions (Dkt. 12 p. 8) seemingly for using strong language. However ***Luedtke*** is inapposite, since he was warned against using such language under threat of dismissal. In my case, sanction for the same violates the **Fed. R. Civ. P. 83 (b)**'s mandate that "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.". There's no rule against explicit language in the Federal rules of civil procedure, the Eastern District of Wisconsin's local rules, the federal statutes, or imposed by precedent governing my conduct.

Imposing sanctions was unlawful no matter how you cut it. It's unlawful as an **FRCP 11** sanction since it was monetary to a party with no show cause order, so not compliant with **FRCP 11 (5)(B)**. **FRCP 26** doesn't apply. It's unlawful under the Eastern District of Wisconsin's local rules since the only broad grant of sanction power under them is in **General L. R. 83 (f)** that only applies to violations of "Local Rules", and other grants of

sanction power in those rules also require violations of specific local rules that aren't applicable:

It's unlawful under **18 U.S.C. 401** since **subsection (1)** only reaches conduct in the courts physical presence or proximity which was held to exclude filing papers and contents of papers in ***United States v. Britton, 731 F.3d 745 (7th Cir. 2013);***

> "The statements purported to be false in the motion to continue did not occur in the court's presence either. See ***United States v. Oberhellmann, 946 F.2d 50, 52 (7th Cir. 1991)*** ('[A] mere filing in the clerk's office could not rise to the level of a contempt committed in the 'actual presence of the court… .'')".

**Subsection (2)** only reaches people who are officers of the court and I'm not an officer of the court. It doesn't reach attorneys under ***Cammer v. United States, 350 U.S. 399, 405 (1956)***, and my affidavit in the record shows my lack of employment.

**Subsection (3)** only applies to lawful writs, process', orders, rules, decrees, or commands, and the order that I drop defendants was not lawful. It was effectively a sua sponte dropping of parties without just terms as required by **Fed. R. Civ. P. 21**. It also violated rights to permissive joinder under **FRCP 20** which says;



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

> "Persons…may be joined in one action as defendants if…(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and…(B) any question of law or fact common to all defendants will arise in the action"

It violated due process under the **U.S. CONST. amend. V** et al, including because of the law's relationship with **28 U.S.C. 453** that requires judges to swear to "<u>do equal right to the poor and to the rich</u>" since it imposed a big disparity in procedural and substantive rights upon indigents or those availing of indigency procedures. Respecting defendants that may have been dropped, it threatened denial of every right that I had in prosecuting the claims and the disposition of those assets, including rights under the **U.S. CONST. amend. VII** to trial by jury, to not be deprived of choses without due process under the **U.S. CONST. amend. V**, etc. **Title 18 U.S.C. 402** also requires lawfulness and so the same arguments apply, including those stated below.

As stated in my motion for reconsideration of the second screening order;

> "SCOTUS has recognized an exception to the 'basic proposition that all orders and judgments of courts must be complied with promptly' ***Maness v. Meyers, 419 U.S. 449 (1975)*** where 'subsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error.' **(id)**. Although that case was in the

> context of unlawful evidence compulsion with witnesses, the same principle applies here."

Restricting me to ten defendants exceeded the court's authority and so was void ab initio and therefore not punishable as contempt. See ***Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348 (1920)***;

> "Courts are constituted by authority, and they cannot go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities. They are not voidable, but simply void, and this even prior to reversal."

As inherent power it's not lawful because my conduct was contempt of the court's authority that the court was punishing, and doing so in a manner and on grounds that are both unreasonable and disallowed by statutes. **Title 18 U.S.C. 401** provides that "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as…" My conduct was outside the reach of the statute. ***Dietz v. Bouldin, 579 U.S. 110 (2016)*** held that;

> "First, the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice. ***Degen v. United States, 517 U. S. 820 -824 (1996)***. Second, the exercise of an inherent power cannot be contrary to any express grant



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

of or limitation on the district court’s power contained in a rule or statute.”

Plus the court wasn't administering justice fairly. It's not fair for me to be limited to ten defendants and fifteen pages for stating my claim after the first screening order.

The statute text contemplates the existence of contempts other than those specified by the statute by its use of the words “none other”. The legislature clearly intended to make certain conduct privileged. In the statute contempts are taken to include “Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.”, as well as “misbehavior” by the courts officers in their official transactions or by any person in the courts physical presence so as to obstruct the administration of justice. From Merriam Webster the definition of contempt includes “unusual or inappropriate lack of fear or reverence for something” and “willful disobedience to or open disrespect of a court, judge, or legislative body”. My conduct fits the bill, clearly contempt, but privileged contempt.

In any case, either my conduct was a contempt of the courts authority and so punishment is precluded by the statute and may turn on whether the orders were lawful, but the imposition of the sanction was nonetheless plainly unlawful because it was

summary, punitive, and resultantly criminal in nature without criminal protections, or my conduct was not a contempt of the courts authority and so punishment was unreasonable because it's precluded under more culpable circumstances involving bona fide contempt.

