# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**No. 26-2488**

U.S.C.A. — 7th Circuit
RECEIVED
AUG 31 2026

**WILLIAM L. ARMSTRONG III,**

*Plaintiff-Appellant,*

*v.*

**ALTER TRADING CORPORATION, et al.,**

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:25-cv-01702-JPS
The Honorable J. P. Stadtmueller, District Judge

## OPENING BRIEF OF PLAINTIFF-APPELLANT

William L. Armstrong III, pro se
2580 S. 34th St.
Milwaukee, WI 53215
(414) 248-1487

# TABLE OF CONTENTS


Table of Authorities ..... iii
Jurisdictional Statement ..... 1
Issues Presented for Review ..... 2
Statement Regarding Oral Argument ..... 3
Statement of the Case ..... 4
A. The first screening order imposed numerical pleading restrictions. ..... 4
B. The May 11 order treated Dkt. 9-1 as both an amendment and a noncompliant filing. ..... 4
C. Dkt. 11-1 alleged a concrete transaction and a longer racketeering pattern. ..... 5
D. The May 29 order changed the pleading's status and dismissed the whole action. ..... 6
E. The court imposed a fine and broad filing restriction without advance notice. ..... 6
Summary of the Argument ..... 7
Standard of Review ..... 9
Argument ..... 11
I. ***Pullman-Standard*** and ***Billman*** require plenary review of the legal errors that infected the judgment. ..... 11
II. Section 1915's "shall" is directory; the statute preserves discretion and doesn't authorize departures from ordinary law. ..... 13
A. Controlling Supreme Court precedent requires a directory construction of "shall." ..... 13
B. The every-word rule and the PLRA's enacted context compel the same construction. ..... 16
C. "At any time," "if the court determines," and the Supreme Court's own construction confirm discretion. ..... 20
D. "Case," "action," and "portion" do not authorize partial nonprisoner screening or whole-action dismissal by association. ..... 21
III. The court's contradictory amendment procedure, numerical caps, and errors of construction require vacatur. ..... 23




Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

# TABLE OF CONTENTS


A. The orders never identified an operative complaint or adjudicated leave under Rule 15. .......... 23

B. A fifteen-page limit and ten-defendant cap could not replace ordinary pleading and joinder rules. .......... 24

C. The court didn't apply the governing rules for construing pleadings. .......... 27

D. The court never established incurable futility. .......... 31

IV. The action was not factually frivolous under the demanding clearly-baseless standard. .......... 32

A. The order entered—not a weaker hypothetical order—must be reviewed. .......... 32

B. None of the order's cited grounds made the allegations factually frivolous. .......... 33

C. The concrete vehicle core independently defeats whole-action frivolousness. .......... 39

V. The proposal pleaded civil-RICO claims requiring subsection-, claim-, and defendant-specific review. .......... 41

A. The order confused alleged predicates with freestanding civil causes of action. .......... 42

B. The pleading tied injury to each subsection and alleged a related, continuous pattern. .......... 44

C. The complaint pleaded predicate acts against twenty-eight defendants and alleged conspiracy against every named defendant. .......... 45

D. The court merged four distinct dismissal grounds; each fails independently. .......... 52

VI. The Seventh and Fifth Amendments reinforce § 1915's directory construction and require ordinary procedure. .......... 54

A. Merits-intertwined factual findings raise a substantial Seventh Amendment question. .......... 54

B. The process created an intolerable risk of depriving nonfrivolous choses in action. .......... 56

VII. The fine and filing restriction lacked lawful authority and punished protected criticism without due process. .......... 57

A. No rule or statute authorized a sua sponte monetary punishment without specific notice. .......... 57

B. Inherent power could not evade § 401, the Rules, or due process. .......... 59

C. The unconditional fine was criminally punitive in legal substance. .......... 60

D. The district-wide filing restriction was unsupported and overbroad. .......... 62

E. Punishing critical speech under no neutral, preannounced rule violated the First Amendment. .......... 63

Conclusion .......... 65

Certificate of Compliance .......... 66





Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

# TABLE OF AUTHORITIES

**Cases**

***Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*** 483 U.S. 143 (1987) .......... 1
***Armstrong v. Manzo,*** 380 U.S. 545 (1965) .......... 56
***Arnett v. Kennedy,*** 416 U.S. 134 (1974) .......... 56
***Banco Nacional de Cuba v. Sabbatino,*** 376 U.S. 398 (1964) .......... 23
***Barnhart v. Peabody Coal Co.,*** 537 U.S. 149 (2003) .......... 16
***Bausch v. Stryker Corp.,*** 630 F.3d 546 (7th Cir. 2010) .......... 10, 22, 26
***Beacon Theatres, Inc. v. Westover,*** 359 U.S. 500 (1959) .......... 54
***Bell v. Hood,*** 327 U.S. 678 (1946) .......... 9, 12, 52
***Bennett v. Spear,*** 520 U.S. 154 (1997) .......... 27
***Bible v. United Student Aid Funds, Inc.,*** 799 F.3d 633 (7th Cir. 2015) .......... 43, 45
***Billman v. Indiana Department of Corrections,*** 56 F.3d 785 (7th Cir. 1995) .......... 2, 7, 10, 11, 12, 13, 19, 31, 39, 40, 41, 55
***Brock v. Pierce County,*** 476 U.S. 253 (1986) .......... 16
***Brownlee v. Conine,*** 957 F.2d 353 (7th Cir. 1992) .......... 26
***Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,*** 367 U.S. 886 (1961) .......... 56
***Cairo & Fulton R.R. Co. v. Hecht,*** 95 U.S. 168 (1877) .......... 13, 15
***Cammer v. United States,*** 350 U.S. 399 (1956) .......... 58
***Chiles v. Salazar,*** 607 U.S. 627 (2026) .......... 63
***City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*** 526 U.S. 687 (1999) .......... 55
***Cohen v. California,*** 403 U.S. 15 (1971) .......... 63
***Concepcion v. United States,*** 597 U.S. 481 (2022) .......... 18
***Crawford-El v. Britton,*** 523 U.S. 574 (1998) .......... 20, 64
***Curtis v. Loether,*** 415 U.S. 189 (1974) .......... 55
***Dairy Queen, Inc. v. Wood,*** 369 U.S. 469 (1962) .......... 54
***Degen v. United States,*** 517 U.S. 820 (1996) .......... 59
***Denton v. Hernandez,*** 504 U.S. 25 (1992) .......... 8, 9, 10, 11, 27, 32, 33, 36, 38, 40, 54
***Dietz v. Bouldin,*** 579 U.S. 40 (2016) .......... 23, 59, 61
***Donelson v. Hardy,*** 931 F.3d 565 (7th Cir. 2019) .......... 62, 63
***Donald v. Cook County Sheriff's Department,*** 95 F.3d 548 (7th Cir. 1996) .......... 29
***Dorsey v. Varga,*** 55 F.4th 1094 (7th Cir. 2022) .......... 10, 25, 53
***Edwards v. Snyder,*** 478 F.3d 827 (7th Cir. 2007) .......... 12
***Elmore v. Henderson,*** 227 F.3d 1009 (7th Cir. 2000) .......... 1
***Erickson v. Pardus,*** 551 U.S. 89 (2007) .......... 12, 27
***Erie Railroad Co. v. Tompkins,*** 304 U.S. 64 (1938) .......... 23
***Ex parte McCardle,*** 74 U.S. (7 Wall.) 506 (1869) .......... 52
***Ex parte Woollen,*** 104 U.S. 300 (1881) .......... 14
***Felton v. City of Chicago,*** 827 F.3d 632 (7th Cir. 2016) .......... 24, 32, 38, 40
***Feltner v. Columbia Pictures Television, Inc.,*** 523 U.S. 340 (1998) .......... 55
***Fuery v. City of Chicago,*** 900 F.3d 450 (7th Cir. 2018) .......... 60
***Gladney v. Pendleton Correctional Facility,*** 302 F.3d 773 (7th Cir. 2002) .......... 9, 10, 12, 32
***Goldberg v. Kelly,*** 397 U.S. 254 (1970) .......... 56
***Goodyear Tire & Rubber Co. v. Haeger,*** 581 U.S. 101 (2017) .......... 61, 62
***Gustafson v. Alloyd Co.,*** 513 U.S. 561 (1995) .......... 16, 17, 18, 19
***Gutierrez de Martinez v. Lamagno,*** 515 U.S. 417 (1995) .......... 15, 17, 18
***H.J. Inc. v. Northwestern Bell Telephone Co.,*** 492 U.S. 229 (1989) .......... 45
***Hagans v. Lavine,*** 415 U.S. 528 (1974) .......... 52



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

# TABLE OF AUTHORITIES

**Cases (continued)**


*Hartman v. Moore,* 547 U.S. 250 (2006) .......... 64
*Hecht Co. v. Bowles,* 321 U.S. 321 (1944) .......... 14, 15
*Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624 (1988) .......... 61
*Holland v. City of Gary,* 503 F. App'x 476 (7th Cir. 2013) .......... 6, 32, 36, 37, 41
*Holmes v. Marion County Sheriff's Office,* 141 F.4th 818 (7th Cir. 2025) .......... 21, 22
*In re Rimsat, Ltd.,* 212 F.3d 1039 (7th Cir. 2000) .......... 60
*International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821 (1994) .......... 61
*Johnson v. Cherry,* 422 F.3d 540 (7th Cir. 2005) .......... 60
*Jones v. Bock,* 549 U.S. 199 (2007) .......... 22, 25, 26, 30, 53
*Kadamovas v. Stevens,* 706 F.3d 843 (7th Cir. 2013) .......... 23, 25, 27, 53
*Koon v. United States,* 518 U.S. 81 (1996) .......... 9
*Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982) .......... 56
*Lorenz v. Dreske,* 62 Wis. 2d 273, 214 N.W.2d 753 (1974) .......... 27
*Luedtke v. Keyes,* No. 22-cv-589-jdp, 2023 WL 2894535 (W.D. Wis. Apr. 11, 2023) .......... 57
*Lujan v. National Wildlife Federation,* 497 U.S. 871 (1990) .......... 12, 27, 30, 43, 46
*Mallard v. United States District Court,* 490 U.S. 296 (1989) .......... 17, 18, 19
*Maness v. Meyers,* 419 U.S. 449 (1975) .......... 59
*Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304 (1816) .......... 14
*Mathews v. Eldridge,* 424 U.S. 319 (1976) .......... 56
*Morrissey v. Brewer,* 408 U.S. 471 (1972) .......... 56
*Morton v. Mancari,* 417 U.S. 535 (1974) .......... 22
*National Rifle Association of America v. Vullo,* 602 U.S. 175 (2024) .......... 12, 27
*Neitzke v. Williams,* 490 U.S. 319 (1989) .......... 8, 32, 41, 54
*Okoro v. Bohman,* 164 F.3d 1059 (7th Cir. 1999) .......... 52
*Parsons v. Bedford, Breedlove & Robeson,* 28 U.S. (3 Pet.) 433 (1830) .......... 54
*Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37 (1983) .......... 64
*Perttu v. Richards,* 605 U.S. 460 (2025) .......... 8, 22, 26, 54
*Pullman-Standard v. Swint,* 456 U.S. 273 (1982) .......... 2, 7, 10, 11, 13, 19, 30, 31, 41, 47, 53
*Pruitt v. Mote,* 503 F.3d 647 (7th Cir. 2007) (en banc) .......... 18
*R.A.V. v. City of St. Paul,* 505 U.S. 377 (1992) .......... 64
*Richbourg Motor Co. v. United States,* 281 U.S. 528 (1930) .......... 14
*Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989) .......... 15, 21
*Rodriguez v. FDIC,* 589 U.S. 132 (2020) .......... 23
*Rosenberger v. Rector & Visitors of University of Virginia,* 515 U.S. 819 (1995) .......... 64
*Rowe v. Shake,* 196 F.3d 778 (7th Cir. 1999) .......... 20
*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana,* 786 F.3d 510 (7th Cir. 2015) .......... 9, 24, 31
*Salinas v. United States,* 522 U.S. 52 (1997) .......... 46
*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985) .......... 43
*Simler v. Conner,* 372 U.S. 221 (1963) .......... 54
*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) .......... 52
*Sullivan v. Iron Silver Mining Co.,* 109 U.S. 550 (1883) .......... 27, 30, 43, 46
*Support Systems International, Inc. v. Mack,* 45 F.3d 185 (7th Cir. 1995) .......... 62, 63
*Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981) .......... 23
*The Jolly Group, Ltd. v. Medline Industries, Inc.,* 435 F.3d 717 (7th Cir. 2006) .......... 60
*Tull v. United States,* 481 U.S. 412 (1987) .......... 55




Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

# TABLE OF AUTHORITIES

## Cases (continued)


*Turley v. Gaetz,* 625 F.3d 1005 (7th Cir. 2010) .......... 22
*United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928 (2009) .......... 2
*United States v. Britton,* 731 F.3d 745 (7th Cir. 2013) .......... 58
*United States v. Coe,* 155 U.S. 76 (1894) .......... 14
*United States v. Nordic Village, Inc.,* 503 U.S. 30 (1992) .......... 16, 17, 18
*United States v. Oberhellmann,* 946 F.2d 50 (7th Cir. 1991) .......... 58
*United States v. Rodgers,* 461 U.S. 677 (1983) .......... 17, 18
*Vallely v. Northern Fire & Marine Insurance Co.,* 254 U.S. 348 (1920) .......... 59
*Vega v. Chicago Board of Education,* 109 F.4th 948 (7th Cir. 2024) .......... 10, 60
*West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) .......... 63
*West Wisconsin Railway Co. v. Foley,* 94 U.S. 100 (1876) .......... 14, 15
*Wheeldin v. Wheeler,* 373 U.S. 647 (1963) .......... 23


## Constitutional Provisions


U.S. Const. amend. I .......... 9, 63
U.S. Const. amend. V .......... 3, 54
U.S. Const. amend. VII .......... 54


## Statutes


18 U.S.C. § 401 .......... 9, 58, 59, 60, 61
18 U.S.C. § 402 .......... 59
18 U.S.C. § 1341 .......... 42
18 U.S.C. § 1343 .......... 42
18 U.S.C. § 1956 .......... 42
18 U.S.C. § 1960 .......... 42
18 U.S.C. § 1961 .......... 42, 50, 51
18 U.S.C. § 1962 .......... 1, 5, 8, 34, 42, 43, 44, 46, 47
18 U.S.C. § 1964 .......... 1, 5, 8, 42, 43, 45
18 U.S.C. § 2321 .......... 42, 51
28 U.S.C. § 453 .......... 57
28 U.S.C. § 1291 .......... 2
28 U.S.C. § 1331 .......... 1
28 U.S.C. § 1367 .......... 1
28 U.S.C. § 1915 .......... 2, 3, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 41, 53, 54, 55
28 U.S.C. § 1915A .......... 17, 20, 21
28 U.S.C. § 1927 .......... 60
42 U.S.C. § 1997e .......... 10, 17, 21
Wis. Stat. § 180.0129 .......... 42, 51, 52
Wis. Stat. § 943.30 .......... 42, 50
Wis. Stat. § 943.39 .......... 42, 52
Wis. Stat. § 943.60 .......... 42, 52
Wis. Stat. § 946.32 .......... 42, 51, 52
Wis. Stat. § 946.82 .......... 42, 50, 51, 52
Wis. Stat. § 946.87 .......... 1, 42, 43


## Rules


7th Cir. R. 32(c) .......... 66

# TABLE OF AUTHORITIES

**Rules (continued)**


Fed. R. App. P. 4 .......... 2
Fed. R. App. P. 32 .......... 66
Fed. R. Civ. P. 8 .......... 2, 6, 8, 12, 23, 25, 26, 27, 28, 29, 31, 41, 42, 53, 65
Fed. R. Civ. P. 9 .......... 8, 43, 45
Fed. R. Civ. P. 11 .......... 9, 12, 57, 59, 60
Fed. R. Civ. P. 12 .......... 21, 22
Fed. R. Civ. P. 15 .......... 2, 8, 13, 21, 22, 23, 24, 31, 53, 65
Fed. R. Civ. P. 20 .......... 2, 4, 8, 10, 12, 21, 22, 25, 26, 30, 31, 53, 58, 65
Fed. R. Civ. P. 21 .......... 2, 4, 8, 12, 21, 22, 25, 26, 30, 31, 53, 58, 65
Fed. R. Civ. P. 26 .......... 58
Fed. R. Civ. P. 41 .......... 1
Fed. R. Civ. P. 60 .......... 4
Fed. R. Civ. P. 83 .......... 8, 9, 12, 57, 59, 63
Fed. R. Crim. P. 42 .......... 61
E.D. Wis. Civil L.R. 15 .......... 4, 23
E.D. Wis. General L.R. 83(f) .......... 58


**Other Authorities**


1 Stat. 84–85 .......... 14
14 Stat. 520 .......... 14
26 Stat. 854, 856 .......... 14




Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

## JURISDICTIONAL STATEMENT

The district court had federal-question jurisdiction under 28 U.S.C. § 1331 over Armstrong's civil-RICO claims under 18 U.S.C. §§ 1962(a)–(d) and 1964(c). Dkt. 11-1, p. 3. He alleged injury to business and property from a vehicle-taking, towing, documentation, salvage, and supply-chain sequence and tied those injuries to the four § 1962 routes. Dkt. 11-1, pp. 3–15. Those allegations supplied the federal basis and asserted Article III standing. Supplemental jurisdiction under 28 U.S.C. § 1367 extended to his Wisconsin civil-RICO claim under Wis. Stat. § 946.87.

On May 29, 2026, the district court dismissed every claim against every party with prejudice, imposed a $500 fine, and imposed a district-wide filing restriction. Dkt. 12, pp. 9–10. Armstrong had advised the court that the dispute previously had been dismissed without prejudice in state court and that another whole-action disposition implicated Rule 41 consequences. Dkt. 9, pp. 2–3. Dkt. 11-1 also placed discovery of the alleged civil-RICO injury and its source no later than November 14, 2021; civil RICO's four-year limitations period therefore expired by November 14, 2025. ***Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*** 483 U.S. 143, 156 (1987). Although Armstrong filed before expiration, the May 29 dismissal came afterward; even dismissal without prejudice would thus have been effectively with prejudice. ***Elmore v. Henderson,*** 227 F.3d



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

1009, 1011 (7th Cir. 2000). The judgment is final under 28 U.S.C. § 1291 and brings up the December 1, 2025, May 11, 2026, and May 29, 2026 orders.