It's unreasonable for conduct that would be protected from punishment if it were a contempt of the courts authority, to not be protected from punishment simply because it's not a contempt. What can't be punished as a bona fide contempt of the court's authority can not reasonably be punished under the inherent power where it's not a contempt of the courts authority. If the court wants to punish something that's privileged as contempt then it should pass a rule.

The court's imposition of inherent power sanctions can also be shown to be unlawful by resort to ***Vega v. Chicago Board of Education, 109 F.4th 948 (7th Cir. 2024)*** (emphasis added);

> "'Before a court may impose sanctions sua sponte, it must give the offending party notice of its intent to do so and the opportunity to be heard.' ***Johnson v. Cherry, 422 F.3d 540, 551 (7th Cir. 2005)***; ***The Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720 (7th Cir. 2006)***. 'This is true whether the court is sanctioning a party pursuant to its authority under Rule 11, section 1927, or its inherent authority.' **Johnson, 422 F.3d** at **551**. General notices are 'insufficient:' 'the offending party must be on notice of



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

the specific conduct for which she is potentially subject to sanctions.' Id. at 551-52 (citing ***In re Rimsat, Ltd., 212 F.3d 1039, 1045-46 (7th Cir. 2000)***)…The standard for imposing sanctions under the court's inherent authority is similar: the court must find that the party to be sanctioned 'willfully abused the judicial process or otherwise conducted litigation in bad faith.' ***Fuery v. City of Chicago, 900 F.3d 450, 463 (7th Cir. 2018)***. To invoke its inherent sanctions authority, the court must first make a finding that the sanctioned party engaged in bad faith to obstruct the judicial process or bring about the violation of a court order. **Id.**"

# First amendment

The first amendment protects against restraint by all public officials ***Chiles v. Salazar, 607 U.S. ___ (2026)*** "In this Nation, no official—'high or petty'—may command our tongues or silence our voices". The sanctions were in response to something i said that the court didn't like. The only reasons given were speech. It violated the first amendment to sanction me as such. The sanctions and retaliation violated first amendment laws against chilling effects, retaliation, and viewpoint discrimination.

They have a chilling effect on speech. Little is more chilling than ex post facto punishment by courts because of disagreement with bona fide argument. I stand by my blow-job simile. I think it was especially good where there may not be a case for the exact order at issue. I could have compared the limiting order

to if the court had ordered me to kill someone but that could be taken as a threat and speech is already chilled by ***Counterman v. Colorado, 600 U.S. 66 (2023)*** and what they've done to James Comey for using restaurant slang 86 in a meme. I also don't know if I could certify that alternative, it depends on who and how.

The sanctions were punishment in retaliation for speech and that's plainly unconstitutional, ***Hartman v. Moore, 547 U.S. 250 (2006)*** "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out". I was just speaking out about the courts lawlessness and the incompetency of every lawyer that I've ever dealt with. Accordingly I should not have been retaliated against with punishment for my protected expression of a viewpoint.

There's a dearth of precedent for whether courts are limited public forums for parties to cases. I argue that they are because important speech happens in courts, courts are open to certain groups for speaking on certain topics, and a central idea is that such speech is available to the public. It's settled that hallways are non-public, but it's less clear for parties.



Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

Whether or not courts are limited public forums or non-punlic forums for parties, first amendment requirements of viewpoint neutrality apply regardless. ***Perry Educ. Ass'n v. Perry Educators' Ass'n, 460 U.S. 37 (1983)*** "Once the government permits discussion of certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects whether a nonpublic forum is involved or not." If the courts don't allow discussion of sexually explicit conduct then it must be enforced against the United States when prosecuting sex offenses, and until that time the courts should refrain from discriminating against my viewpoints because of sexually explicit metaphor and simile. Certainly so in the absence of prior laws against the same. The court's sanctions therefore violated the first amendment by doing viewpoint discrimination.

Insofar as the sanctions were based to any extent on records of my prior private speech originating outside of this case, that wasn't directed to the court, and wasn't about the court, and was offered into evidence only to support fundamental due process argument regarding bias, the sanctions were wholly inappropriate and patently unconstitutional.

# Relief sought

I'm asking this court to reverse the district court's orders in full, as to all claims against all defendants and all sanctions. I'm asking for a remand to be with instructions that I be allowed to plead my case more fully without disadvantage.

# Certificate of compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

This document contains <13,000 words

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

This document has been prepared in a monospaced typeface using Google Docs version 1.26.251.02.90 with ten characters per inch in 12 point Cousine font.

Electronically signed by: William Louis Armstrong

Plaintiff, Pro Per

Dated: ______________________________

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

### No. 26-2488

# EXHIBIT B

## ORDER DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

ECF No. 21 — entered July 28, 2026
United States District Court for the Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG,

Plaintiff,

UNITED STATES,

Involuntary Plaintiff,

v.