Armstrong filed his notice of appeal on July 16, 2026, forty-eight days after judgment. The United States was formally named in the district-court caption as both an involuntary plaintiff and a defendant. Dkt. 10, p. 1; Dkt. 12, p. 1. The notice therefore fell within the sixty-day period in Federal Rule of Appellate Procedure 4(a)(1)(B)(i). See ***United States ex rel. Eisenstein v. City of New York,*** 556 U.S. 928, 933–34 (2009) (party status ordinarily follows formal designation).

## ISSUES PRESENTED FOR REVIEW

1. Whether antecedent errors of statutory and pleading construction infected the factual-frivolousness, futility, amendment, and sanctions rulings, requiring plenary review and remand under ***Pullman-Standard*** and ***Billman.***
2. Whether § 1915(e)(2)'s "shall" is directory under Supreme Court precedent and the full text; whether "at any time if the court determines" forecloses mandatory pre-grant screening; and whether screening displaces ordinary law.
3. Whether § 1915 authorized fixed page and party caps, adverse pro se construction, whole-action dismissal by association, or displacement of Rules 8, 15, 20, and 21.

4. Whether judgment can stand when the May 11 order treated Dkt. 9-1 as an amendment but denied leave as moot, while the May 29 order called it unaccepted and screened Dkt. 11-1 while again denying leave as moot.

5. Whether the entire action was clearly baseless despite a concrete vehicle-and-salvage sequence, and whether one or more civil-RICO claims were stated where the court didn't analyze each subsection, claim, and defendant.

6. Whether resolving merits-intertwined facts at screening violated or raised serious Seventh and Fifth Amendment questions requiring ordinary procedure and a narrowing construction of § 1915.

7. Whether the court could impose without notice an unconditional $500 punitive fine and district-wide filing restriction, or punish criticism under no preannounced, viewpoint-neutral rule.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would materially assist the Court. The appeal joins threshold statutory construction, an internally contradictory amendment record, a whole-action factual-frivolousness ruling, civil-RICO pleading, constitutional avoidance, and sanctions imposed without prior notice. Argument would help separate the antecedent legal errors from the factual and discretionary rulings they affected.

## STATEMENT OF THE CASE

### A. The first screening order imposed numerical pleading restrictions.

Armstrong filed this action in November 2025 and sought IFP status. His amended complaint alleged federal and Wisconsin RICO theories arising from towing, salvage, recycling, ownership filings, money transmission, and related commerce. Dkt. 6.

On December 1, the court ordered another complaint capped at fifteen pages and ten defendants without deciding Rule 20 joinder, identifying misjoined parties, or using Rule 21. Dkt. 7, pp. 3, 9–10. Armstrong later reported that the accompanying e-filing warning and a courthouse encounter deterred evidentiary attachments. Dkts. 9, 11.

Armstrong filed a Rule 60 motion and, on December 22, an omnibus motion for reconsideration and leave to amend with Dkt. 9-1 attached under Civil Local Rule 15(b). Dkts. 8, 9, 9-1. He excluded title pages from the cap and retained defendants he believed required adjudication. Dkt. 9, pp. 4, 8.

### B. The May 11 order treated Dkt. 9-1 as both an amendment and a noncompliant filing.

The May 11 order called Dkt. 9-1 an "amended complaint," screened it, faulted its noncompliance with the caps, and denied the Dkts. 8 and 9 motions as moot "[b]ecause Plaintiff has amended his complaint." Dkt. 10, pp. 2–4, 6–10. It never granted leave.



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

The order directed a "third amended complaint" that would become operative if filed, counted title pages within the fifteen-page cap, retained the ten-defendant limit, and warned of dismissal. Dkt. 10, pp. 7, 9–11. Armstrong removed four pages and submitted Dkt. 11-1 with another omnibus motion. Dkts. 11, 11-1.

**C. Dkt. 11-1 alleged a concrete transaction and a longer racketeering pattern.**

Within fifteen pages, Dkt. 11-1 invoked §§ 1962(a)–(d) and 1964(c), alleged injury to a sole proprietorship, and described predicates. Its concrete core alleged that *Chanel* stole Armstrong's Mazda; *All Seasons* and *Gardner* transferred it to *Seven Stars*; and *Seven Stars*, *Miller*, and *Alter Trading* processed and crushed it, altered or destroyed its VIN, and generated or used false transaction documents and interstate communications. Dkt. 11-1, pp. 3, 6–9.

The proposal traced ownership of *Seven Stars* through *Miller*, *Alter Trading*, *Goldstein Group*, and Goldstein-family control, and of *Altech* Recycling through *Alter Trading*, *Toyota Tsusho*, and other Toyota entities. It alleged that RICO derived aluminum from Goldstein family companies entered a Toyota-associated supply chain involving fraudulent distribution practices. Dkt. 11-1, pp. 5–7, 10–15. It alleged that an Alter operation received at least 143 vehicles from a seller who misreported VINs and continued after learning of the practice, and connected those

2019–2024 events to alleged money-transmission, filing, acquisition, reorganization, and laundering conduct beginning in 2012. Id. at 4–10.

**D. The May 29 order changed the pleading's status and dismissed the whole action.**

The May 29 order called Dkt. 9-1 an unaccepted proposal, contradicting the May 11 statement that Armstrong "has amended." Dkt. 12, p. 2; Dkt. 10, p. 9. It screened Dkt. 11-1 while denying the motion to file it as moot. Dkt. 12, pp. 2–6, 9–10. The orders never coherently identified an operative complaint.

The final order called selected passages "at best wholly 'delusional'" and dismissed the action with prejudice for failure to state a claim, factual frivolousness, Rule 8 noncompliance, and violation of the caps. Dkt. 12, pp. 3–6, 9–10. Relying on duration, "criminal treasuries," mafia terms, "made men," bodies, a Pablo-Escobar analogy, and ***Holland,*** it never separately analyzed the Mazda allegations, any RICO subsection, any Rule 8 defect, or any claim or defendant.

**E. The court imposed a fine and broad filing restriction without advance notice.**

The order imposed a $500 fine and barred filings in nearly every Eastern District civil matter until payment, without a show-cause order, specific notice, hearing, compensatory loss, or bad-faith finding. Dkt. 12, pp. 6–10.

## SUMMARY OF THE ARGUMENT

***Billman*** holds that, although ultimate factual frivolousness receives abuse-of-discretion review, antecedent legal sufficiency receives plenary review; discretion enters only after legal insufficiency, when the court asks whether amendment could save the suit. 56 F.3d 785, 787 (7th Cir. 1995). ***Pullman-Standard*** requires remand when findings rest on an erroneous view of law unless the record permits only one resolution. 456 U.S. 273, 291–92 (1982). Those errors infected frivolousness, futility, amendment, and sanctions.

Section 1915 didn't compel the process used below. Its "shall" is directory under an unbroken Supreme Court line governing statutes that prospectively direct governmental and judicial action. That construction is confirmed by the Court's every-word rule: § 1915 says four times that a prisoner "shall be required" to act and once that a fee "may be required." Treating "shall" as invariably and completely compulsory erases "be required"; treating it as directory gives every enacted word operative effect. The PLRA's change from "may dismiss if satisfied" to "shall dismiss if the court determines" still does work: it replaces the former "satisfied" formulation with a determination governed by statutory standards and reviewable for legal error, adds grounds, and preserves authority "at any time." It doesn't silently command screening before IFP authorization. Section 1915(a)(1) says a court "may authorize" pauper status; Circuit decisions that didn't confront



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

this text and controlling authority cannot overrule the Supreme Court. Nor does § 1915 displace Rules 8, 15, 20, 21, or 83.

Those departures mattered. The caps forced omission of allegations and evidence without a joinder ruling; the orders alternately treated Dkt. 9-1 as operative and unaccepted, then screened Dkt. 11-1 while denying leave as moot. The court construed selected passages against Armstrong instead of reading the filings liberally, as a whole, and claim by claim.

The allegations were not clearly baseless: vehicle theft, towing, salvage, corporate ownership, documents, wires, and crushing are ordinary events. The enterprise's duration and rhetoric used to characterize it cannot transform that core into delusion. The cited crimes were RICO predicates, not freestanding civil claims; §§ 1962 and 1964 supplied the claims and remedy. The proposal alleged subsection-specific causation, continuity, relatedness, and defendant conduct. The PSLRA didn't apply, and rule 9(b) didn't govern every RICO allegation.

Screening also presents constitutional questions. Neither ***Denton*** nor ***Neitzke*** decided whether a court may conclusively label merits-intertwined facts delusional and thereby eliminate the jury right. ***Perttu*** reinforces ordinary procedure and constitutional avoidance when PLRA adjudication would remove such facts from a jury. The contradictory limits likewise increased the risk of depriving Armstrong of nonfrivolous claims without a meaningful opportunity to be heard.

No identified authority permitted the fine or filing bar. Rules 11 and 83 required specific notice; § 401 didn't authorize summary punishment for filed speech outside the court's presence; and inherent power required notice, an opportunity to respond, and bad-faith findings. The fixed fine was criminally punitive without criminal process. The filing bar lacked vexatious-litigant findings and tailoring. Punishing criticism under no preannounced, viewpoint-neutral rule also violated the First Amendment.

## STANDARD OF REVIEW

Legal questions—including statutory construction, legal sufficiency, constitutional questions, and the meaning of the Federal Rules—are reviewed de novo. ***Koon v. United States,*** 518 U.S. 81, 100 (1996). Whether a complaint states a cause of action is a question of law. ***Bell v. Hood,*** 327 U.S. 678, 682 (1946). Futility is likewise reviewed de novo. ***Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana,*** 786 F.3d 510, 524 (7th Cir. 2015).

Existing circuit decisions apply abuse-of-discretion review to ultimate factual frivolousness. ***Gladney v. Pendleton Correctional Facility,*** 302 F.3d 773, 774–75 (7th Cir. 2002). Armstrong contends that § 1915(e)(2)'s amended text requires nondeferential review: ***Denton v. Hernandez*** grounded deference in former § 1915(d), which allowed a court to dismiss when it was "satisfied" that an action was frivolous, 504 U.S. 25, 33–34 (1992), while the PLRA removed both

discretionary terms and turns on what the court "determines." The same Act retained "is satisfied" in 42 U.S.C. § 1997e(c)(1), confirming that the omission was deliberate. Neither ***Gladney*** nor later cases analyzed that textual argument. Under either position, statutory meaning, pleading construction, legal sufficiency, and every antecedent legal conclusion receive plenary review under ***Billman,*** 56 F.3d at 787 and other cases.

The textual change strengthens rather than diminishes ***Billman.*** "Determines" requires application of the statute's listed standards and produces a conclusion reviewable for legal error; it doesn't preserve the former "satisfied" formulation on which ***Denton*** based deference. Dismissal for failure to state a claim is de novo, ***Bausch v. Stryker Corp.,*** 630 F.3d 546, 550 (7th Cir. 2010). Construction of Rule 20 is de novo; only a joinder or severance decision made under the correct standard receives abuse-of-discretion review. ***Dorsey v. Varga,*** 55 F.4th 1094, 1103 & n.4 (7th Cir. 2022).

Sanctions and filing restrictions are reviewed for abuse of discretion, but their legal predicates and due-process compliance receive no deference. ***Vega v. Chicago Board of Education,*** 109 F.4th 948, 954–55 (7th Cir. 2024). Under ***Pullman-Standard,*** factual, futility, and sanctions conclusions resting on an erroneous legal ruling must be vacated unless the record permits only one resolution. 456 U.S. at 291–92.

## ARGUMENT

### I. *Pullman-Standard* and *Billman* require plenary review of the legal errors that infected the judgment.

The court required threshold screening, construed pleadings against Armstrong, treated an attached proposal as both amendment and rejected exhibit, imposed an impermissible page limit and joinder rule, demanded heightened pleading, and treated RICO predicates as freestanding claims. It then used the resulting record to find the entire action frivolous, amendment futile, and sanctions warranted.

***Pullman-Standard*** requires remand when findings rest on "an erroneous view of the law" unless the record permits only one resolution. 456 U.S. 273, 291–92 (1982). The rule applies even where a reviewing court might draw its own view from the record: factfinding committed to the trial court must occur under the correct legal framework. That rule has special force because the caps shaped which facts appeared, while the construction errors shaped how those facts were understood.

***Billman v. Indiana Department of Corrections*** separates legal sufficiency from factual frivolousness and hopelessness. Although ***Denton*** prescribed abuse-of-discretion review for ultimate factual frivolousness, ***Billman*** held that the standard "cannot be understood entirely literally": en route to frivolousness, a court decides legal sufficiency, "an issue purely of law on which appellate review is

plenary." 56 F.3d 785, 787 (7th Cir. 1995). Discretion enters only after legal insufficiency, in deciding whether amendment could save the suit. Id. ***Bell*** independently confirms that whether the pleading states a cause of action is a question of law. 327 U.S. at 682.

***Billman's*** reference to denial of pauper status followed former § 1915(d). The PLRA changed that text and added dismissal terminology without erasing the separation of legal sufficiency from factual frivolousness and hopelessness. ***Gladney*** called § 1915(e)(2)(B)(i) the former provision's "materially identical successor" for frivolousness but didn't address removal of "may" and "satisfied." 302 F.3d at 774–75. ***Edwards*** then applied ***Billman*** after the PLRA and treated legal sufficiency as plenary. 478 F.3d 827, 829–30, 832 (7th Cir. 2007).

That distinction controls review. Whether "shall" is directory, what "at any time" means, whether the governing pleading rules were followed, whether cited offenses were RICO predicates, whether Rules 20 and 21 permit an arbitrary party cap, whether Rules 11 and 83 authorized sanctions, and the global failure-to-state ruling are legal matters reviewed without deference. The pleading-construction error was the failure to apply Rule 8(e), ***Erickson, Lujan,*** and ***Vullo***—not a discretionary factual choice. If even one proposed claim was legally sufficient and nonfrivolous, that legal error infected the global findings of factual frivolousness and futility and the judgment dismissing every claim on every stated ground. A

specific Mazda, identified transfers and documents, business ownership, and named actors admit more than one *lawful* construction; a proposal shaped by unlawful limits cannot establish that every claim was incurable. ***Pullman-Standard*** and ***Billman*** therefore require vacatur and remand.

The "only one resolution" exception is unavailable. No appellee answered, discovery tested no identified record, no party-specific joinder ruling narrowed the case, and no coherent Rule 15 ruling fixed the operative pleading. Multiple *lawful* outcomes remain: claims may proceed, be amended, be dismissed, or be severed. Choosing among them in the first instance is the district court's task under correct law, not an appellate basis for affirming an infected global judgment.

## II. Section 1915's "shall" is directory; the statute preserves discretion and doesn't authorize departures from ordinary law.

### *A. Controlling Supreme Court precedent requires a directory construction of "shall."*

The district court's premise that § 1915(e)(2) compelled screening before it could exercise its discretion under § 1915(a)(1) was an error of law. "Shall" is directory in this setting. That's the rule supplied by controlling Supreme Court decisions, not a fallback available only if a different parsing fails.

***Cairo & Fulton R.R. Co. v. Hecht*** stated the government-action rule without qualification: "As against the government, the word 'shall,' when used in statutes, is to be construed as 'may,' unless a contrary intention is manifest." 95 U.S. 168,

170 (1877). ***West Wisconsin Railway Co. v. Foley*** applied the same principle to judicial action. "Shall" should mean "must" when necessary to sustain an existing right, but need not create a new inflexible right where the propriety and amount of relief remain committed to judicial discretion. 94 U.S. 100, 103 (1876). ***Richbourg Motor Co. v. United States*** reaffirmed that "'shall' is sometimes the equivalent of 'may' when used in a statute prospectively affecting government action." 281 U.S. 528, 534 (1930). Section 1915(e)(2) prospectively directs a court's disposition of litigation. These decisions address the exact interpretive setting.

The same rule governs expressly judicial language. ***Martin v. Hunter's Lessee*** held that "shall take" security was "merely directory," so omission didn't defeat appellate jurisdiction. 14 U.S. (1 Wheat.) 304, 361–62 (1816) (construing 1 Stat. 84–85). ***Ex parte Woollen*** held "appeal shall be entered" directory. 104 U.S. 300, 301–02 (1881) (construing 14 Stat. 520). ***United States v. Coe*** held "the Supreme Court shall retry the cause" empowered rather than compelled further proof. 155 U.S. 76, 84 (1894) (construing 26 Stat. 854, 856).

***Hecht Co. v. Bowles*** is more direct. The statute said the Administrator "may" seek relief and, upon the required showing, an order "shall be granted." 321 U.S. 321, 322, 326–27 (1944). The government argued that the may/shall contrast eliminated discretion. Id. at 326–28. The Court rejected that argument: even after the showing, the court retained discretion to select or withhold relief in accordance

with *lawful* practice. Id. at 328–30. The same contrast cannot by itself carry the construction placed on § 1915.

That remained Supreme Court law immediately before the PLRA. ***Gutierrez de Martinez v. Lamagno*** explained in 1995 that, although "shall" generally means "must," it also means "may" in some contexts and that federal rules sometimes use "shall" "to authorize, but not to require, judicial action." 515 U.S. 417, 432 n.9 (1995). Congress enacted the PLRA the following year against that settled legal background. It didn't declare that § 1915(e)(2)'s "shall" was exempt from the government-action rule or that ordinary judicial discretion was abolished.

These holdings cannot be displaced by lower-court repetition of a mandatory label. If a Supreme Court precedent directly applies even though another line of reasoning seems inconsistent with it, a court of appeals must follow the directly controlling case and leave overruling to the Supreme Court. ***Rodriguez de Quijas v. Shearson/American Express, Inc.***, 490 U.S. 477, 484 (1989). No Supreme Court decision has overruled ***Cairo & Fulton***, ***Foley, Hecht Co.***, or the judicial-action examples. This Court therefore cannot treat them as obsolete or subordinate them to an unexamined assumption that every statutory "shall" is invariably compulsory.

Directory doesn't mean meaningless. It means that statutory direction doesn't, without more, extinguish otherwise existing power or invalidate

proceedings whenever the direction is not followed. ***Brock v. Pierce County*** declined to infer loss of governmental power where "less drastic remedies" existed, 476 U.S. 253, 260 (1986), and ***Barnhart v. Peabody Coal Co.*** states that the Court has never since ***Brock*** treated a direction that the Government "shall" act within a specified time, "without more," as a jurisdictional limit precluding later action, 537 U.S. 149, 158 (2003). Section 1915(e)(2) identifies a course available upon a listed judicial determination and makes it available notwithstanding payment of a fee. It doesn't make screening a jurisdictional prerequisite to § 1915(a)(1)'s discretionary authorization decision or displace the Federal Rules.

### *B. The every-word rule and the PLRA's enacted context compel the same construction.*

The full text resolves any remaining doubt. ***Nordic Village*** states that "a statute must, if possible, be construed in such fashion that every word has some operative effect." 503 U.S. 30, 36 (1992). ***Gustafson*** is still more direct: the Court "will avoid a reading which renders some words altogether redundant." 513 U.S. 561, 574 (1995). Congress enacted the PLRA the following year against that unequivocal rule. Armstrong's reading gives every enacted word work; compulsory preauthorization screening doesn't.

Section 1915 four times says a prisoner "shall be required" to pay a fee, monthly payments, costs, or cost payments. 28 U.S.C. § 1915(b)(1), (2), (f)(2)(A),

(B). It also uses "as may be required" for a partial filing fee. § 1915(c). If "shall" alone supplied compulsory force, "be required" would add none.

The point is not that "shall" always means "may." It is that the Supreme Court rejects single-word absolutism in both directions. "May" usually connotes discretion, but that inference "is by no means invariable" and yields to context and statutory structure. ***United States v. Rodgers,*** 461 U.S. 677, 706 (1983). "Shall" generally connotes command but can authorize judicial action. ***Gutierrez de Martinez***, 515 U.S. at 432 n.9. Replacing one word with the other matters; it doesn't permit erasing surrounding text or controlling construction rules.

The PLRA amendments show what changed. Former § 1915(d) said a court "may dismiss" if "satisfied" that an action was frivolous or malicious. ***Mallard,*** 490 U.S. at 298. Current § 1915(e)(2) uses "shall dismiss" if the court "determines" that an action falls within an expanded list, while the same Act retained "is satisfied" in § 1997e(c)(1). The contrast replaces subjective satisfaction with a determination governed by law and reviewable on appeal, adds grounds, and permits action "at any time." It doesn't command screening before pauper authorization. That added command would deprive "at any time," "if the court determines," and § 1915A's express initiation language of distinct work, contrary to ***Nordic Village*** and ***Gustafson.***

***Mallard*** doesn't establish otherwise. Its five-Justice majority held that "may request an attorney" didn't authorize coerced representation because "request" was precatory; it relied heavily on neighboring directions that officers "shall" serve process and witnesses "shall" attend as proof Congress knew how to command. 490 U.S. at 301–03. Four Justices instead read the request as binding in context. Id. at 311, 317 (Stevens, J., dissenting). The split shows that neither "may" nor "shall" operates apart from text and structure: even "may" can impose a duty when context requires. ***Rodgers,*** 461 U.S. at 706. ***Mallard*** didn't construe current § 1915(e)(2), address the redundancy produced by an invariable "shall," or overrule the government- and judicial-action cases. ***Nordic Village, Gustafson,*** and ***Gutierrez*** govern the amended text.

Section 1915(e)(1)'s "may request" should be read as the ***Mallard*** dissent read its predecessor—authority for a binding request. 490 U.S. at 317–18. Dkt. 11 requested counsel, and Dkts. 9 and 11 presented nonfrivolous statutory, procedural, and constitutional arguments. ***Pruitt*** supplies this Circuit's framework for exercising § 1915(e)(1) discretion, including the litigant's efforts, the case's difficulty, and the litigant's capacity. 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). ***Concepcion*** states the broader rule that "a district court must generally consider the parties' nonfrivolous arguments before it." 597 U.S. 481, 501 (2022). The court used the attached proposals in screening but denied the motions as moot

without addressing those arguments or exercising discretion under the governing framework. Dkts. 10, 12.

The 1996 amendment removed the textual premise that carried ***Mallard's*** five-to-four majority. The majority treated the neighboring "shall" provisions as unequivocal commands and used that contrast as its strongest evidence that "may request" could not authorize a binding request. 490 U.S. at 301–03. ***Gustafson*** then declared that the Court "will avoid a reading which renders some words altogether redundant." 513 U.S. at 574. Congress amended § 1915 the next year. If "shall" is directory here because an invariably mandatory reading makes "be required" redundant, ***Mallard's*** central may/shall contrast disappears. Its holding cannot rest unchanged on a textual premise the amendment destroyed; the intervening change warrants Supreme Court reconsideration.

Nor does the change from "may dismiss if satisfied" to "shall dismiss if the court determines" support the categorical rule used below. It expands the listed grounds, replaces subjective satisfaction with a legal determination, and makes § 1915(e)(2) available despite payment and "at any time." It doesn't say "shall screen," "shall determine" at commencement, or "shall rescreen" every attached proposal. Treating pre-grant screening as compulsory was legal error under ***Pullman-Standard*** and ***Billman.***

***C. "At any time," "if the court determines," and the Supreme Court's own construction confirm discretion.***

Section 1915(a)(1) says a court "may authorize" commencement without prepayment; § 1915(e)(2) makes listed dismissal grounds available "at any time if the court determines" one applies, notwithstanding a fee already paid. The condition doesn't command a determination at commencement, "at any time" doesn't mean "before authorization," and the fee clause contemplates that authorization or payment may precede determination. The text creates continuing authority, not a fixed pre-grant prerequisite.

Section 1915A proves the distinction. It expressly says a court "shall review" a prisoner complaint before docketing if feasible or promptly afterward. § 1915A(a). Section 1915(e)(2) contains neither that initiation command nor its timing rule. The contrast is decisive: Congress knew how to compel initiation and fix the time of screening, and did so elsewhere.

***Crawford-El*** said the PLRA "directs" pre-docketing screening of prisoner complaints and "authorizes" courts to dismiss meritless actions on their "own motion." 523 U.S. 574, 596–97 (1998). The first term tracks § 1915A; the second describes authority, not a compulsory pre-grant examination of every nonprisoner complaint. ***Rowe*** likewise referred to the district court's "power to screen." 196 F.3d 778, 783 (7th Cir. 1999). Neither formulation makes that power a prerequisite to § 1915(a)(1)'s discretionary decision.

***Holmes*** grouped § 1915(e)(2), § 1915A, and § 1997e(c) as screening provisions but decided only which affirmative-defense dismissals count as strikes for a prisoner independently subject to the latter provisions. 141 F.4th 818, 819, 821–23 (7th Cir. 2025). It didn't decide whether § 1915(e)(2) alone compels pre-grant screening of a nonprisoner or consider the directory-"shall" and surplusage authorities. Its introductory shorthand cannot displace controlling Supreme Court law. ***Rodriguez de Quijas,*** 490 U.S. at 484.

The timing error mattered: The court repeatedly screened proposed pleadings under self-created numerical caps because it believed screening was required before it could grant IFP status. Dkts. 7, 10, 12. That reduced the information available, helped produce the futility finding, and threatens prejudice on appeal. Dkts. 7, 10, 12. Section 1915(a)(1) left authorization discretionary; § 1915(e)(2) made its grounds available "at any time."

***D. "Case," "action," and "portion" do not authorize partial nonprisoner screening or whole-action dismissal by association.***

Section 1915(e)(2) refers to dismissal of "the case" if "the action or appeal" has a listed defect. Section 1915A(b), by contrast, expressly reaches "the complaint, or any portion of the complaint." Congress omitted "portion" from § 1915(e)(2). For a nonprisoner governed only by § 1915(e)(2), the omission forecloses treating the provision as a special claim-by-claim power to excise portions of an otherwise nonfrivolous action. If one claim survives, ordinary Rules

12, 15, 20, and 21—not an invented partial-screening power—govern defective claims and parties. "Case" doesn't reverse the ordinary distinction between a complaint and the continuing civil action or silently require termination with prejudice. It identifies a disposition available in the pauper proceeding when the action meets a listed ground.

***Bausch*** is instructive. Complaints combining valid and invalid claims are common; when that occurs, "the correct judicial response is not to dismiss the complaint, let alone with prejudice." 630 F.3d at 559. The case may proceed on the original complaint once the court clarifies which claims survive; a cleaner amendment is not invariably required. Id. at 559–60. Thus, even if some RICO theories or allegations were defective, that didn't authorize dismissal with prejudice of any legally sufficient Mazda claim.

***Turley*** and ***Holmes*** likewise treat disposition of the entire action—not a defect in one claim—as controlling. 625 F.3d at 1012; 141 F.4th at 821–22. If one nonfrivolous claim survives, a judgment dismissing "the case" as wholly delusional or legally empty cannot stand.

Section 1915 and the Federal Rules coexist; courts can't create PLRA departures beyond those Congress specified. ***Morton v. Mancari,*** 417 U.S. 535, 549–51 (1974); ***Jones,*** 549 U.S. at 212–24; ***Perttu,*** 605 U.S. at 468–73. Federal common law and inherent power remain subordinate to and can't be exercised in



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

conflict with enacted text and the Rules. ***Erie,*** 304 U.S. at 78; ***Rodriguez,*** 589 U.S. at 136–40; ***Wheeldin,*** 373 U.S. at 651–52; ***Sabbatino,*** 376 U.S. at 426; ***Texas Industries,*** 451 U.S. at 640–42; ***Dietz,*** 579 U.S. at 45–46. Section 1915 therefore supplies no authority for page or party caps, heightened pleading, adverse construction, or adjudication of an unaccepted proposal without a Rule 15 ruling. ***Kadamovas*** independently requires Rule 8 length to be calibrated to the number and character of the claims. 706 F.3d at 844–45.

**III. The court's contradictory amendment procedure, numerical caps, and errors of construction require vacatur.**

***A. The orders never identified an operative complaint or adjudicated leave under Rule 15.***

Civil Local Rule 15 required Armstrong to attach a proposed amendment and contemplated filing it only if leave was granted. Dkt. 9 followed that procedure; attaching Dkt. 9-1 didn't amend the complaint.

The May 11 order nevertheless screened Dkt. 9-1 as the "amended complaint," said Armstrong "has amended," and denied the motion containing his request for leave and other relief as moot. Dkt. 10, pp. 2, 9–10. It then said a "third amended complaint" would become operative. Id. at 10. The May 29 order reversed premises: it called Dkt. 9-1 unaccepted, screened the attached Dkt. 11-1, and again denied leave as moot. Dkt. 12, pp. 2–6, 9–10. A futility review of a

proposal must culminate in a Rule 15 ruling, not use the proposal as the merits record while refusing to make it operative. ***Runnion,*** 786 F.3d at 519–24.

The contradiction prevents review. Under ***Felton,*** the complaint is the factual-frivolousness record. 827 F.3d 632, 635 (7th Cir. 2016). If Dkt. 9-1 became operative, it superseded Dkt. 6; if leave was never granted, Dkt. 6 remained operative and the proposals bore only on futility. The same is applicable for Dkt. 11-1. The orders therefore do not identify what was dismissed, what allegations supplied the merits record, or how the proposal's alleged defects became incurable.

Nor did Armstrong receive ***Runnion's*** meaningful chance to cure. The court demanded more detail within fifteen pages and ten defendants, changed Dkt. 9-1 from operative to unaccepted, screened the still more compressed Dkt. 11-1, and declared every claim incurable without identifying an operative pleading or analyzing claims individually. Dkts. 10, 12. The screening orders were contaminated by legal error, the issues taken were irrational, irrelevant, or unsupported by the record, and so they failed to provide the coherent notice and *lawful* amendment opportunity that ***Runnion*** requires.

### *B. A fifteen-page limit and ten-defendant cap could not replace ordinary pleading and joinder rules.*

The December 1 order imposed fifteen-page and ten-defendant limits before deciding which facts, claims, or parties belonged together; the May 11 order counted title pages and repeated them. Dkt. 7, pp. 3, 9–10; Dkt. 10, pp. 7, 10–11.

The limits didn't merely format a prolix filing, they determined how much detail could support a complex multi-party theory and required abandonment of parties without party-specific adjudication.

***Kadamovas*** rejects a fixed-number Rule 8 approach: brevity must be calibrated to the claims' number and character. 706 F.3d 843, 844–45 (7th Cir. 2013). It held a twenty-eight-page complaint alleging seven wrongs not excessive. Rule 20 instead asks whether relief arises from the same transaction or series and presents a common question. The proposal alleged a connected Mazda-taking, towing, documentation, salvage, ownership, and downstream-disposition series, with a longer racketeering pattern; the court never applied that standard. Dkt. 11-1, pp. 3–15.

Rule 21 permits dropping or severing a party on just terms but makes misjoinder no ground for dismissal. The ten-party command identified no misjoined party, retained transaction, severable claim, or protection for limitations periods and fees. ***Dorsey*** reversed dismissal based on incorrect joinder instructions and identified severance or repleading as *lawful* options. 55 F.4th at 1103–08.

Section 1915 authorized neither numerical restriction. ***Jones*** states the controlling limit: early screening permits dismissal only on the enumerated statutory grounds. It held that PLRA screening doesn't justify procedural departures beyond those Congress specified and emphasized that failure to exhaust

was “not added in terms to the enumerated grounds justifying dismissal upon early screening.” 549 U.S. 199, 212, 214 (2007). Neither noncompliance with page or party caps nor a generic Rule 8 defect appears in § 1915(e)(2)(B)’s enumerated grounds. Of the four grounds invoked, only factual frivolousness and failure to state a claim are listed. Dismissal on the other two therefore conflicted directly with ***Jones;*** it was not merely questionable case management.

Ordinary procedure governed instead. ***Perttu,*** 605 U.S. at 468–73. The court imposed the caps before applying Rule 8’s claim-sensitive inquiry or Rules 20 and 21, forced omission of allegations and parties, and then used the resulting compression and cap violation to dismiss.

The cap imposed a substantive disadvantage unrelated to a statutory ground. Armstrong reported that the accompanying e-filing warning and a courthouse encounter deterred him from attaching evidence. Dkts. 9, 11; see Dkt. 7, pp. 9–10. Whether or not exhibits were required, those representations show how the process shaped the record later treated as the basis for hopelessness.

When a filing combines viable and nonviable claims, the response at worst is separation. ***Bausch*** requires valid claims to proceed, and ***Brownlee*** forbids discarding “haystack, needle and all.” 630 F.3d at 559–60; 957 F.2d 353, 354 (7th Cir. 1992). Those holdings require claim-specific review, not progressive compression and global dismissal.

### *C. The court didn't apply the governing rules for construing pleadings.*

Rule 8's core inquiry was whether the proposal, read as a whole and calibrated to the number and character of its claims, gave fair notice. ***Kadamovas,*** 706 F.3d at 844–45. It didn't ask whether every allegation repeated all supporting facts or whether a complex multiparty theory fit an arbitrary page or party count. A pro se pleading must be liberally construed. ***Erickson v. Pardus,*** 551 U.S. 89, 94 (2007). Rule 8(e) requires construction "so as to do justice."

***Lujan*** requires general allegations to be taken as embracing the supporting specifics necessary to the claim. 497 U.S. at 889. ***Sullivan*** permits facts to be pleaded according to their legal effect without reciting every evidentiary particular. 109 U.S. at 554. Wisconsin agrees. ***Lorenz v. Dreske,*** 62 Wis. 2d 273, 285–86, 214 N.W.2d 753 (1974). Headings, incorporated allegations, adjacent paragraphs, and defined roles informed the challenged language; a sentence was not empty because its foundation appeared elsewhere or required a reasonable inference.

At IFP review, facts must be weighted for the plaintiff. ***Denton,*** 504 U.S. at 32–33. On dismissal, the court must consider the pleading as a whole and draw reasonable inferences for the plaintiff. ***National Rifle Association of America v. Vullo,*** 602 U.S. 175, 194–95 (2024). Those principles govern threshold and jurisdictional dismissal. ***Bennett v. Spear,*** 520 U.S. 154, 168 (1997). They prohibited isolating a phrase, disregarding connected allegations, and treating general or legal-effect pleading as an absence of facts.

The numerical restrictions made that error worse. Repetition of incorporated facts beside assigned roles would consume the space the court had forbidden Armstrong to use. Rule 8 didn't permit the court to order compression and then convert reliance on headings, incorporation, and reasonable inference into a failure of fair notice. The screening orders nevertheless did exactly that.

First, the May 29 order said Armstrong provided no facts supporting the assertion that *Alter Logistics & Transloading Company*'s facilities were used for drug smuggling or that *Alter Trading*, *Miller*, *Seven Stars*, and related entities were principals. Dkt. 12, p. 4. But the same sentence and paragraph alleged that *Seven Stars* falsified the stolen Mazda's weight ticket to corroborate false shipping manifests; that identified facilities were used with consent; and that the vehicle was processed and transferred to a shredding operation controlled by the related companies. Dkt. 11-1, pp. 8–9. Elsewhere the proposal alleged ownership and operation links. Dkt. 11-1, pp. 5–9. The inference may be contested, but saying there were no supporting facts was not a liberal or whole-pleading construction.

Second, the order said "Goldstein companies" were unidentified in an arson allegation. Dkt. 12, pp. 4–5. The next paragraph identified the businesses, dates, and fire locations, while the first identified Green Bridge. Dkt. 11-1, p. 12. Reading one paragraph alone manufactured an omission the adjacent text supplied.



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

Third, the May 11 order professed uncertainty about an "above-described act" and "involved parties." Dkt. 10, p. 8. But the section presented four successive allegations—false documents, conspiracy concerning them, false swearing, and conspiracy concerning it—and identified the substantive acts and incorporated foundation. Dkt. 9-1, pp. 8–9. The referenced substantive act appeared in bold and underlined text at the paragraph's beginning. No reasonable judge would have been confused.

Fourth, the order found that "Chanel," without a surname or other information, failed Rule 8 for deficient notice to defendants. Dkt. 10, p. 7 n.3. The proposal identified the known name, specific Mazda, alleged taking, and transfer into the All Seasons–Gardner chain. Dkt. 9-1, pp. 6–7; Dkt. 11-1, p. 8. That identified actor, property, conduct, and transaction; Rule 8 didn't require an unknown surname or address before discovery. ***Donald v. Cook County Sheriff's Department,*** 95 F.3d 548, 555–56 (7th Cir. 1996).

The December 1 order didn't identify misjoined parties or select a transaction. It called the 144-page complaint unintelligible, accused Armstrong of intentionally withholding allegations, quoted three long sentences consisting of gratuitous damages pleading as "gibberish," and required the next complaint to fit fifteen pages and ten defendants on pain of dismissal without further notice. Dkt. 7, pp. 7–10. Dkt. 9 answered that this was the first screening, ordinary procedural

tools had not been tried, and abandoning defendants could cause irreparable loss; it invoked ***Jones*** and Rules 20 and 21 and asked the court to identify curable defects rather than enforce the caps through dismissal. Dkt. 9, pp. 2–8, 10–15. The May 11 order denied that motion as moot while repeating the caps. Dkt. 10, pp. 9–11. The defect was not simply a failure to name misjoined parties. The orders replaced claim-specific notice and ordinary procedure with categorical limits, then used compliance with those limits as a dismissal ground. The resulting findings rested on that erroneous procedural framework; ***Pullman-Standard*** requires remand unless the record permits only one resolution. 456 U.S. at 291–92.

Fifth, the screening orders treated allegations of principal participation, procurement or causation, agreement, and incorporation as empty unless each articulated the underlying particulars. But ***Sullivan*** permits facts to be pleaded according to their legal effect, 109 U.S. at 554, and ***Lujan*** requires general allegations at dismissal to be taken as embracing "those specific facts that are necessary to support the claim," 497 U.S. at 889. Those rules required the court to take the principal-participation, procurement, causation, agreement, and incorporation allegations as embracing the necessary supporting facts, without requiring every particular to be explicitly articulated or repeated in the compressed pleading.

These are not harmless editorial disagreements. They demonstrate the legal mechanism by which the court converted alleged gaps into delusion, found no claim stated, and concluded amendment hopeless. Under ***Billman,*** each legal ruling receives plenary review. Under ***Pullman-Standard,*** the factual and futility conclusions infected by those rulings must be set aside.

***D. The court never established incurable futility.***

Futility applies the dismissal standard. ***Runnion,*** 786 F.3d at 524. The May 29 order found further amendment futile while denying leave as moot, and its finding rested on the same global failure-to-state, frivolousness, Rule 8, and limiting-order rulings. Dkt. 12, pp. 6, 9–10. It identified no operative complaint, adjudicated no proposed claim individually, and didn't explain why claim-specific amendment could cure nothing.

That record cannot establish hopelessness. The finding rises or falls with those antecedent legal errors under ***Pullman-Standard*** and ***Billman.*** The court limited allegations, misconstrued what remained, treated proposals inconsistently, and counted the resulting submissions as failures to cure. Armstrong is entitled to one amendment opportunity under Rules 8, 15, 20, and 21, without unsupported caps and with rational claim-specific reasons for any denial.

## IV. The action was not factually frivolous under the demanding clearly-baseless standard.

### *A. The order entered—not a weaker hypothetical order—must be reviewed.*

The May 29 order didn't merely find several allegations implausible or in need of detail. It stated that "Plaintiff's allegations are at best wholly 'delusional.'" Dkt. 12, p. 6. "At best" made that an all-encompassing factual finding: even the strongest construction of the allegations was delusion. The record cannot sustain it.

Factual frivolousness is reserved for allegations that are "clearly baseless," including the fantastic or delusional—not facts that appear unlikely, improbable, or strange. ***Neitzke v. Williams,*** 490 U.S. 319, 325–28 (1989); ***Denton,*** 504 U.S. at 32–33. This Circuit asks whether a story is so fanciful as to be simply unbelievable. ***Gladney,*** 302 F.3d at 774. Doubts at the initial stage are weighted for the plaintiff. ***Denton,*** 504 U.S. at 32–33. And ***Felton*** requires a court to separate a nonfrivolous factual component rather than let broader allegations contaminate it. 827 F.3d at 635–37.

The order's documented rationale was limited. It cited the enterprise's duration; the description of Goldstein businesses as "criminal treasuries"; mafia terminology; references to not knowing who was killed or where bodies were buried; "made men"; an analogy to Pablo Escobar's babysitters; and a comparison to ***Holland.*** Dkt. 12, pp. 5–6. None makes the entire action clearly baseless.

***B. None of the order's cited grounds made the allegations factually frivolous.***

*Continuity.* A thirteen-year pattern is not frivolous. Ten alleged unlicensed money-transmission acts by *MCC Holdings* alone extend across nine years; whether the company held the required license and whether the transfers involved criminal proceeds are ordinary, verifiable questions answered by licensing, banking, and transaction records. Dkt. 11-1, p. 4. The theft and destruction of Armstrong's Mazda and the state-court litigation over it add four years; title, towing, salvage, court, filing, and communication records can establish or refute those acts. Id. at 8–10. The order cited the length of the alleged pattern as a reason to brand the action delusional without explaining why any dated transaction could not have occurred. Each event is possible and record-testable. Their duration cannot convert them into fantasy. ***Denton,*** 504 U.S. at 32–33.

"Criminal treasuries." The complaint alleged that Goldstein-controlled businesses accumulated and deployed property and income produced by crime. MCC Holdings allegedly transmitted criminal proceeds; the 2012 acquisition and 2019 reorganization allegedly used those proceeds to acquire or maintain control of Miller and Seven Stars; and the Goldstein businesses allegedly received stolen vehicles, converted them into saleable material, moved that material through a commercial supply chain, and received, used, or invested the resulting income. Dkt. 11-1, pp. 4–8, 10–14. The allegations included Armstrong's Mazda and at least 143 vehicles accepted from a seller who misreported VINs, followed by

continued acceptance of stolen vehicles after the practice was discovered. Id. at 6, 8. Those are the alleged treasury functions. Section 1962(a) expressly regulates receipt of racketeering income and its use or investment in an enterprise. Whether the alleged functions amounted to receiving and reinvesting criminal proceeds is a conventional inference from business and transaction records, not a fantastic factual proposition.

*Mafia.* The complaint alleged organized family crime conducted for profit through controlled businesses. Robert and *Michael Goldstein* allegedly caused recurring unlicensed transmission of money or criminal proceeds and participated as principals in the laundering transaction involving the acquisition of *Miller* and *Seven Stars*; *Goldstein Group* allegedly acquired or maintained control of *Miller* and *Seven Stars* through that laundering transaction; *Marc Goldstein* allegedly was installed as president of GGI Motors and AIMS in aid of *Alter Trading*'s racketeering and participated as a principal in the GGI transaction pleaded as money laundering; and Goldstein family members allegedly agreed to receive, use, or invest income derived from the pleaded transactions, including the receipt and processing of stolen vehicles.

Those facts support considering the organization a mafia: family members allegedly acted as principals in repeated crimes, used family-controlled companies to carry them out, and shared or reinvested the proceeds. The same theory extended

to executives and commercial partners alleged to approve or perform the practices through which the businesses profited. Corporate records, communications, financial records, and testimony could resolve the alleged agreement. The ultimate inference was commonplace—that owners, managers, and partners knew and approved how their businesses made money, particularly where one operation allegedly continued accepting stolen vehicles after discovering the practice.

*Who was killed and where the bodies were buried.* The two "I don't know" clauses set the boundary of Armstrong's knowledge. Dkt. 11-1, p. 11. He believed the executives had been incriminated but didn't claim to know every act that incriminated them; particular acts could remain unknown and unpleaded. The point is the same as saying that the executives had skeletons in their closets without knowing whose bones they were. A first-person statement identifying the limits of one's own knowledge is intrinsically plausible. The order quoted the language but identified no fantastic factual proposition within it. It supplied no link from those words to dismissal of the complaint's dated transactions as delusional.

*"Made men."* "Made" meant incriminated. The first statement averred Armstrong's own state of mind; the second stated the odds: the RICO defendants were probably guilty of racketeering or some other crime. Dkt. 11-1, p. 11. The complaint supplied the asserted basis for that judgment through years of alleged unlicensed money transmission, receipt and processing of stolen vehicles, allegedly

false filings, and asserted laundering transactions. Id. at 4–14. That's a factual inference from ordinary events, capable of proof or disproof through ordinary evidence. Calling it delusional resolved the inference against Armstrong without testing the alleged facts. ***Denton,*** 504 U.S. at 32–33.

*Pablo Escobar's "babysitters."* The complaint compressed a public account Armstrong had seen into the phrase "like Pablo Escobar's babysitters." Dkt. 11-1, p. 11. In that account, Escobar's son said, "My only friends were the violent hitmen my father had placed around me to protect me, like babysitters." The source supplied a concrete point: a firsthand witness was willing to speak publicly about the criminals around him. The complaint referred to that source without reproducing it, illustrating the danger in treating a fifteen-page complaint as the entire factual record. Even if the comparison was unpersuasive, its quality had no bearing on whether the separately alleged transfers, vehicle transactions, filings, and threats occurred. A bad analogy could not convert independently verifiable allegations into fantasy.

***Holland's*** 213-page complaint asserted more than forty claims against fifty-eight defendants and alleged that his mother, public officials, local professionals, and "MEGWITHANIA" joined a twenty-year campaign of personal persecution; some claims duplicated another suit, were time-barred, or targeted immune defendants. 503 F. App'x at 477–78.

Armstrong's complaint alleged mundane profit-seeking conduct through ordinary commercial roles: false filings, unlicensed money transmission, towing and recycling stolen vehicles, a threatened counterclaim, and practices allegedly approved by owners, managers, and commercial partners. Dkt. 11-1, pp. 4–15. Its Toyota allegations were equally conventional. Alter Trading and Toyota Tsusho allegedly operated Altech; David Klein allegedly held overlapping Alter, Altech, and Toyota Tsusho America positions; Altech allegedly processed stolen-vehicle aluminum into zorba entering the Toyota supply chain; and Toyota entities allegedly directed, transmitted, financed, or billed under identified Mirai representations. Ownership and personnel records, archived websites, corporate directives, billing statements, communications, and transaction records could test each proposition. It alleged dates, entities, documents, facilities, transmissions, and identifiable business relationships.

The complaint likewise alleged conspiracy circumstantially from family ownership and income, executive positions, overlapping management, coordinated operations, and common profit. The alleged agreement among related owners, employees, managers, and partners followed their pleaded functions and financial interests. Only four years involved Armstrong; the earlier acts alleged a preexisting pattern rather than a prolonged campaign directed at him. That chronology was the opposite of ***Holland's*** central allegation. The alleged enterprise existed to acquire

companies, transmit and reinvest proceeds, process vehicles, and sell resulting materials; Armstrong entered the narrative only when his Mazda allegedly passed through that operation. The number of defendants reflected ownership, management, financing, towing, salvage, marketing, and supply-chain roles—not a claim that every defendant joined a years-long campaign to persecute him. Whether the Toyota and other defendants knew of, agreed to, facilitated, or caused the alleged enterprise conduct presents questions of inference, legal sufficiency, and proof. None of the underlying corporate, marketing, financing, supply-chain, or communications events are fantastic or physically impossible. ***Denton*** forbids resolving disputed facts through frivolousness review, and ***Felton*** forbids allowing debatable allegations to contaminate the independently concrete Mazda, Altech, and Toyota transactions. 504 U.S. at 32–33; 827 F.3d at 635–37. Duration, numerous defendants, and conspiracy terminology could not convert those record-testable events into delusion.

The complaint didn't ask the court to accept a supernatural mechanism or an event beyond ordinary experience. It asked the court to infer knowledge and coordination from identified relationships and transactions—a conventional inference that may be strong or weak but remains capable of proof. Corporate separateness, multiple tiers in a supply chain, and the absence of direct communications in a pre-service record might weaken a claim against particular

defendants, but those are individualized sufficiency issues. They provide no basis for declaring the factual core delusional or using doubt about one participant to dismiss claims against all defendants.

***Billman*** forecloses treating discovery-dependent particulars as factual fantasy. Its complaint omitted the responsible officers' identities and state of mind—links the plaintiff could not supply before discovery. The Seventh Circuit nevertheless reversed because the allegations indicated a significant likelihood of actionable wrongdoing, expressly stating that the principle was not limited to prisoner cases. 56 F.3d at 788–89. A plaintiff's "initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit." Id. at 789.

Armstrong supplied names, dates, transactions, roles, records, and source material while acknowledging that particular incriminating acts and connections remained unknown. Defendants and third parties controlled the business records and communications needed to complete that picture. If the missing identities and state of mind in ***Billman*** could not justify factual-frivolousness dismissal, the more specific allegations here could not be declared delusional because discovery was needed to establish remaining particulars.

***C. The concrete vehicle core independently defeats whole-action frivolousness.***

Dkt. 11-1 alleged an identifiable Mazda, a taking without consent, transfer through *Chanel*, *All Seasons*, *Gardner*, and *Seven Stars*, a false weight ticket, a bill

of sale submitted to WisDOT or NMVTIS, interstate wires, delivery into a shredding operation, crushing, alteration or destruction of the VIN, and movement of the resulting material into a recycling supply chain. Dkt. 11-1, pp. 6–9, 12–14. It also alleged that an *Alter Trading* operation accepted at least 143 vehicles from a source who misreported VINs and continued accepting stolen vehicles after learning of that practice. Dkt. 11-1, p. 6.

Ownership records, towing records, intake records, the weight ticket, the bill of sale, VIN records, agency filings, communications, processing records, and handler testimony could establish that sequence. The screening record contained only the complaint. ***Billman,*** 56 F.3d at 788. A frivolousness determination cannot resolve contested merits facts. ***Denton,*** 504 U.S. at 32. On that record, the detailed, physically possible Mazda sequence required ordinary pleading, discovery, and proof—not a finding of delusion at screening.

***Felton*** reversed a whole-action frivolousness dismissal where the complaint alleged a police chase, a collision, and stun-gun use. Physical possibility and a legally viable component required further proceedings despite the district court's disbelief. 827 F.3d at 635–37. The Mazda allegations likewise described identified people moving and processing identified property through an identified commercial chain. That component independently survives the clearly-baseless standard.

The May 29 order never analyzed the Mazda transaction. It moved from duration and selected terminology to ***Holland*** and the global statement that the allegations were "at best wholly 'delusional.'" Dkt. 12, pp. 5–6. Missing elements, insufficient particularity, and an incomplete defendant connection are questions of legal sufficiency and amendment; they do not make conventional events impossible. ***Neitzke,*** 490 U.S. at 328–31; ***Billman,*** 56 F.3d at 787–89. If the court's failure-to-state analysis was wrong as to any Mazda claim, that plenary legal error also infected the global frivolousness and futility determinations.

***Pullman-Standard*** requires vacatur because the record permits more than one resolution. 456 U.S. at 291–92.

## V. The proposal pleaded civil-RICO claims requiring subsection-, claim-, and defendant-specific review.

Section 1915(e)(2)(B)(i) and (ii) are distinct textual grounds, and the May 29 order separately invoked factual frivolousness, failure to state a claim, Rule 8 noncompliance, and violation of the page-and-party restrictions. Dkt. 12, pp. 5–10. Section IV demonstrates that the factual-frivolousness ruling fails even under existing cases applying subsection (i). Armstrong's statutory position goes further: § 1915 doesn't authorize dismissal with prejudice through adjudication of disputed merits facts at screening. Part VI explains why "frivolous" must be read consistently with the statute's historical fee-waiver function and the constitutional jury right, leaving merits factfinding to ordinary procedure. This section addresses

failure to state a claim; Section III addresses the separate Rule 8 and limiting-order grounds; and Section V.D explains why the undifferentiated judgment cannot stand.

***A. The order confused alleged predicates with freestanding civil causes of action.***

Dkt. 11-1 identified §§ 1962(a)–(d) as the federal violations, § 1964(c) as the federal civil remedy, and Wis. Stat. § 946.87 as the related Wisconsin civil remedy. Dkt. 11-1, p. 3. Mail fraud, wire fraud, money laundering, illegal money transmission, arson, extortionate threats, false swearing, vehicle offenses, and related conduct appeared under predicate-act headings. Dkt. 11-1, pp. 4–15. The May 11 order recognized that organization. Dkt. 10, p. 4.

Section 1964(c) creates a civil remedy for injury caused by a § 1962 violation. The federal predicate list expressly includes mail fraud, wire fraud, money laundering, illegal money transmission, and trafficking in motor vehicles or parts with altered identification numbers. 18 U.S.C. § 1961(1)(B) (incorporating §§ 1341, 1343, 1956, 1960, and 2321). It also includes chargeable state felonies involving arson or extortion. § 1961(1)(A). Wisconsin separately enumerates felony threats, criminal slander of title, felony false swearing, fraudulent corporate writings, and false corporate filings. Wis. Stat. §§ 943.30, 943.39, 943.60, 946.32(1), 180.0129; § 946.82(4). *Downer*'s alleged threat sought an advantage by

compelling Armstrong to forgo suit, supplying the extortionate element for the federal and Wisconsin theories.

The order answered that structure by stating that Armstrong "repeats various criminal provisions" but "provides no legal basis for a private civil right of action for any of them." Dkt. 12, p. 3. Sections 1962 and 1964(c) were the federal civil claim and remedy; Wis. Stat. § 946.87(4) supplied the Wisconsin cause of action. The cited crimes performed their statutory function as predicates. ***Sedima, S.P.R.L. v. Imrex Co.,*** 473 U.S. 479, 488–97 (1985); ***Bible v. United Student Aid Funds, Inc.,*** 799 F.3d 633, 655–60 (7th Cir. 2015). Requiring a separate civil remedy under each predicate statute was legal error that prevented analysis of either pleaded RICO theory.

At dismissal, ***Lujan*** required the court to treat general allegations as embracing the specific facts necessary to support the claim. 497 U.S. at 889. Read with the act headings, incorporated allegations, and Rule 9(b)'s allowance for generally pleaded knowledge, that rule foreclosed isolating a general allegation and treating every unexpressed particular as absent. ***Sullivan's*** allowance for pleading according to legal effect reinforces that conclusion. 109 U.S. at 554. Any defect in one predicate or one defendant connection required a claim-specific ruling; the court didn't analyze the remaining predicates, claims, or parties.

***B. The pleading tied injury to each subsection and alleged a related, continuous pattern.***

Dkt. 11-1 tied Armstrong's injury to each § 1962 route. Under subsection (a), alleged racketeering income financed the facilities that processed and distributed the Mazda. Under subsection (b), the 2012–2013 predicates allegedly brought Miller and Seven Stars into the Alter Trading/Goldstein domain and the 2019 reorganization maintained that control; taking and retaining the Mazda separately alleged acquisition of control over Armstrong's sole proprietorship and property. Under subsection (c), Seven Stars, Miller, and Alter Trading allegedly received, concealed, documented, crushed, and altered the VIN of the Mazda. Goldstein Group, Goldstein-family defendants and executives, and the Toyota defendants allegedly caused, assisted, managed, or participated in that enterprise conduct and conspiracy according to their pleaded roles. Under subsection (d), the alleged agreement and acts implementing it caused the same loss. Dkt. 11-1, pp. 3–15.

The pleaded chain remained concrete: *Chanel* transferred the stolen Mazda through *All Seasons* and *Gardner* to *Seven Stars*; the Goldstein-controlled salvage chain allegedly concealed and crushed it; filings and interstate wires documented or concealed the transfer; and *Altech*, jointly operated by *Alter Trading* and *Toyota Tsusho*, allegedly processed resulting aluminum into zorba for downstream distribution through the Toyota supply chain. Id. at 5–15.

The alleged pattern used recurring participants, purposes, methods, and results to acquire, finance, control, and operate enterprises through racketeering. The 2012 transaction allegedly used proceeds from unlicensed transmission and stolen vehicles in the acquisition of *Miller* and *Seven Stars*; later transactions preserved control; and those businesses allegedly received, concealed, crushed, and distributed Armstrong's Mazda. Dkt. 11-1, pp. 4–15. Towing businesses supplied stolen vehicles; salvage businesses documented and processed them; affiliated participants used documents and interstate transmissions; and proceeds supported operations. Acts from 2012 through 2024 alleged closed-ended continuity. Receipt of at least 143 VIN-misreported stolen vehicles and continued acceptance after discovery alleged a regular business practice and open-ended continuity. Id. at 6; ***H.J. Inc. v. Northwestern Bell Telephone Co.,*** 492 U.S. 229, 239–43 (1989).

Rule 9(b) governs fraud circumstances, not nonfraud predicates, knowledge, enterprise, or conspiracy. ***Bible,*** 799 F.3d at 655–60. Section 1964(c)'s securities limitation concerns conduct actionable as securities fraud, not the vehicle, salvage, mail, wire, VIN, and laundering allegations here.

***C. The complaint pleaded predicate acts against twenty-eight defendants and alleged conspiracy against every named defendant.***

Dkt. 11-1 used bolded act headings to attribute procurement, inducement, assistance, willful causation, principal participation, or conspiracy to identified defendants. Dkt. 11-1, pp. 3–15. The headings distinguished the twenty-eight

defendants assigned predicate acts from the forty-five captioned defendants; paragraph 2 alleged every defendant as a co-conspirator. The act headings attributed conduct; the ownership, management, joint-venture, and operational allegations attributed agreement. Requiring identical predicate detail for both would erase the difference between substantive and conspiracy liability.

The Toyota allegations were defendant-specific: TMC allegedly directed the challenged representations; TMNA and TMS executed and transmitted them; TMCC and TFS supplied financing, billing, mail, and wire roles; and Toyota Tsusho, Toyota Tsusho America, Altech, and Klein connected Toyota to the alleged stolen-vehicle aluminum supply chain. Section 1962(d) didn't require every conspirator to commit two predicates or every component of the substantive violation; adopting the goal of facilitating the endeavor sufficed. ***Salinas v. United States,*** 522 U.S. 52, 63–66 (1997). ***Sullivan*** permits pleading by legal effect, and ***Lujan*** treats general allegations as embracing supporting particulars at dismissal. 109 U.S. at 554; 497 U.S. at 889.

A defect as to one defendant would not erase allegations against Alter Trading, Altech, Toyota Tsusho, the finance and sales entities, or non-Toyota defendants. Nor would one deficient substantive theory defeat the entire conspiracy. The court never analyzed the defendants or theories separately, claim by claim. If an allegation was deficient, the court had to identify the defect and

consider amendment—not dismiss all forty-five defendants and every RICO route with prejudice.

Had the court correctly recognized that one or more claims were legally sufficient, it might not have found the action factually frivolous or further amendment futile. Those conclusions rested on the contrary legal premise. ***Pullman-Standard*** requires vacatur and remand when findings are infected by an erroneous view of law unless the record permits only one resolution; this record didn't. 456 U.S. at 291–92.

1. *Goldstein Group* allegedly acquired *Miller* and *Seven Stars* in a 2012 transaction involving recurring unlicensed transmissions, false swearing, and laundering of stolen-car proceeds, pleading acquisition or maintenance of enterprise control under § 1962(b). Dkt. 11-1, pp. 4–6.
2. *Alter Trading* allegedly caused filing of the Mazda bill of sale with WisDOT or NMVTIS, used interstate wires, and joined *Miller* and *Seven Stars* in crushing the vehicle and altering or obliterating its VIN. Dkt. 11-1, p. 8.
3. *Miller* allegedly received the Mazda for shredding and joined *Alter Trading* and *Seven Stars* in crushing it and altering or obliterating its VIN. Dkt. 11-1, p. 8.
4. *Seven Stars* allegedly received, concealed, and transferred the Mazda, used a false weight ticket, and caused the bill-of-sale filing and interstate wires. Dkt. 11-1, p. 8.

5. *Alter Logistics* allegedly consented to use of its facilities for the pleaded smuggling operation and false weight or manifest documentation, alleging knowing participation. Dkt. 11-1, pp. 8–9.

6. *Alter Metal Recycling* allegedly accepted at least 143 vehicles from a source who misreported VINs and continued accepting stolen vehicles after discovering the practice. Dkt. 11-1, p. 6.

7. *Quarles & Brady* allegedly caused a Wisconsin DFI filing in *Seven Stars*' name and delivered *Jon Spigel*'s signed false sworn statement, pleaded as false swearing and participation in acquisition or control. Dkt. 11-1, p. 5.

8. *All Seasons* allegedly took, retained, transported, concealed, and transferred Armstrong's Mazda to *Seven Stars* without consent. Dkt. 11-1, p. 8.

9. *MCC Holdings* allegedly transmitted annual payments from 2012 through 2020 without the required license or using criminal proceeds, beginning with transmissions alleged to finance and launder the *Miller/Seven Stars* acquisition. Dkt. 11-1, pp. 4–5.

10. Toyota Motor Corporation allegedly directed the false five-minute Mirai-refueling representation through recurring United States directives and participated in distribution involving the pleaded RICO-derived aluminum. Dkt. 11-1, pp. 13–15.

11. Toyota Motor North America allegedly received and executed those directives in United States Mirai marketing, pleading its role in the common mail-and-wire scheme. Dkt. 11-1, pp. 13, 15.

12. Toyota Motor Sales USA allegedly transmitted the Mirai representations nationwide using the Toyota website by interstate wire. Dkt. 11-1, pp. 13, 15.

13. Toyota Motor Credit allegedly executed the directive and mailed or wired thousands of Mirai billing statements. Dkt. 11-1, pp. 13, 15.

14. Toyota Financial Services allegedly used mails and wires in the identified distribution scheme, including Mirai distribution under the challenged representation. Dkt. 11-1, pp. 13–15.

15. Toyota Tsusho allegedly operated Altech with Alter Trading to process stolen-vehicle aluminum into zorba for the Toyota supply chain. Dkt. 11-1, pp. 13, 15.

16. Toyota Tsusho America allegedly participated through David Klein, simultaneously Altech's CEO and an Alter Trading executive, supporting corporate participation and coordination while Altech processed the pleaded aluminum. Dkt. 11-1, pp. 12–15.

17. *Altech* allegedly processed aluminum scrap, including material from stolen vehicles, into zorba for the Toyota supply chain. Dkt. 11-1, p. 13.

18. *Chanel* allegedly stole Armstrong's Mazda and transferred it into the *All Seasons/Gardner* towing chain. Dkt. 11-1, p. 8.

19. *Gardner* allegedly retained, transported, concealed, and transferred the Mazda with *All Seasons* to *Seven Stars*. Dkt. 11-1, p. 8.

20. *Downer* allegedly threatened that Armstrong could do nothing and that a counterclaim would follow suit. The complaint alleged the threat sought to compel abandonment of suit and retention of the Mazda without compensation, obtaining an advantage through felony extortion under Wis. Stat. § 943.30, Wisconsin racketeering activity under § 946.82(4), and extortion under 18 U.S.C. § 1961(1)(A). Dkt. 11-1, p. 9.

21. *Poehlmann* allegedly procured Ellis's sworn affidavit falsely asserting a *Seven Stars* DBA and denying *Miller*'s involvement, supplying the pleaded false-swearing predicate and conspiracy role. Dkt. 11-1, p. 9.

22. *Robert Goldstein* allegedly caused *MCC Holdings*' recurring unlicensed transmissions and participated in laundering the 2012 *Miller/Seven Stars* acquisition. Dkt. 11-1, pp. 4–5.

23. *Michael Goldstein* allegedly caused the same recurring transmissions and participated in the same acquisition-laundering transaction. Dkt. 11-1, pp. 4–5.

24. *Marc Goldstein* allegedly was installed as president of GGI Motors and AIMS and joined a separate GGI transaction pleaded as laundering in aid of *Alter Trading*'s vehicle racketeering. Dkt. 11-1, p. 7.

25. *Jeffery Goldstein* allegedly joined an arson beside an *Alter Trading* warehouse to obtain insurance proceeds, pleading federal racketeering activity under § 1961(1)(A). Dkt. 11-1, p. 12.

26. *Ellis* allegedly made false sworn statements about the *Seven Stars* DBA and *Miller*'s involvement, pleaded as mail and wire fraud and Wisconsin false swearing enumerated by § 946.82(4). Dkt. 11-1, p. 9.

27. *Busby* allegedly caused or aided *MCC Holdings*' recurring unlicensed transmissions. Dkt. 11-1, p. 4.

28. *Jon Spigel* allegedly signed the false sworn statement concerning the *Seven Stars* filing and delivered it to the Wisconsin DFI. Dkt. 11-1, p. 5. Signing it supplied a § 946.32(1) act; knowingly delivering it supplied a separate § 180.0129 act. Section 946.82(4) enumerates both. The complaint also alleged his participation in the related laundering transaction. Dkt. 11-1, pp. 5–6.

These allegations identify dates, transactions, documents, communications, physical acts, facilities, and corporate roles. The federal list includes the pleaded mail fraud, wire fraud, laundering, illegal money transmission, chargeable arson and extortion, and the central stolen-vehicle and VIN conduct under § 2321.



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

Wisconsin law separately includes the pleaded threats, false corporate filing, fraudulent writing, criminal slander of title, and felony false swearing. Wis. Stat. §§ 180.0129, 943.39, 943.60, 946.32(1), 946.82(4). The remaining allegations connect defendants to acquisition, investment, enterprise operation, conspiracy, and the injury-producing Mazda transaction. RICO claims are evaluated from those allegations together; every act need not perform every statutory function. The court supplied no defendant-specific analysis before dismissing every federal and Wisconsin claim with prejudice.

***D. The court merged four distinct dismissal grounds; each fails independently.***

***Okoro v. Bohman*** treats dismissal of a frivolous federal suit as jurisdictional: the ruling declares that the plaintiff has no federal case. 164 F.3d 1059, 1063–64 (7th Cir. 1999). ***Steel Co. v. Citizens for a Better Environment*** places jurisdiction first, and ***Ex parte McCardle*** confines a court lacking jurisdiction to announcing that fact and dismissing. 523 U.S. 83, 94–95 (1998); 74 U.S. (7 Wall.) 506, 514 (1869). ***Bell*** and ***Hagans v. Lavine*** separately identify claims so insubstantial that jurisdiction fails and claims that remain federal but lose on the merits. 327 U.S. at 682–83; 415 U.S. 528, 536–38 (1974).

The May 29 order invoked jurisdictional factual frivolousness and merits insufficiency in the same global ruling. That procedure skipped the sequence required by those authorities. A declaration that no substantial federal controversy

existed could end the case jurisdictionally; it could not also serve as an adjudication that every pleaded federal and Wisconsin claim failed on its merits.

Rule 8 was a third, distinct ground. The question was whether the proposal, read as a whole and calibrated to its claims, gave fair notice. ***Kadamovas,*** 706 F.3d at 844–45. It was not whether Armstrong obeyed the caps. Demanding more detail within those caps without identifying claim-specific defects didn't establish a whole-action Rule 8 violation.

The caps supplied a fourth ground, but ***Jones*** permits no PLRA departure beyond those Congress specified and limits sua sponte dismissal to § 1915(e)(2)(B)'s enumerated grounds. 549 U.S. 199, 212 (2007). Violating court-created caps is not one. ***Dorsey,*** involving a valid joinder order, could not validate caps that displaced Rules 20 and 21. 55 F.4th at 1103–08.

The order didn't match claims or defendants to any of its four grounds. Those grounds cannot be redistributed on appeal. ***Pullman-Standard,*** 456 U.S. at 291–92. Remand permits a Rule 15 decision, individualized review, and lawful joinder or severance.

**VI. The Seventh and Fifth Amendments reinforce § 1915's directory construction and require ordinary procedure.**

***A. Merits-intertwined factual findings raise a substantial Seventh Amendment question.***

The Seventh Amendment question is governed by federal law and reviewed de novo. ***Simler v. Conner*** describes the federal policy favoring jury trials as one of "historic and continuing strength" and requires uniform federal treatment of the jury right. 372 U.S. 221, 222 (1963) (per curiam); see also ***Parsons v. Bedford, Breedlove & Robeson,*** 28 U.S. (3 Pet.) 433, 446–49 (1830); ***Beacon Theatres, Inc. v. Westover,*** 359 U.S. 500, 501, 510–11 (1959); ***Dairy Queen, Inc. v. Wood,*** 369 U.S. 469, 471–73 (1962).

Armstrong sought legal relief for injury to property and business. Whether the alleged taking, transfer, documentation, and destruction of the Mazda occurred is a merits question. What the complaint's figurative language alleged is a separate question of pleading construction. The May 29 order used its construction of that language to declare the merits allegations delusional and end the claims with prejudice before service or factfinding.

***Neitzke*** and ***Denton*** didn't decide the Seventh Amendment issue. ***Perttu*** supplies the applicable PLRA method: statutory silence preserves ordinary federal procedure, and a jury resolves factual disputes intertwined with claims carrying a jury right. 605 U.S. at 468–73. A whole-action finding of delusion based on



Case: 26-2488 Document: 16 Filed: 09/02/2026 Pages: 108

physically possible, merits-intertwined events removes those facts from the jury and presents the constitutional conflict that the directory construction avoids.

Constitutional avoidance confirms the directory construction already required by text and Supreme Court authority. ***City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*** 526 U.S. 687, 707 (1999); ***Feltner v. Columbia Pictures Television, Inc.,*** 523 U.S. 340, 345 (1998); ***Tull v. United States,*** 481 U.S. 412, 417 n.3 (1987); ***Curtis v. Loether,*** 415 U.S. 189, 192 n.6 (1974). A fairly possible reading confines § 1915(e)(2)(B)(i) to legal frivolousness and leaves disputed merits facts to ordinary procedure. Consistent with the statute's historical fee-waiver function, any preliminary factual assessment the provision permits concerns eligibility for public funding; it cannot become a merits adjudication with prejudice. That construction preserves the jury's role and avoids constitutional conflict.

The 1892 usage of "frivolous" reinforces that boundary. The term appeared chiefly in demurrer, appellate, fee-waiver, and jurisdictional-substantiality settings. When courts declined to waive fees for claims too slight to warrant public payment, the litigant remained free to pay and proceed; the ruling didn't adjudicate physically possible facts with prejudice. See ***Billman,*** 56 F.3d at 786–87. The historical core concerned legal insufficiency, lack of a substantial controversy, and

eligibility for fee relief—not a general power to decide contested merits facts on an empty record.

***B. The process created an intolerable risk of depriving nonfrivolous choses in action.***

***Logan v. Zimmerman Brush Co.*** recognizes a statutory cause of action as a species of property protected against arbitrary extinguishment. 455 U.S. 422, 428–33 (1982). The concrete Mazda component had an arguable factual and legal basis. Its presence created a protected interest and a substantial risk of erroneous deprivation.

Due process requires a meaningful opportunity to be heard at a meaningful time through procedures calibrated to the interest and risk of error. ***Armstrong v. Manzo,*** 380 U.S. 545, 552 (1965); ***Mathews v. Eldridge,*** 424 U.S. 319, 333–35 (1976). Its protections respond to the circumstances. ***Morrissey v. Brewer,*** 408 U.S. 471, 481 (1972); ***Cafeteria Workers v. McElroy,*** 367 U.S. 886, 895 (1961); see also ***Goldberg v. Kelly,*** 397 U.S. 254, 263–66 (1970); ***Arnett v. Kennedy,*** 416 U.S. 134, 167–68 (1974) (Powell, J., concurring in part).

The limiting orders increased the risk of error. They reduced pleading space and parties, discouraged exhibits through the e-filing warning and courthouse encounter Armstrong reported, changed the status of the proposed complaints, demanded heightened detail, and construed allegations against the pleader. Dkts. 9, 11; see Dkt. 7, pp. 9–10. The May 29 order then treated selected rhetoric as a

reason to reject the entire factual account. Due-process review must account for the orders that produced the screening record.

Section 453 requires federal judges to "do equal right to the poor and to the rich." Armstrong seeks the ordinary pleading rules, construction rules, and amendment process available to other civil litigants. Indigency doesn't authorize reduced pleading space, arbitrary loss of parties, adverse construction, or uncertainty about the operative complaint. Equal application of the governing rules supplies the process due here.

## VII. The fine and filing restriction lacked lawful authority and punished protected criticism without due process.

### *A. No rule or statute authorized a sua sponte monetary punishment without specific notice.*

The sanctioning order cited ***Luedtke*** to support a consequence for abusive language, but ***Luedtke*** involved a specific warning that further identified language could produce dismissal. There was no warning in this case identifying a governing rule or a possible fine; an order in another case didn't supply actual notice for this case. Dkt. 12, p. 8.

Rule 83(b) bars any sanction or disadvantage for an uncodified requirement without actual notice "in the particular case." No federal or local rule prohibited the identified rhetoric. Rule 11 would require an order to show cause describing the specific conduct before a court-initiated monetary sanction. Fed. R. Civ. P.

11(c)(3), (5)(B). None issued. Rule 26 didn't apply, and General L.R. 83(f) would depend on a local-rule violation the order didn't identify and which Armstrong's conduct didn't supply.

The criminal-contempt statutes do not authorize the fine either. Section 401 carefully limits a federal court's contempt power to three categories "and none other."

Section 401(1) reaches misbehavior in or near the court that obstructs justice. Filing papers through the Clerk occurs outside the court's physical presence. ***United States v. Britton,*** 731 F.3d 745, 751–52 (7th Cir. 2013); ***United States v. Oberhellmann,*** 946 F.2d 50, 52 (7th Cir. 1991).

Section 401(2) reaches misbehavior of court officers in official transactions. ***Cammer v. United States*** narrowly construed that category and excluded an attorney acting merely by virtue of bar membership. 350 U.S. 399, 405–08 (1956). Armstrong filed the motions as a litigant, not as an officer performing an official transaction.

Section 401(3) reaches disobedience of a *lawful* writ, process, order, rule, decree, or command. The order tied the $500 fine to language in Armstrong's motions. Dkt. 12, pp. 6–9. It identified no command governing that language. The separate page-and-party caps displaced Rules 20 and 21 and exceeded the authority

those Rules confer. Section 402 presupposes conduct within § 401's exclusive categories.

Dkt. 11 cited ***Maness*** for the legal proposition that contempt review can test an order where compliance would cause irreparable loss before appellate review. 419 U.S. 449, 458–61 (1975). Armstrong's position is affirmative: the filed criticism was contemptuous in the ordinary sense because it expressed direct disrespect for the court, but it fell outside § 401's three punishable categories. Congress's words "and none other" leave that form of contempt outside federal contempt punishment. His remark about being held in contempt contemplated an appealable ruling on the limiting order; it didn't concede that the court possessed statutory power to punish this conduct. ***Vallely v. Northern Fire & Marine Insurance Co.*** confirms that an order entered beyond the court's *lawful* power is not insulated from challenge merely because it was entered. 254 U.S. 348, 353–54 (1920).

***B. Inherent power could not evade § 401, the Rules, or due process.***

Inherent authority is bounded twice over. Its use must be a reasonable response to the needs of fair judicial administration, and it cannot contradict an express limitation in a statute or rule. ***Dietz,*** 579 U.S. at 45–46; ***Degen v. United States,*** 517 U.S. 820, 823–24 (1996). Summary punishment for filed speech was neither reasonable nor consistent with Rules 11 and 83.

Section 401's "and none other" language is decisive. Armstrong characterizes his filed disrespect as contempt, but Congress withheld contempt punishment from conduct outside presence contempt, officer misconduct in an official transaction, and disobedience of a *lawful* command. Inherent power cannot relabel and punish the same statutorily exempt contempt; doing so would erase § 401's express boundary.

Independent Seventh Circuit law required process. Before imposing sanctions sua sponte, a court must give notice of its intent and an opportunity to be heard, regardless of whether the asserted source is Rule 11, § 1927, or inherent power. ***Vega,*** 109 F.4th at 954–56; ***Johnson v. Cherry,*** 422 F.3d 540, 551–52 (7th Cir. 2005); ***The Jolly Group, Ltd. v. Medline Industries, Inc.,*** 435 F.3d 717, 720 (7th Cir. 2006). General awareness that courts can sanction misconduct is insufficient; notice must identify the specific conduct. ***In re Rimsat, Ltd.,*** 212 F.3d 1039, 1045–46 (7th Cir. 2000). Inherent-power sanctions also require a finding that the party willfully abused the process or litigated in bad faith to obstruct it. ***Fuery v. City of Chicago,*** 900 F.3d 450, 463 (7th Cir. 2018). The order afforded no pre-sanction process and made no such finding.

***C. The unconditional fine was criminally punitive in legal substance.***

Classification turns on the sanction's character and purpose, not its label. A civil sanction compensates a proven loss or coerces compliance by allowing the

person to purge it. A fixed, unconditional fine for completed conduct is punitive and criminal in substance. ***International Union, United Mine Workers of America v. Bagwell,*** 512 U.S. 821, 826–30 (1994); ***Hicks ex rel. Feiock v. Feiock,*** 485 U.S. 624, 631–35 (1988).

Every feature here is punitive. The $500 was fixed, payable to the Clerk rather than an injured party, based on completed speech, unsupported by a compensatory calculation, and impossible to avoid through compliance. Dkt. 12, p. 9. ***Goodyear Tire & Rubber Co. v. Haeger*** holds that when inherent-power sanctions are imposed through civil procedures, they must compensate loss rather than punish; a separate punitive penalty requires the procedural guarantees applicable in criminal cases. 581 U.S. 101, 108 (2017).

The district judge stated that he was not holding Armstrong in contempt. Dkt. 12, p. 9. That statement defeats any theory that ordinary civil-contempt process supplied the fine. It didn't adjudicate whether the fine was criminal contempt in legal substance; that's an objective legal question. If the fine is defended as punitive contempt, notice of a criminal charge and the protections required by ***Bagwell*** and Federal Rule of Criminal Procedure 42 were absent. Although the language was contemptuous in the ordinary sense, § 401 fixes the limits of federal contempt punishment, and inherent power cannot contradict that statutory boundary. ***Dietz v. Bouldin,*** 579 U.S. 40, 45–46 (2016). If defended as a

civil inherent-power sanction, the fine also fails ***Goodyear*** because it compensated no loss. It is invalid either way.

***D. The district-wide filing restriction was unsupported and overbroad.***

Courts may protect their dockets from demonstrated, repeated abuse, but a filing restriction must be supported by findings and tailored to the problem. See ***Support Systems International, Inc. v. Mack,*** 45 F.3d 185, 186 (7th Cir. 1995); ***Donelson v. Hardy,*** 931 F.3d 565, 569–70 (7th Cir. 2019). The order arose from a single pre-service action. It didn't find a history of frivolous lawsuits, evasion of earlier sanctions, violation of a prior filing bar, or failure of graduated measures. It didn't explain why a case-specific restriction would be insufficient.

Yet the restriction directed the Clerk to reject papers in nearly all current and future civil matters in the district until the disputed $500 was paid. Dkt. 12, pp. 9–10. Exceptions for appeals, criminal matters, habeas proceedings, and one case do not explain why unrelated civil claims had to be blocked. Tying that access restriction to an unlawfully imposed fine compounds rather than cures the defect. Without vexatious-litigant findings, consideration of narrower alternatives, and a fit between conduct and scope, the filing bar was an abuse of discretion.

The order also gave the fine leverage unrelated to its stated purpose. A sanction ostensibly responding to language in two motions became a condition on preserving claims, developing records, and seeking relief in future disputes

earlier sanctions, violation of a prior filing bar, failure of graduated measures, or explain why a case-specific restriction would be insufficient. Without vexatious-litigant findings, consideration of narrower alternatives, and a fit between conduct and scope, the filing bar was an abuse of discretion.

The restriction attached filing consequences to the punished viewpoint and blocked papers in nearly every civil matter until payment. It thereby prevented motions challenging judicial authority, preservation of objections, and evidence supporting bias or due-process claims through postjudgment practice and this appeal.

Forum classification doesn't permit viewpoint discrimination. Even in a limited or nonpublic forum, government may impose reasonable subject-matter limits but can't disfavor one viewpoint within a permitted subject. ***Perry,*** 460 U.S. at 46; ***Rosenberger,*** 515 U.S. at 829–31; ***R.A.V.,*** 505 U.S. at 383–86. Courts receive filings concerning sexual conduct in appropriate cases; without a neutral, preannounced decorum rule, the court could not single out a sexual analogy because it criticized judicial action.

The fine and filing restriction satisfy the retaliation sequence: protected criticism, adverse action deterring speech, and an order tying punishment to the criticism. ***Hartman,*** 547 U.S. at 256; ***Crawford-El,*** 523 U.S. at 592–93. Private speech submitted only to support a due-process bias argument was still more

remote from courtroom administration. The Court need hold only that an unannounced punitive fine and broad filing disability cannot punish critical expression without a neutral rule, specific notice, an opportunity to respond, and the findings required by the asserted authority.

## CONCLUSION

The Court should vacate the May 29 judgment, including the dismissal with prejudice, $500 fine, and filing restriction. It should remand for identification of the operative complaint, adjudication of amendment under Rule 15, construction under Rule 8(e), claim- and party-specific analysis, and any joinder or severance under Rules 20 and 21. Armstrong should be permitted to plead without unsupported page and defendant caps or the sanctions' continuing effect.

Respectfully submitted,

William L. Armstrong III, pro se

Dated: August 25, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Circuit Rule 32(c), I certify that this brief contains 13,979 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief uses 14-point Times New Roman, a proportionally spaced typeface.

Word processor/version: Google Docs / 1.26.331.05.90.

William L. Armstrong III

# APPENDIX

## TABLE OF CONTENTS


Order entered December 1, 2025 (Dkt. 7) ........ A-2

Order entered May 11, 2026 (Dkt. 10) ........ A-12

Order entered May 29, 2026 (Dkt. 12) ........ A-23

Judgment entered May 29, 2026 (Dkt. 13) ........ A-34


## CIRCUIT RULE 30(d) STATEMENT

All materials required by Circuit Rule 30(a) and (b) are included in this appendix.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG,

Plaintiff,

UNITED STATES,

Involuntary Plaintiff,

v.

ALTER TRADING CORPORATION, SEVEN STARS AUTO PARTS LLC, MILLER COMPRESSING COMPANY, JON SPIGEL, MICHAEL GOLDSTEIN, ROBERT GOLDSTEIN, GOLDSTEIN GROUP INC., ROBERT G. ELLIS, QUARLES & BRADY LLC, ALTER LOGISTICS & TRANSLOADING COMPANY, MCC HOLDING INC., JOHN BUSBY, ALL SEASONS TRUCKING 2 LLC, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, TOYOTA MOTOR SALES, USA, TOYOTA FINANCIAL SERVICES, TOYOTA TSUSHO CORPORATION, TOYOTA TSUSHO AMERICA INC., ALTECH RECYCLING LLC, JEFFREY GOLDSTEIN, KATHY GOLDSTEIN, RICHARD GOLDSTEIN, JOSH MILLAN, MARC GOLDSTEIN, NATHAN MILLAN, SAMANTHA GOLDSTEIN, LAUREN GOLDSTEIN, JEREMY GOLDSTEIN, ALEX GOLDSTEIN, JESSE GOLDSTEIN, RENEE GOLDSTEIN, DAVID KLEIN, JOSEPH

Case No. 25-CV-1702-JPS

**ORDER**

POEHLMANN, UNITED STATES, CHANEL, BODY CORPORATE WISCONSIN LLC, TOYOTA MOTOR CREDIT CORPORATION, BRYAN DOWNER, ANTHONY R. GARDINER, JR., ALTER METAL RECYCLING, and GREEN BRIDGE COMPANY,

Defendants.

## 1. INTRODUCTION

Plaintiff William Louis Armstrong ("Plaintiff") sues Alter Trading Corporation, Seven Stars Auto Parts LLC, Miller Compressing Company, Jon Spigel, Michael Goldstein, Robert Goldstein, Goldstein Group Inc., Robert G. Ellis, Quarles & Brady LLC, Alter Logistics & Transloading Company, MCC Holding Inc., John Busby, All Seasons Trucking 2 LLC, Toyota Motor Corporation, Toyota Motor North America, Toyota Motor Sales, USA, Toyota Financial Services, Toyota Tsusho Corporation, Toyota Tsusho America Inc., Altech Recycling LLC, Jeffrey Goldstein, Kathy Goldstein, Richard Goldstein, Josh Millan, Marc Goldstein, Nathan Millan, Samantha Goldstein, Lauren Goldstein, Jeremy Goldstein, Alex Goldstein, Jesse Goldstein, Renee Goldstein, David Klein, Joseph Poehlmann, United States, Chanel, Body Corporate Wisconsin LLC, Toyota Motor Credit Corporation, Bryan Downer, Anthony R. Gardiner, Jr., Alter Metal Recycling, and Green Bridge Company (collectively, "Defendants") for violations of both state and federal law. ECF No. 6 (first amended complaint). He also moves for leave to proceed in forma pauperis, ECF No. 4, and for e-filing privileges, ECF No. 3. This Order screens Plaintiff's amended complaint and addresses his pending motions.

For the reasons discussed herein, the Court will defer ruling on Plaintiff's motion for leave to proceed in forma pauperis but will grant Plaintiff e-filing privileges, as it has already done so in Plaintiff's other case before this Court. *William Armstrong v. City of Milwaukee, et al.*, Case No. 24-CV-1389, ECF No. 13 (E.D. Wis. Mar. 18, 2025). The Court also concludes that Plaintiff may amend his complaint but, if he elects to do so, Plaintiff's second amended complaint may not exceed fifteen (15) pages, nor will he be permitted to name more than ten (10) defendants.

## 2. MOTION TO PROCEED IN FORMA PAUPERIS

A party proceeding pro se may submit a request to proceed without prepaying the filing fee, otherwise known as a motion to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure [that] indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits."[1] *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether

[1]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other, inapplicable grounds as recognized by Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring)).

the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The Court engages in this part of the inquiry *infra* Section 4.

It follows that a litigant whose complaint does not clear the § 1915(e)(2) threshold or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

Because the Court concludes, *infra* Section 4, that Plaintiff violates Federal Rule of Civil Procedure 8(a), the Court will defer ruling on the merits of his motion for leave to proceed in forma pauperis.

## 3. MOTION FOR E-FILING PRIVILEGES

Plaintiff also moves for e-filing privileges. ECF No. 3. E-filing privileges are not granted to pro se litigants as a matter of course. District policy is that "[p]arties proceeding *pro se* cannot file electronically unless authorized by the court." U.S. DISTRICT COURT, EASTERN DISTRICT WIS.,

ELECTRONIC CASE FILING POLICIES AND PROCEDURES MANUAL 1 (2025), https://www.wied.uscourts.gov/sites/wied/files/documents/09.30.25%20CM.ECF%20Policies%20and%20Procedures%20final.pdf, [https://perma.cc/98HT-PCZE]. Here, however, the Court has already granted Plaintiff e-filing privileges in his other case pending before this Court. *William Armstrong v. City of Milwaukee, et al.*, Case No. 24-CV-1389, ECF No. 13 (E.D. Wis. Mar. 18, 2025). The Court will accordingly grant his motion for e-filing privileges. If, however, Plaintiff abuses those privileges or if it otherwise becomes apparent that he is no longer entitled to e-filing privileges, the Court may revoke his privilege without further notice. To the extent Plaintiff intends to amend his complaint such that his "amendments will be even longer" than before, ECF No. 3 at 2, the Court admonishes Plaintiff that doing so in violation of the conditions imposed on any second amended complaint Plaintiff elects to file will constitute a basis to revoke his e-filing privileges in this action.

## 4. SCREENING THE COMPLAINT

### 4.1 Legal Standard

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on the defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, FED. R. CIV. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*,

490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21

(1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**4.2 Plaintiff's Amended Complaint**

The Court is not obligated to, nor will it, "spend countless hours 'fishing' for the few relevant allegations." *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011). Here, the original complaint consisted of 127 pages, ECF No. 1, while operative amended complaint consists of 144 pages, ECF No. 6, and contains nearly 290 pages of exhibits. While "length alone is generally insufficient to justify rejecting a complaint, unintelligibility is certainly a legitimate reason for doing so" because it undermines the notice defendants are owed to prepare a defense. *Stanard v. Ngyuen*, 658 F.3d 792, 797-98 (7th Cir. 2011).

Because Plaintiff has undergone screening from this Court before, Plaintiff well knows of this notice requirement. *William Armstrong v. City of Milwaukee, et al.*, Case No. 24-CV-1389, ECF No. 13 at 6 (E.D. Wis. Mar. 18, 2025). Despite this knowledge, Plaintiff leaves his analysis incomplete in several instances, leaving blank, for instance, important sections as to which entities certain Defendants unlawfully maintained or controlled. *See, e.g.*, ECF No. 6 at 108–123. Plaintiff, by his own admission, seeks to intentionally withhold the information that would give Defendants the fair notice they are owed. ECF No. 6 at 13 ("I reserve any right and / or privilege to assert any alterative basis for satisfying the elements of this and other offenses including without limitation the particular allegations supporting claims of unlawful activity and specified unlawful activity."). To be sure, Plaintiff may strategically select the claims he wishes to bring, but Plaintiff may not withhold the allegations that form the basis for his claims, as doing so disables Defendants from having a fair chance to defend the action. *See*

*Stanard*, 658 F.3d at 798 (noting that dismissal is the proper remedy where "a complaint [is] too confusing to determine the facts that constitute the alleged wrongful conduct").

In addition, here, as in *Stanard*, not only is the operative complaint far longer than it needs to be, but it is also "rampant" with "syntactical[] and typographical errors" that "contribute[] to an overall sense of unintelligibility." *Stanard*, 658 F.3d at 798. Many pages contain sentences between 50 to 100 words with either incorrect or inadequate punctuation. *See, e.g.*, ECF No. 6 at 64, 68, and 96. Indeed, *Stanard* said it best: "the grammatical and spelling errors are too numerous to add '[sic]' where required." *Stanard*, 658 F.3d at 799.

Another similarity to *Stanard* is that much of the writing is little more than gibberish. For instance, in three sentences that together contain over 130 words, Plaintiff alleges that: "The prosecution is able to identify facts unique to the largest competitors in the relevant industry groups and which would have been attainable to William Armstrong's business, that would have put the business in a group with average revenues around eight billion dollars a year, with profits that at about two billion dollars a year, or 25% of revenues. For starters, pretty much anybody who had advertised effectively and allowed commercial use had revenues of a billion dollars per year in the 523120 code. There's a claim that William Armstrong's aggressive growth strategy, innovative marketing, and competitive services catering also to commercial users, would have resulted in balance sheets after 20 years being roughly in line with companies like Ally invest, and Vanguard, at current day levels of revenue, with profits at about 25% of revenue." ECF No. 6 at 88.

Indeed, these deficits, like in *Stanard*, evince "a vague, confusing, and conclusory articulation of the factual and legal basis for the claims and a general 'kitchen sink' approach to pleading the case." *Stanard*, 658 F.3d at 798. Such allegations are insufficient to afford Defendants fair notice of the claims brought against them. Should Plaintiff wish to amend, the Court will allow him to do so once more, but Plaintiff's second amended complaint may not exceed fifteen (15) pages nor include more than ten (10) defendants.

## 5. CONCLUSION

For the reasons discussed herein, the Court defers ruling on Plaintiff's motion to proceed without paying the file fee, ECF No. 4, but grants his motion for e-filing privileges, ECF No. 3. Should Plaintiff wish to amend, the Court will allow him to do so once more, but Plaintiff's second amended complaint may not exceed fifteen (15) pages nor include more than ten (10) defendants.

To that end, should Plaintiff wish to attempt to amend his pleadings, he shall do so on or before December 22, 2025. Any second amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint." Any second amended complaint must be complete in and of itself without reference to the original or amended complaints. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In the case of amendment, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

If Plaintiff files a second amended complaint, it will become the operative complaint in this matter, and the Court will screen it in

accordance with 28 U.S.C. § 1915. If Plaintiff fails to timely file a second amended complaint, or files one that fails to comply with Rule 8 or the conditions imposed by this Order, this action will be dismissed without further notice.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong's motion for e-filing privileges, ECF No. 3, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong may file a second amended complaint, if at all, on or before December 22, 2025; failure to timely file a second amended complaint, or the filing of one that fails to comply with Rule 8 or the conditions imposed by this Order, will result in this case being dismissed without further notice.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG, III

Plaintiff,

UNITED STATES,

Involuntary Plaintiff,

v.

ALTER TRADING CORPORATION, SEVEN STARS AUTO PARTS LLC, MILLER COMPRESSING COMPANY, JON SPIGEL, MICHAEL GOLDSTEIN, ROBERT GOLDSTEIN, GOLDSTEIN GROUP, INC., ROBERT G. ELLIS, QUARLES & BRADY, LLC, ALTER LOGISTICS & TRANSLOADING COMPANY, MCC HOLDING INC., JOHN BUSBY, ALL SEASONS TRUCKING 2 LLC, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, TOYOTA MOTOR SALES, USA, TOYOTA FINANCIAL SERVICES, TOYOTA TSUSHO CORPORATION, TOYOTA TSUSHO AMERICA INC., ALTECH RECYCLING LLC, JEFFREY GOLDSTEIN, KATHY GOLDSTEIN, RICHARD GOLDSTEIN, JOSH MILLAN, MARC GOLDSTEIN, NATHAN MILLAN, SAMANTHA GOLDSTEIN, LAUREN GOLDSTEIN, JEREMY GOLDSTEIN, ALEX GOLDSTEIN, JESSE GOLDSTEIN, RENEE GOLDSTEIN, DAVID KLEIN, JOSEPH POEHLMANN, UNITED STATES, CHANEL, BODY CORPORATE WISCONSIN LLC, TOYOTA MOTOR CREDIT CORPORATION, BRYAN DOWNER, ANTHONY R. GARDINER, JR., ALTER METAL RECYCLING, and GREEN BRIDGE COMPANY,

Defendants.

Case No. 25-CV-1702

**ORDER**

In November 2025, Plaintiff William Louis Armstrong, III ("Plaintiff" or "Armstrong") initiated a suit against Alter Trading Corporation, Seven Stars Auto Parts LLC, Miller Compressing Company, Jon Spigel, Michael Goldstein, Robert Goldstein, Goldstein Group Inc., Robert G. Ellis, Quarles & Brady, LLC, Alter Logistics & Transloading Company, MCC Holding Inc., John Busby, All Seasons Trucking 2 LLC, Toyota Motor Corporation, Toyota Motor North America, Toyota Motor Sales, USA, Toyota Financial Services, Toyota Tsusho Corporation, Toyota Tsusho America Inc., Altech Recycling LLC, Jeffrey Goldstein, Kathy Goldstein, Richard Goldstein, Josh Millan, Marc Goldstein, Nathan Millan, Samantha Goldstein, Lauren Goldstein, Jeremy Goldstein, Alex Goldstein, Jesse Goldstein, Renee Goldstein, David Klein, Joseph Poehlmann, United States, Chanel, Body Corporate Wisconsin LLC, Toyota Motor Credit Corporation, Bryan Downer, Anthony R. Gardiner, Jr., Alter Metal Recycling, and Green Bridge Company (collectively, "Defendants") for violations of both state and federal law. ECF No. 6 (first amended complaint).

In early December 2025, the Court screened his complaint, advising Plaintiff to amend his complaint so that it adhered to Federal Rule of Civil Procedure 8 and the Court's pleading instructions. ECF No. 7 at 9–10. Specifically, the Court ordered Plaintiff to file, by December 22, 2025, an amended complaint not to exceed fifteen (15) pages or include more than ten (10) defendants. *Id.* at 9. On December 1, 2025, Plaintiff brought a motion to reconsider the ruling. ECF No. 8. On December 22, 2025, Plaintiff brought a second motion to reconsider, attaching as an exhibit his second[1] amended complaint (the "amended complaint" or "AC"). ECF Nos. 9 and 9-1. This

---

[1]Armstrong had previously amended his complaint, ECF No. 6, prior to the Court's screening of the original complaint, ECF No. 1.

Order addresses those motions and will allow Plaintiff one more chance to amend; Plaintiff is admonished that continued failure to abide by the procedural rules governing civil cases, and the Court's orders, may result in dismissal of this case. The Court will again defer ruling on Plaintiff's pending motion for leave to proceed without prepayment of the filing fee, ECF No. 4, as the screening process continues.

## 2. SCREENING STANDARDS

A party proceeding pro se may submit to the court a request for leave to proceed without prepaying the otherwise required filing fees, otherwise known as a motion for leave to proceed in forma pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits."[2] *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or

---

[2]Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997), *superseded by rule on other grounds*, Fed. R. App. P. 24, *as explained in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

It follows that a litigant whose complaint does not meet the criteria in 28 U.S.C. § 1915(e)(2) or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

Because the Court concludes, *infra* Section 4, that Plaintiff's amended complaint violates Federal Rule of Civil Procedure 8(a) and the Court's recent order, ECF No. 7, the Court will defer ruling on the merits of his motion for leave to proceed in forma pauperis.

## 3. RELEVANT ALLEGATIONS

Plaintiff makes a series of disparate allegations, appearing to allege claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Wisconsin's corollary law against over forty defendants. ECF No. 9-1 at 5–19. Primarily, Plaintiff sues for violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d) and Wisconsin Statutes §§ 946.83(1), (2), and (3). *Id.* at 5. Plaintiff also cites various criminal provisions under both state and federal law but provides no legal basis for a private right of action for any

of them. *Id.* at 7 (citing 18 U.S.C. §§ 659, 1341, 1343, 1951, 1952, 1956, 1960, and 2321 and WIS. STAT. §§ 180.0129, 943.20, 943.30, 943.39, 943.60, 946.32, and 961). Rather, he suggests that some of these provisions constitute the predicate acts for the state and federal RICO violations; in fact, Armstrong attaches a table at the very end of the AC entitled "Predicate Acts Chart (Mail and Wire Fraud)" that purports to list out certain wrongful acts or statements made by, seemingly, certain actors of Toyota and its affiliates. ECF No. 9-1 at 19.

## 4. SCREENING THE COMPLAINT

### 4.1 Legal Standard

As noted above, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, FED. R. CIV. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where there is an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 4.2 Analysis

The Court is faced with a litigant who has disregarded the Federal Rules of Civil Procedure and the Court's pleading instructions. Plaintiff was advised to not exceed fifteen pages or include more than ten defendants. ECF No. 7. Rather than heed those instructions, Plaintiff decided to use those numbers as starting points, rather than ending points. ECF No. 9 at 8 ("The proposed amend[ed] [complaint] doesn't drop defendants, it adds a few, and it includes 4 caption pages and 15 pleading pages. I'm filing these

at the beginning of the day, and I'll decide what I'll ultimately do by night's end."). In fact, Plaintiff's allegations now span more than fifteen pages and name more than forty defendants.[3] *See generally* ECF No. 9-1. While pro se pleadings are to be construed liberally, such filings must still comply with rules that govern civil cases, and court orders. *See Whitfield v. Synder*, 263 F. App'x 518, 521 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) and *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002)).

Typically, in a case like this, the Court would strike the excess, namely pages sixteen through nineteen. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 161 (S.D. Ind. 2009) (citing *Aspera v. Copperweld Corp.*, Case No. 04 C 4358, 2006 WL 488686, at *2 (N.D. Ill. Feb. 24, 2006)). However, in this case, the amended complaint fails to state a claim altogether. As a starting point, a review of the amended complaint reveals that Armstrong's factual allegations are so lacking in detail that it is impossible for them to support any of the alleged wrongful conduct, be it the RICO charges or the underlying predicate acts. The convoluted, unintelligible chart at the end of his complaint that implicates individuals not yet named in this action brings this point home. ECF No. 9-1 at 19. To the extent there are factual allegations that bolster his claims, Armstrong presents them in an impermissible manner, as described below.

Armstrong engages in what other courts in this district have called a "puzzle pleading," at least in the context of securities litigation. *Cf. U.S. Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 906 (N.D. Ill. 2021)

---

[3]To the extent he sues "Chanel," he does not provide her last name or other information, thereby failing to afford that individual proper notice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

(citing *Alizadeh v. Tellabs, Inc.*, Case No. 13 C 537, 2014 WL 2726676, at *5 (N.D. Ill. June 16, 2014)). It is so named because it requires "the Court and the defendant[s] to piece together exactly which statements [the plaintiff is challenging] and what allegations contradict those statements." *Id.* (citing same). This kind of a pleading "improperly places the burden on the Court to sort out the alleged misrepresentations," or conduct, "and then match them with the corresponding adverse facts." *Id.* (quoting *Conlee v. WMS Indus., Inc.*, Case No. 11 C 3503, 2012 WL 3042498, at *4 (N.D. Ill. July 25, 2012). "The net effect of a puzzle pleading may be to 'leave the reader—whether Defendants or the [C]ourt—jumping from page to page in an attempt to link the alleged statements," or conduct, "to the background that supposedly makes them [unlawful].'" *Id.* at 906–07 (quoting same).

As a result, the Court is unable to review the sufficiency of each count due to the formatting of the amended complaint. *Id.* (citing *U.S. Sec. & Exch. Comm'n v. Ustian*, 229 F. Supp. 3d 739, 778 (N.D. Ill. 2017). Specifically, the Court is unable to identify the role of each Defendant in the RICO enterprise or the underlying predicate act, their action or inactions that amounted to misconduct, and why their actions were wrongful. For instance, midway through the AC, Armstrong alleged that the "commission of the above[-]described act was also the object of a conspiracy between the involved parties, chargeable separately and distinguishable as its own predicate act for Wisconsin RICO." ECF No. 9-1 at 9. However, by this point in the pleading, Armstrong had alleged multiple possible wrongful acts, such as the production of "conspiracy to commit penalty for false documents" and "false swearing," which may constitute the "the above-described act" to which he referred. *See id.* at 8–9. In addition, there is no way to know to whom Armstrong referred when he cited to the "involved parties." *See id.* While incorporating by reference previous factual

allegations is not by itself against the rules, the trouble here remains that Defendants lack notice and the Court lacks information to assess the validity and bases of Armstrong's claims. *Winemaster*, 529 F. Supp. 3d at 907 (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1324–25 (11th Cir. 2015) and *Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *5 (N.D. Ill. Sept. 24, 2013)).

Indeed, puzzle piece allegations like these plague Armstrong's second amended complaint and make it unduly burdensome on the Court to assess the sufficiency of the allegations here. Ultimately, "while the Court liberally construes the pleadings of pro se litigants," the Court "'will not invent legal arguments for litigants and is not obligated to accept as true legal conclusions or unsupported conclusions of fact.'" *Wilburn v. Kroll Substance Abuse Training*, Case No. 10-CV-174, 2010 WL 2178963, at *2 (S.D. Ind. May 27, 2010) (citing *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)). To allow this case to proceed in its current form would require the Court to do just that. Plaintiff knows this since he has faced, on several occasions, the screening process of this very Court. ECF No. 7; *Armstrong v. City of Milwaukee, et al.*, 24-CV-1389-JPS, ECF Nos. 13 and 16 (E.D. Wis. 2024). Plaintiff will be afforded a final opportunity to amend to correct these defects before it will dismiss the case. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (noting that there is a "presumption in favor of giving plaintiffs at least one opportunity to amend" (citing *Luevano v. Wal-Mart Stores, Inc.*, 772 F.3d 1014, 1024 (7th Cir. 2013))).

### 4.3 Motions to Reconsider

Because Plaintiff has amended his complaint, Plaintiff's motions to reconsider, ECF Nos. 8 and 9, are denied as moot because both motions asked for relief from the Court's ruling on the original complaint.

## 5. CONCLUSION

For the reasons discussed herein, the Court defers ruling on Plaintiff's motion for leave to proceed without prepaying the file fee, ECF No. 4, but denies as moot his motions to reconsider, ECF No. 8 and 9. Should Plaintiff wish to amend, the Court will allow him to do so once more, but Plaintiff's third amended complaint may not exceed fifteen (15) pages nor include more than ten (10) defendants. Plaintiff should also refrain from the puzzle piece pleading, as described above.

To that end, should Plaintiff wish to attempt to amend his pleadings, he shall do so on or before **May 18, 2026**. Any third amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint." Any third amended complaint must be complete in and of itself without reference to the original or amended complaints. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). In the case of amendment, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

If Plaintiff files a third amended complaint, it will become the operative complaint in this matter, and the Court will screen it in accordance with 28 U.S.C. § 1915. If Plaintiff fails to timely file a third amended complaint, or files one that fails to comply with Rule 8 or the conditions imposed by this Order, this action will be dismissed without further notice.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong's motions for reconsideration, ECF Nos. 8 and 9, be and the same are hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong may file a third amended complaint, if at all, on or before **May 18, 2026**; failure to timely file a third amended complaint, or the filing of one that fails to comply with Rule 8 or the conditions imposed by this Order, will result in this case being dismissed without further notice.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG,

Plaintiff,

UNITED STATES,

Involuntary Plaintiff,

v.

ALTER TRADING CORPORATION, SEVEN STARS AUTO PARTS LLC, MILLER COMPRESSING COMPANY, JON SPIGEL, MICHAEL GOLDSTEIN, ROBERT GOLDSTEIN, GOLDSTEIN GROUP, INC., ROBERT G. ELLIS, QUARLES & BRADY, LLC, ALTER LOGISTICS & TRANSLOADING COMPANY, MCC HOLDING INC., JOHN BUSBY, ALL SEASONS TRUCKING 2 LLC, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, TOYOTA MOTOR SALES, USA, TOYOTA FINANCIAL SERVICES, TOYOTA TSUSHO CORPORATION, TOYOTA TSUSHO AMERICA INC., ALTECH RECYCLING LLC, JEFFREY GOLDSTEIN, KATHY GOLDSTEIN, RICHARD GOLDSTEIN, JOSH MILLAN, MARC GOLDSTEIN, NATHAN MILLAN, SAMANTHA GOLDSTEIN, LAUREN GOLDSTEIN, JEREMY GOLDSTEIN, ALEX GOLDSTEIN, JESSE GOLDSTEIN, RENEE GOLDSTEIN, DAVID KLEIN, JOSEPH POEHLMANN, UNITED STATES, CHANEL, BODY CORPORATE WISCONSIN LLC, TOYOTA MOTOR CREDIT CORPORATION, BRYAN DOWNER, ANTHONY R. GARDINER, JR., ALTER METAL RECYCLING, and GREEN BRIDGE COMPANY,

Defendants.

Case No. 25-CV-1702

**ORDER**

In November 2025, Plaintiff William Louis Armstrong ("Plaintiff" or "Armstrong") initiated a suit against Alter Trading Corporation, Seven Stars Auto Parts LLC, Miller Compressing Company, Jon Spigel, Michael Goldstein, Robert Goldstein, Goldstein Group Inc., Robert G. Ellis, Quarles & Brady, LLC, Alter Logistics & Transloading Company, MCC Holding Inc., John Busby, All Seasons Trucking 2 LLC, Toyota Motor Corporation, Toyota Motor North America, Toyota Motor Sales, USA, Toyota Financial Services, Toyota Tsusho Corporation, Toyota Tsusho America Inc., Altech Recycling LLC, Jeffrey Goldstein, Kathy Goldstein, Richard Goldstein, Josh Millan, Marc Goldstein, Nathan Millan, Samantha Goldstein, Lauren Goldstein, Jeremy Goldstein, Alex Goldstein, Jesse Goldstein, Renee Goldstein, David Klein, Joseph Poehlmann, United States, Chanel, Body Corporate Wisconsin LLC, Toyota Motor Credit Corporation, Bryan Downer, Anthony R. Gardiner, Jr., Alter Metal Recycling, and Green Bridge Company (collectively, "Defendants") for violations of both state and federal law. ECF No. 6 (first amended complaint). At that same time, he also brought a motion to proceed without prepayment of the filing fee. ECF No. 4.

In early December 2025, the Court screened his complaint, advising Plaintiff to amend his complaint so that it comported with Federal Rule of Civil Procedure 8 and the Court's pleading instructions. ECF No. 7 at 9–10. Specifically, the Court ordered Plaintiff to file, by December 22, 2025, an amended complaint not to exceed fifteen (15) pages or include more than ten (10) defendants. *Id.* at 9. On December 22, 2025, Plaintiff filed a proposed second amended complaint. ECF No. 9-1. On May 11, 2026, the Court screened that complaint but declined to accept it, noting that it amounted to what other courts have called a "puzzle pleading." ECF No. 10 at 10 (citing *U.S. Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 897

(N.D. Ill. 2021)). At that time, the Court gave Plaintiff one more week to file a complaint that complied with Rule 8 and the Court's instructions. *Id.* at 10.

On May 18, 2026, Plaintiff filed, along with his proposed third amended complaint, ECF No. 11-1, several motions contained within one filing: seeking an extension of time to file an amended complaint, to correct his second amended complaint, to appoint counsel, and to reconsider the prior screening orders. ECF No. 11. For the reasons set forth below, the Court will dismiss this case with prejudice. *See infra* Section 4.1. As a result, Plaintiff's motions to proceed without prepayment of the filing fee, ECF No. 4, and seeking an extension of time to file an amended complaint, to correct his second amended complaint, to appoint counsel, and to reconsider the prior screening orders, ECF No. 11, will be denied as moot. Finally, due to Plaintiff's conduct, the Court will impose sanctions, as described herein. *See infra* Section 4.2.

## 3. RELEVANT ALLEGATIONS

Plaintiff repeats a series of disparate allegations, appearing to allege claims against over forty defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and Wisconsin's corollary law for alleged misconduct that dates back to at least 2012. ECF No. 11-1 at 5–14. As in his second amended complaint, ECF No. 9-1 at 5, Plaintiff primarily sues for violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d) and Wisconsin Statutes §§ 946.83(1), (2), and (3). ECF No. 11-1 at 3. Plaintiff also repeats various criminal provisions under both state and federal law but, again, provides no legal basis for a private civil right of action for any of them. *Id.* at 5–14 (citing 18 U.S.C. §§ 1341, 1343, 1951, 1952, 1956, 1960, and 2321 and WIS. STAT. §§ 180.0129, 943.02, 943.20, 943.30, 943.39, 943.60, 946.32, and 961); ECF No. 9-1 at 5–18. At the very end of the third amended complaint,

Plaintiff re-attaches a table entitled "Predicate Acts Chart (Mail and Wire Fraud)" that purports to list out certain wrongful acts or statements made by, seemingly, certain actors of Toyota and its affiliates. *Compare* ECF No. 9-1 at 19 *with* ECF No. 11-1 at 15.

## 4. ANALYSIS

### 4.1 Dismissal

The Court will dismiss Armstrong's case because he failed to adhere to the Federal Rule of Civil Procedure 8 and the Court's prior instructions, ECF Nos. 7 and 10, and because the allegations in his third amended complaint are downright frivolous.

To begin, his third amended complaint once *again* names more than forty (40) Defendants, ECF No. 11-1, in direct contradiction to the Court's prior orders. ECF No. 7 at 9 (limiting him to no more than fifteen (15) Defendants); ECF No. 10 at 10 (same). Plaintiff's assertion that his third amended complaint complies with the Court's page limitations, ECF No. 11 at 3, ignores the Court's remaining instructions: to limit the number of Defendants. While the Court can appreciate Plaintiff's attempt to "rearrange the [D]efendants so that a tentative preferred ten are the first ten when the list is read as left half first and right half second," the Court still has problems discerning the who, what, when, where, how, and why which Defendants did what or what they allegedly did. *Id.*

For instance, in reviewing his third amended complaint, Plaintiff alleges that the facilities belonging to "Alter Transloading & Logistics" were used for "drug smuggling" and that "Alter Trading Corporation, Alter Transloading & Logistics, Miller Compressing Company, and Seven Stars Auto Parts LLC were principals." ECF No. 11-1 at 8–9. However, Plaintiff never provides any facts explaining what these companies did to support this assertion. In another instance, he suggests that the "Goldstein

companies" engaged in a "pattern of felony fraud arson," and while he identifies certain individuals with the last name Goldstein, he never identifies the Goldstein companies to which he refers. *Id.* at 12.

The Court, therefore, finds that Plaintiff has failed to address the Rule 8 pleading deficiencies about which this Court has repeatedly warned Plaintiff. ECF No. 7 at 7–9 (giving him a chance to correct his impermissible "kitchen sink" pleading approach (quoting *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011)); ECF No. 10 at 7–9 (giving him a chance to correct his "puzzle pleading" (quoting *Winemaster*, 529 F. Supp. 3d at 897 (N.D. Ill. 2021)).

In addition, the Court finds that Plaintiff's allegations are at best wholly "delusional" and that the case warrants dismissal on this basis as well. *Holland v. City of Gary*, 503 F. App'x 476, 477 (7th Cir. 2013). To start, Plaintiff discuses a racketeering enterprise involving the Goldstein family that dates back almost fifteen years. ECF No. 11-1 at 5, 10, and 11 (discussing alleged co-conspirators Michael and Robert Goldstein's role in the "2012 [m]oney laundering"). He suggests that the Goldstein companies are "criminal treasuries" for the "Jewish Mafia." *Id.* at 11. He further suggests that he does not "know who was killed" or "where the bodies are buried" but that they are "made men" and that "[t]hey're more likely than not 'made' to even be in their positions, like Pablo Escobar's babysitters." *Id.* Considered together, these allegations mirror those in *Holland*, where the Seventh Circuit upheld the dismissal of a complaint that alleged that defendants had plotted, for over twenty years, a "wide-ranging conspiracy" against the plaintiff. 503 F. App'x at 477.

While pro se pleadings are to be construed liberally, such filings must still comply with rules that govern civil cases, and court orders. *See Whitfield v. Synder*, 263 F. App'x 518, 521 (7th Cir. 2008) (citing *McNeil v.*

*United States*, 508 U.S. 106, 113 (1993) and *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002)). The Court "will not invent legal arguments for litigants," even if pro se, "and is not obliged to accept as true legal conclusions or unsupported conclusions of fact.'" *Wilburn v. Kroll Substance Abuse Training*, No. 10-CV-174, 2010 WL 2178963, at *2 (S.D. Ind. May 27, 2010) (quoting *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006)). The Court will certainly not do that here, where Plaintiff has had multiple chances to correct his pleadings and is well-aware of this Court's screening process. ECF Nos. 7 and 10; City of Milwaukee Case, ECF Nos. 13 and 16.

Because "the Court has already screened" his "original complaint" (and his subsequent one) and "provided guidance to assist with his claims," the Court "finds that further amendment would be futile" and will dismiss this case. *Johnson v. Fisher*, No. 24-CV-454-JPS, 2024 WL 3965075, at *3 (E.D. Wis. Aug. 28, 2024) (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015)). The dismissal will operate with prejudice. *Cable v. Kuraray Am., Inc.*, No. 24-1233, 2024 WL 4499766, at *2 (7th Cir. Oct. 16, 2024) (affirming dismissal of case for "noncompliance with the federal rules" and "failure to obey reasonable orders" (citing *Dorsey v. Varga*, 55 F.4th 1094, 1104 (7th Cir. 2022)); *Luffman v. Collinsville Cmty. Unit Sch. Dist. #10*, No. 25-CV-00842-SPM, 2025 WL 1568299, at *4 (S.D. Ill. June 3, 2025) (dismissal with prejudice, in relevant part, for failure to comply with Federal Rule of Civil Procedure 8 following multiple opportunities to amend); *Greyer v. Does*, No. 24-CV-301-JPS, 2024 WL 1051213, at *2 (E.D. Wis. Mar. 11, 2024) (dismissing frivolous case with prejudice) (citing *Holland*, 503 F. App'x at 478 and *El v. AmeriCredit Fin. Servs.*, 710 F.3d 748, 751 (7th Cir. 2013)).

### 4.2 Sanctions

The Court is faced with a litigant who has not only disregarded the Federal Rules of Civil Procedure and the Court's pleading instructions, but who has also submitted outrageous written statements that are wholly inappropriate for any litigant to make. The Court will briefly summarize some of the most concerning content. When discussing why the Court should appoint counsel, Plaintiff argues that "[p]erhaps professional counsel is more able to bend over spread their ass[es] and let you fuck them and their clients unlawfully than I am, and may have pointers that will help me to tolerate it." ECF No. 11 at 4. He further suggests that the Court's screening order is an "illegal order" that he is "not going to follow," "[l]ike if you told me to suck your dick I wouldn't." *Id.* Plaintiff characterizes the Court's screening orders as emblematic of "mob prosecution." *Id.* at 6. He insinuates that Court staff has "dementia." *Id.* at 11. He attaches what he defines as "an exhibit showing that [he] is terrible to AI," which is five pages worth of a profanity-laced dialogue with AI. ECF No. 11-2. Plaintiff acknowledges how inappropriate his behavior is, writing that "[i]f you want to hold me in contempt, hold me in contempt, and let me appeal the contempt sanction." ECF No. 11 at 5.

In light of these circumstances, the Court finds that sanctions are warranted here. "[T]he right of access to the federal courts is not absolute . . . ." *In re Chapman*, 328 F.3d 903, 905 (7th Cir. 2003) (citing *United States ex rel. Verdone v. Cir. Ct. for Taylor Cnty.*, 73 F.3d 669, 674 (7th Cir. 1995)). It is the Court's responsibility to allocate its limited resources in a way that promotes the interests of justice. *In re McDonald*, 489 U.S. 180, 184 (1989) ("Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources."). To this end, the Court may implement sanctions "narrowly

tailored to the type of abuse" and that do not "bar the courthouse door absolutely." *Chapman v. Exec. Comm. of U.S. Dist. Ct. for N. Dist. of Ill.*, 324 F. App'x 500, 502 (7th Cir. 2009) (collecting cases). "Such sanctions can include dismissal, monetary fines, and the imposition of a filing bar to restrict a plaintiff's ability to file new lawsuits." *Baston v. Carter*, No. 2:20-cv-00182-JPH-MJD, 2020 WL 7138631, at *2 (S.D. Ind. Dec. 7, 2020) (citing *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) and FED. R. CIV. P. 11).

Here, the sanction will not be to hold Plaintiff in contempt. Rather, the Court will impose a monetary fine of $500 as a sanction. Considering that a court in the Western District of Wisconsin dismissed a case for a litigant's use of similar inappropriate language, *Luedtke v. Keyes*, No. 22-cv-589-jdp, 2023 WL 2894535, at *1 (W.D. Wis. Apr. 11, 2023), and the fact that dismissal is the "ultimate sanction," *Long v. Steerpo*, 213 F.3d 983, 986 (7th Cir. 2000) (citing *Downs v. Westphal*, 78 F.3d 1252, 1256 (7th Cir. 1996)), the Court finds that a $500 sanction is more than warranted here. *Cf. Neal v. LaRiva*, 765 F.3d 788, 791 (7th Cir. 2014) (upholding prior $500 fine and imposing an additional $500 fine for repeated frivolous filings); *Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997) (imposing $500 fine on serial litigant); *Smith v. U.S. Dep't of Educ.*, No. 1:20-CV-474, 2021 WL 8894926, at *3 (N.D. Ind. Oct. 11, 2021) (imposing a $1,000 sanction on serial litigant); *Kimbrell v. Poipu Holdings, LLC*, No. 1:25-cv-01147-JEH-RLH, 2025 WL 2375399, at *2 (C.D. Ill. Aug. 13, 2025) (denying motion to rescind $500 fine on serial litigant).

Until Plaintiff pays the $500 monetary sanction in full, he will be barred from filing any paper in any case in this District, including new lawsuits related to a different set of facts than those addressed in this Order. This shall include motions for reconsideration, but it will not include notices of appeal or papers in "any criminal case in which [Plaintiff] is a

defendant or any application for habeas corpus that he may wish to file." *Mack*, 45 F.3d at 186 (citing *Sato v. Plunkett*, 154 F.R.D. 189 (N.D. Ill. 1994)); *see also Mucha v. Wisconsin*, No. 12-CV-00202-LA, 2013 WL 1498993, at *1 (E.D. Wis. Apr. 10, 2013) (motions for reconsideration fall within *Mack* bar) (citing *Lammers v. Ellerd*, 202 F.3d 273, 1999 WL 1075323, at *1–2 (7th Cir. Nov. 24, 1999) (imposing *Mack* bar)); *cf. Neal*, 765 F.3d at 791 (upholding similar limitations as to serial litigant). It will also not include any papers that Plaintiff may file in his ongoing lawsuit: *Armstrong v. City of Milwaukee*, Case No. 24-CV-1389-JPS (E.D. Wis. 2024) ("City of Milwaukee Case"). The Clerk of the Court will be directed to return unfiled any papers submitted in violation of this Order until Plaintiff has paid the monetary sanction in full.

## 5. CONCLUSION

For the reasons discussed herein, the Court will dismiss this case with prejudice. *See supra* Section 4.1. As a result, Plaintiff's motions to proceed without prepayment of the filing fee, ECF No. 4, and seeking an extension of time to file an amended complaint, to correct his second amended complaint, to appoint counsel, and to reconsider the prior screening orders, ECF No. 11, will be denied as moot. Finally, due to Plaintiff's conduct, the Court will impose sanctions, as described herein. *See supra* Section 4.2.

Accordingly,

**IT IS ORDERED** that Plaintiff William Louis Armstrong's motion to proceed without prepayment of the filing fee, ECF No. 4, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong's motion seeking an extension of time to file an amended complaint, to correct his second amended complaint, to appoint counsel,

and to reconsider the prior screening orders, ECF No. 11, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff William Louis Armstrong shall **REMIT** to the Clerk of the Court a monetary sanction in the amount of $500;

**IT IS FURTHER ORDERED** that until such time as Plaintiff William Louis Armstrong pays the $500 monetary sanction in full, he will be **BARRED** from filing any paper in any case in this District, including any new lawsuits and any motions for reconsideration, but excluding notices of appeal or papers in any criminal case in which he is a defendant, any application for habeas corpus, and any papers in *Armstrong v. City of Milwaukee*, Case No. 24-CV-1389-JPS (E.D. Wis. 2024); the Clerk of the Court shall **RETURN UNFILED** any papers submitted in violation of this Order; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of May, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* FED. R. APP. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* FED. R. APP. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* FED. R. CIV. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WILLIAM LOUIS ARMSTRONG,

Plaintiff,

UNITED STATES,

Involuntary Plaintiff,

v.

ALTER TRADING CORPORATION, SEVEN STARS AUTO PARTS LLC, MILLER COMPRESSING COMPANY, JON SPIGEL, MICHAEL GOLDSTEIN, ROBERT GOLDSTEIN, GOLDSTEIN GROUP, INC., ROBERT G. ELLIS, QUARLES & BRADY, LLC, ALTER LOGISTICS & TRANSLOADING COMPANY, MCC HOLDING INC., JOHN BUSBY, ALL SEASONS TRUCKING 2 LLC, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, TOYOTA MOTOR SALES, USA, TOYOTA FINANCIAL SERVICES, TOYOTA TSUSHO CORPORATION, TOYOTA TSUSHO AMERICA INC., ALTECH RECYCLING LLC, JEFFREY GOLDSTEIN, KATHY GOLDSTEIN, RICHARD GOLDSTEIN, JOSH MILLAN, MARC GOLDSTEIN, NATHAN MILLAN, SAMANTHA GOLDSTEIN, LAUREN GOLDSTEIN, JEREMY GOLDSTEIN, ALEX GOLDSTEIN, JESSE GOLDSTEIN, RENEE GOLDSTEIN, DAVID KLEIN, JOSEPH POEHLMANN, UNITED STATES, CHANEL, BODY CORPORATE WISCONSIN LLC, TOYOTA MOTOR CREDIT CORPORATION, BRYAN DOWNER, ANTHONY R. GARDINER, JR., ALTER METAL RECYCLING, and GREEN BRIDGE COMPANY,

Defendants.

Case No. 25-CV-1702-JPS

**JUDGMENT**

**Decision by Court**. This action came on for consideration before the Court and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that this action be and the same is hereby **DISMISSED with prejudice**.

APPROVED:

J.P. Stadtmueller
U.S. District Judge

LINDA M. KLEMM
Clerk of Court
*s/ Jodi L. Malek*
By: Deputy Clerk

May 29, 2026
Date

on Green Bridge Company at
2117 State St, Suite 300
Bettendorf, IA 52722-5172;

on Jeffrey Goldstein at
c/o Green Bridge Company
2117 State St, Suite 300
Bettendorf, IA 52722-5172;

on Kathy Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Richard Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Marc Goldstein at
c/o GGI Motors / Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Samantha Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Lauren Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Jeremy Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Alex Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Jesse Goldstein at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Joshua Millan at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on Nathan Millan at
c/o Goldstein Group, Inc.
700 Office Parkway
St. Louis, MO 63141;

on David Klein at
c/o Alter Trading Corporation
700 Office Parkway
St. Louis, MO 63141;

on Jay Robinovitz at
c/o Alter Trading Corporation
700 Office Parkway
St. Louis, MO 63141;

on Don H. Martin at
c/o Alter Trading Corporation
700 Office Parkway
St. Louis, MO 63141;

on Michael E. Vail at
c/o Alter Metal Recycling
2603 9th Ave
Council Bluffs, IA 51501;

on Jack Grundfest at
c/o Alter Trading Corporation
700 Office Parkway
St. Louis, MO 63141;

on Lisa R. Walden at
c/o Alter Trading Corporation
700 Office Parkway
St. Louis, MO 63141;

on Joseph Poehlmann at
c/o Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202;

on Bryan Downer at
c/o Seven Stars Auto Parts LLC
3520 W Mill Rd
Milwaukee, WI 53209;

on Anthony R. Gardiner, Jr. at
c/o All Seasons Trucking 2 LLC
1410 Ellis St
Waukesha, WI 53186-5621;

on Chanel at
c/o All Seasons Trucking 2 LLC
1410 Ellis St
Waukesha, WI 53186-5621.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 25, 2026

William Armstrong

William L. Armstrong III
2580 S 34th St
Milwaukee, WI 53215

State of WI
County of Milwaukee
Sworn to (or affirmed) and subscribed before me via ☒ physical presence or ☐ online presence on this 25 day of August, 2026
by William L Armstrong III.
Personally known ☐ or Produced identification ☐
Type of identification produced: Driver License
Monique Chambers
Notary Public Signature

Monique Chambers
Notary Public
State of Wisconsin

Monique Chambers,
Expire 7/28/2028
8/25/2026