ALTER TRADING CORPORATION, SEVEN STARS AUTO PARTS LLC, MILLER COMPRESSING COMPANY, JON SPIGEL, MICHAEL GOLDSTEIN, ROBERT GOLDSTEIN, GOLDSTEIN GROUP, INC., ROBERT G. ELLIS, QUARLES & BRADY, LLC, ALTER LOGISTICS & TRANSLOADING COMPANY, MCC HOLDING INC., JOHN BUSBY, ALL SEASONS TRUCKING 2 LLC, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, TOYOTA MOTOR SALES, USA, TOYOTA FINANCIAL SERVICES, TOYOTA TSUSHO CORPORATION, TOYOTA TSUSHO AMERICA INC., ALTECH RECYCLING LLC, JEFFREY GOLDSTEIN, KATHY GOLDSTEIN, RICHARD GOLDSTEIN, JOSH MILLAN, MARC GOLDSTEIN, NATHAN MILLAN, SAMANTHA GOLDSTEIN, LAUREN GOLDSTEIN, JEREMY GOLDSTEIN, ALEX GOLDSTEIN, JESSE GOLDSTEIN, RENEE GOLDSTEIN, DAVID KLEIN, JOSEPH POEHLMANN, UNITED STATES, CHANEL, BODY CORPORATE WISCONSIN LLC, TOYOTA MOTOR CREDIT CORPORATION, BRYAN DOWNER, ANTHONY R. GARDINER, JR., ALTER METAL RECYCLING, and GREEN BRIDGE COMPANY,

Defendants.

Case No. 25-CV-1702

7th Cir. Case No. 26-2488

## ORDER


Case: 26-2488 Document: 12 Filed: 08/27/2026 Pages: 68

On November 3, 2025, Plaintiff William Louis Armstrong ("Plaintiff") initiated this action and filed a motion to proceed without prepaying the filing fee. ECF No. 1. On May 29, 2026, the Court dismissed this case as frivolous and for failure to comply with Federal Rule of Civil Procedure 8; at that time, it also denied as moot Plaintiff's motion, ECF No. 4, to proceed without prepayment of the filing fee. ECF No. 12. On July 13, 2026, Plaintiff moved for leave to appeal in forma pauperis. ECF No. 14. Three days later, Plaintiff moved again for leave to appeal in forma pauperis. ECF No. 15.

Pursuant to Federal Rule of Appellate Procedure 24(a), "a party to a district-court action who desires to appeal in forma pauperis . . . must attach [to their motion to appeal in forma pauperis] an affidavit that: (A) shows in . . . detail . . . the party's inability to pay or to give security for fees and costs; (B) claims an entitlement to redress; and (C) states the issues that the party intends to present on appeal."[1] "In non-prisoner cases, our Court of Appeals has established the sensible doctrine that in forma pauperis status requires a plaintiff to show not only financial inability to pay the filing fees but also the advancement of a nonfrivolous claim." *United States ex rel. Ronald v. Austin*, No. 12 C 2274, 2012 U.S. Dist. LEXIS 99588, at *2 (N.D. Ill. July 17, 2022) (citing *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000)); 28 U.S.C. § 1915(a)(3) (An appeal "may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."); *Lee*, 209 F.3d at 1027 (rejecting the idea that good faith requires a subjective inquiry and that frivolousness is merely an objective inquiry because "[t]here is no

[1]This is so unless the party "was permitted to proceed in forma pauperis in the district-court action," in which case the party "may proceed on appeal in forma pauperis without further authorization." FED. R. APP. P. 24(a)(3). Such is not the case here. *See* ECF No. 12.

reason why obviously frivolous appeals such as Lee's, appeals bound to be dismissed as soon as the appellate judges get hold of them, should have to be authorized by the district judge just because the appellant is a lunatic in the literal sense of the word.").

Here, the Court has already found that this litigation is frivolous, ECF No. 12 at 4–6, and that, in addition, sanctions were warranted based on Plaintiff's wholly inappropriate remarks in his filings with this Court. *Id.* at 7–9. Indeed, Plaintiff's most recent complaint, ECF No. 11-1, is rooted in what may be best described as delusional fantasies masquerading as justiciable facts. And Plaintiff's seventy-five-page affidavit in support of his motions to proceed without paying the appellate filing fee, ECF No. 14-1, is yet another example of Plaintiff's disposition toward submitting filings in bad faith. For these reasons, the Court certifies that Plaintiff's appeal cannot be taken in good faith. Therefore, Plaintiff's motions are denied. ECF Nos. 14 and 15.

As such, Plaintiff will not be able to proceed on appeal without paying the appellate filing fee unless the Court of Appeals gives him permission to do so. Plaintiff has thirty (30) days from the date of this Order to request that the Seventh Circuit review the Court's denial of his motions for leave to appeal in forma pauperis. FED. R. APP. P. 24(a)(5). If Plaintiff requests review by the Seventh Circuit, he must include an affidavit and statement of issues he intends to present on appeal as required by Federal Rule of Appellate Procedure 24. He must also provide a copy of this Order, in addition to the notice of appeal he previously filed. If Plaintiff does not request review of this Order, the Seventh Circuit may choose not to address the Court's denial of Plaintiff's motion; instead, it may require Plaintiff to pay the full filing fee before it considers his case. Failure to pay a required fee may result in dismissal of the appeal.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong's motions for leave to appeal in forma pauperis, ECF No. 14 and 15, be and the same are hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge